

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

DIALLO JOHNSON, MARY
RAFTER and LINDA STANLEY,
Individually and on Behalf
of All Others Similarly Situated,

**08-80101**

**CIV-MIDDLEBROOKS**

Plaintiffs,

**MAGISTRATE JUDGE JOHNSON**

vs.

WILLIAM S. WHITE,
CLAIRE MOTT WHITE,
CHARLES STEWART MOTT FOUNDATION,
ROBERT H. BUKER, JR.,
JOHN BUTLER,
RIDGWAY H. WHITE,
FREDERICK KIRKPATRICK,
ROY E. PETERSON,
W. ARCHIBALD PIPER,
WILLIAM H. PIPER,
LLOYD E. REUSS,
HORACE WILKINS,
GERARD BERNARD,
UNITED STATES TRUST COMPANY, N.A.,
and UNITED STATES SUGAR CORPORATION,

Defendants.

_____/

## COMPLAINT

Plaintiffs DIALLO JOHNSON, MARY RAFTER and LINDA STANLEY, individually

and on behalf of all others similarly situated, bring this action against the defendants, WILLIAM

S. WHITE, CLAIRE MOTT WHITE, CHARLES STEWART MOTT FOUNDATION,

ROBERT H. BUKER, JR., JOHN BUTLER, RIDGWAY H. WHITE, FREDERICK

KIRKPATRICK, ROY R. PETERSON, W. ARCHIBALD PIPER, WILLIAM H. PIPER,

1

LLOYD REUSS, HORACE WILKINS, GERARD BERNARD, UNITED STATES TRUST COMPANY, N.A., and UNITED STATES SUGAR CORPORATION, and allege as follows:

## INTRODUCTION

1.     United States Sugar Corporation ("U.S. Sugar") holds itself out as one of the country's largest producers of sugar cane and refined cane sugar and is one of Florida's major producers of oranges and orange juice products.  U.S. Sugar publicly claims that its "value system" requires that "communication must be direct, open, honest and timely," that "information is openly shared," and that "we trust and respect all of our fellow employees."  As will be described below, U.S. Sugar, its Chairman William S. White, its President and Chief Executive Officer Robert H. Buker, Jr., its Board of Directors and others have cast that "value system" aside when it comes to the treatment of their shareholders, many of whom are also their employees.

2.     Since its founding in 1931 by Charles Stewart Mott ("C.S. Mott"), U.S. Sugar has always been associated with his lineal descendants (the "Mott Family").  However, the largest single block of shareholders of U.S. Sugar is comprised of thousands of its employees and former employees, who owned approximately 38% of the outstanding shares through the U.S. Sugar Employee Stock Ownership Plan (the "ESOP") as of October 31, 2005 (the "Employee Shareholders").  U.S. Sugar's workforce ranges from farm field workers to the administrative staff at the headquarters in Clewiston, Florida.  Their shares in U.S. Sugar are the primary source of retirement benefits for a large number of these employees.

3.     The ESOP was formed as part of a transaction in the 1980s in which U.S. Sugar "went private," and the Mott Family cashed in a substantial part of their holdings while still effectively controlling the company. As a private company, there is no public market for U.S.

2

Sugar shares and no publicly available means to determine the value of those shares, because the company does not make any public disclosures of financial information. The only way for the Employee Shareholders to sell their shares is to sell them back to U.S. Sugar under the terms of the ESOP at the "Fair Market Value" – a price that is supposed to be determined by the Trustee of the ESOP and is defined as "the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well-informed about the asset and the market value of the asset." The price paid by U.S. Sugar to purchase these shares has ranged from a low of $194 per share to a high of $204 per share from 2005 to 2007. The shareholders have never had an opportunity to cash out of their shares in a sale to a third party.

4.      On August 4, 2005, Gaylon M. Lawrence, Sr. and Gaylon M. Lawrence, Jr. (the "Lawrence Group"), the owners of extensive agricultural, banking and industrial operations, provided just such an opportunity when they reached an agreement with U.S. Sugar's Chief Executive Officer, Robert Dolson, for the purchase of U.S. Sugar for five hundred and seventy five million dollars ($575,000,000) in cash or $293 in cash per share. This offer was the first time that the shareholders would have had the opportunity to cash out of their shares in a sale to a third party. The Lawrence Group's offer was an extraordinarily valuable offer for the shareholders of U.S. Sugar by any reasonable standard – not the least of which was the fact that the offer was at a premium price 50% higher than the Trustee for the ESOP had determined the Fair Market Value to be, and 91% higher than the Fair Market Value declared by certain charitable shareholders in filings with the Internal Revenue Service ("IRS").

5.     U.S. Sugar's CEO Dolson told the Lawrences that the shareholders would surely accept the offer and promised to follow through with the deal to closing. Upon information and belief, after taking the offer to William S. White (the Chairman of Board of Directors of U.S. Sugar and a member of the Mott Family), White promptly terminated Dolson between August 5 and August 7, 2005, and decided that same weekend to permanently hide the offer from the shareholders. A few days later, Dolson received a ten million dollar ($10,000,000) payment from the company – money, Plaintiffs believe and allege, that was intended to keep him quiet about the existence of the purchase offer and keep him from communicating it to the shareholders.

6.     William S. White then installed Robert H. Buker, Jr. as CEO and took control of the deal with the Lawrence Group. White had no interest in accepting the Lawrence Group's offer, as it would mean he, his wife Claire Mott White, and their branch of the Mott Family (the "Mott White Family") would lose control of the business and their positions of power. The Mott White Family owns less than 4% of the shares of U.S. Sugar, but as will be described below, has control of the company through their positions of power and appointments to certain boards. It would also mean that White's scheme, also described below, for increasing the size and value of the family's ownership interest in U.S. Sugar by purchasing and retiring employees' shares, would come to an end.

7.     White and Buker proceeded to throw up obstacle after obstacle to the sale of U.S. Sugar for seven long months. Eventually, White had the Board of Directors of U.S. Sugar formally reject the offer on March 14, 2006. U.S. Sugar also summarily rejected a second offer by the Lawrence Group for the purchase of U.S. Sugar for five hundred seventy five million dollars ($575,000,000) in cash ($293 in cash per share) in January 2007.

4

8.     The shareholders (other than the Defendants) were never told about either of the Lawrence Group's offers – as they should have been. The decision to sell or not to sell here was a decision that rested with the shareholders, including the Employee Shareholders, and not with the Mott White Family and the Board of Directors. The Board was controlled by the Mott White Family, who were merely minority shareholders and did not represent the interests of the majority of the shareholders; they had a conflict of interest in that they wanted to perpetuate their own control of the company and increase their ownership of the company, at the expense of the shareholders, as opposed to looking out for the best interests of the shareholders in seeking to maximize shareholder value. Under this conflict of interest, the Mott White Family and the Board could not simply decide to reject the Lawrence Group's premium offers without giving the shareholders the right to make that decision for themselves. Had the offer been accepted, the Employee Shareholders alone stood to receive nearly <u>two hundred twenty million dollars ($220,000,000)</u> for their shares.

9.     Not only did William S. White and the other Defendants keep the shareholders from learning of the $293 per share purchase offer, they also proceeded to have the company represent to the shareholders that the share value was <u>declining</u> so that it could continue to buy shares back from the employees for prices under $200/share. In other words, while a third party buyer was ready, willing and able beginning in August 2005 to pay $293 per share for every single share, U.S. Sugar was paying its Employee Shareholders almost $100 per share less than that amount. The Employee Shareholders' loss was the Defendants' gain. Every time U.S. Sugar purchased shares from its employees at this price, the ownership interests of each member of the Mott Family increased, both in size and in value, without costing them a penny.

5

10.     To redress these wrongs, this lawsuit is brought as a class action on behalf of all shareholders of U.S. Sugar, including all of the Employee Shareholders, against the company, its Board of Directors, certain of its officers, its controlling shareholders, and the Trustee of the U.S. Sugar ESOP.  This action seeks damages and other relief for the Defendants' fraud, conversion, breaches of their fiduciary duties and other misconduct.

11.     The class members are entitled to compensatory damages in excess of $150 million plus punitive damages.

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because this is a class action and members of the class of Plaintiffs are citizens of a state different from that of any of the Defendants, and the matter in controversy exceeds the sum of five million dollars ($5,000,000), exclusive of interest and costs.   This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e), as certain of Plaintiffs' causes of action arise under the Employee Retirement Income Security Act ("ERISA"), and has supplemental jurisdiction pursuant to 28 U.S.C. § 1332 over Plaintiffs' other causes of action.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, because a large percentage of the Employee Shareholders live and work in this District, and because a large portion of the assets of U.S. Sugar are located in this District.

## PARTIES

### A.    U.S. Sugar Shareholders.

14.    Plaintiff Diallo Johnson is a resident of Philadelphia, Pennsylvania. Johnson was employed as a commodities analyst at U.S. Sugar. Johnson owns shares of U.S. Sugar as a participant in the U.S. Sugar ESOP and would have sold them at $293 per share. Johnson has suffered damages as a result of the Defendants' conduct by being denied the opportunity to sell his shares for $293 per share.

15.    Plaintiff Mary Rafter is a resident of Broward County, Florida. Rafter was employed as a secretary and an administrative assistant at U.S. Sugar for 12 years. Rafter directly owns shares of U.S. Sugar and would have sold them at $293 per share. Rafter has suffered damages as a result of the Defendants' conduct by being denied the opportunity to sell her shares for $293 per share.

16.    Plaintiff Linda Stanley is a resident of Palm Beach County, Florida. Stanley was employed as a secretary and cost analyst at U.S. Sugar for 45 years. Stanley owned shares of U.S. Sugar as a participant in the U.S. Sugar ESOP, and U.S. Sugar agreed to purchase those shares back from her at the price of $194.10 per share. Stanley has suffered damages as a result of the Defendants' conduct by having her shares purchased at the artificially low price paid by U.S. Sugar in light of the Lawrence Group's offer of $293 per share.

17.    The Mott Children's Health Center (the "Children's Health Center") is a Michigan public charity founded by C.S. Mott in 1939. It owns approximately 22% of the outstanding shares of U.S. Sugar. The mandate of the Children's Health Center is to provide primary health care to the large number of children living below the poverty line in Genesee County, Michigan, which includes the city of Flint. A very substantial portion of the assets of

the Children's Health Center (41% based on a value of $293 per share) are tied up in shares of U.S. Sugar – shares that cannot be sold on any public market and that earn only approximately 2% in dividends each year.

**B.** **The Defendants.**

18.      Defendant U.S. Sugar is a privately-held Delaware corporation with its principal place of business at 111 Ponce De Leon Avenue, Clewiston, Florida. U.S. Sugar farms on nearly 200,000 acres in Florida, primarily in Palm Beach County, as well as in Hendry and Glades County. U.S. Sugar is registered to do business and does business in the State of Florida. U.S. Sugar is subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

19.      Defendant Charles Stewart Mott Foundation (the "Mott Foundation") is a private foundation and nonprofit corporation organized under the laws of Michigan with its principal place of business at 503 South Saginaw Street, Suite 1200, Flint, Michigan.  The Mott Foundation owns approximately 19% of the shares of U.S. Sugar, and is a principal means through which William S. White, Claire Mott White and their family exercise control over U.S. Sugar.  The Mott Foundation is controlled by the seven Members of the Corporation (the "Controlling Members"), who are identified directly in its Articles of Incorporation.   The Controlling Members, in turn, are controlled by William S. White, Claire Mott White, their daughter Tiffanỳ White Lovett, and William H. Piper (who owes his position as Vice Chairman of the Mott Foundation and his position as a Director of U.S. Sugar to William White and Claire Mott White). Defendant William S. White is the President and CEO of the Mott Foundation and the Chairman of its Board of Trustees, Chairman of its Executive Committee, and Chairman of its Investment Committee. Defendant William H. Piper serves as Vice Chairman of the Mott

8

Foundation's Board of Trustees.  The Controlling Members elect the Board of Trustees.  The Mott Foundation, directly and through its agents William S. White, Claire Mott White, Ridgway White and William H. Piper, (a) committed tortious acts within this state, and/or (b) is engaged in substantial and not isolated activity within this state, sufficient to subject itself to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

20.     Defendant William S. White is a resident of Michigan and has a residence in Florida as well.  William S. White is a member of the Mott Family by marriage to Claire Mott White, a daughter of Harding Mott.  Harding Mott was one of six children of C.S. Mott.  At all relevant times, William S. White was the principal actor in the events described below, and with the help of his wife and family exercised absolute control over U.S. Sugar and the Mott Foundation.  Through his positions of control at U.S. Sugar, the Mott Foundation, and the Mott Family Office (a corporation formally known as MFO Management, Inc. that manages a large portion of the assets of the Mott Family), White exercises actual direction and control over the conduct of U.S. Sugar and its Board of Directors and acts for the benefit of the Mott White family.  White's positions of power at these entities are set forth in the chart that follows:

| U.S. Sugar | Mott Foundation | Mott Family Office |
|---|---|---|
| Chairman of the Board | Chairman of the Board | Director |
| Chairman of the Executive Committee | Chief Executive Officer | Treasurer |
| Chairman of the Compensation Committee | President | |
| Chairman of the New Directors Selection Committee | Chairman of the Controlling Members | |
| | Chairman of the Executive Committee | |
| | Chairman of the Investment Committee | |

William S. White is present in this state, and/or (a) committed tortious acts within this state, and/or (b) is engaged in substantial and not isolated activity within this state, sufficient to subject itself to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

21.     Defendant Claire Mott White is a resident of Michigan and has a residence in Florida as well.  She is a daughter of Harding Mott and a granddaughter of C.S. Mott.  Claire Mott White inherited a large block of U.S. Sugar stock from her father.   Upon information and belief, Claire Mott White directly or through trusts for herself and her children, owns approximately 3.5% of the outstanding shares of U.S. Sugar.  The $2.5 billion Mott Foundation owns 19% of U.S. Sugar.  The Mott Foundation is controlled by its Controlling Members, who are identified directly in its Articles of Incorporation.  The Controlling Members, in turn, are controlled by William S. White, Claire Mott White, their daughter Tiffany White Lovett, and William S. Piper (who owes his position as Vice Chairman of the Mott Foundation and his position as a Director of U.S. Sugar to William White and Claire Mott White).  The Controlling Members serve for life, and their number cannot be increased without a 75% vote of the Controlling Members.  The only way to dilute the control of Claire Mott White over the Mott Foundation would be to increase the number of Controlling Members.  Given the fact that any two Controlling Members can block the addition of more Controlling Members, there is no way to reduce or diminish Claire Mott White's control of the Mott Foundation.  William S. White became Chairman of U.S. Sugar, solely as the result of being married to Claire Mott White.  Through these positions and relationships, Claire Mott White together with her husband William S. White not only controls the Mott Foundation but U.S. Sugar as well.  Claire Mott White, directly and through her agents, (a) committed tortious acts within this state, and/or (b) is

engaged in substantial and not isolated activity within this state, sufficient to subject itself to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

22.     Defendant Robert H. Buker, Jr. is a resident of Florida. Upon the termination of Robert Dolson on or about the weekend of August 5-7, 2005, Buker was installed by William S. White as President and CEO of U.S. Sugar. Buker subsequently became a member of the Board of Directors and of the Executive Committee of U.S. Sugar as well. Buker was responsible for all day-to-day operational decisions of U.S. Sugar as well as implementation of all initiatives and business plans established and approved by White and the Board of Directors. Buker is subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

23.     At various time relevant to this action, the Board of Directors of U.S. Sugar consisted of William S. White, his son Ridgway White, C.S. Mott's great grandson John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins, and President and CEO Robert H. Buker, Jr. (collectively the "Director Defendants"). Meetings of the Board of Directors, including meetings relevant to the conduct at issue in this Complaint, took place in this District, among other locations. Each of the Director Defendants, directly and through their agents, (a) committed tortious acts within this state, and/or (b) is engaged in substantial and not isolated activity within this state, sufficient to subject itself to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

24.     Defendant Ridgway H. White is a resident of Michigan. Ridgway White is the son of William S. White and Claire Mott White and the great-grandson of C.S. Mott. In October 2006, at the age of only 27 and without any noteworthy business experience, William S. White and Claire Mott White made their son Ridgway White a Director of U.S. Sugar. Ridgway White is also a Director of the Mott Family Office, and an employee of the Mott Foundation.

25. Defendant John Butler is a resident of Minnesota. Butler is a great grandson of C.S. Mott. He is the grandson of Aimee Mott Butler, who inherited a large block of U.S. Sugar stock from her father, C.S. Mott. At all relevant times, John Butler was a member of the Board of Directors of U.S. Sugar.

26. Defendant Frederick S. Kirkpatrick is a resident of Michigan. At all relevant times, Kirkpatrick was a member of the Board of Directors of U.S. Sugar and is currently the Vice Chairman of the Board of U.S. Sugar. Kirkpatrick is also the Chief Operating Officer and a Director of the Mott Family Office.

27. Defendant William H. Piper is a resident of Michigan. At all relevant times, Piper was a member of the Board of Directors of U.S. Sugar. He was also one of the Controlling Members and a member of the Executive Committee of the Mott Foundation, as well as a member and Vice Chairman of the Board of Trustees of the Mott Foundation.

28. Defendant Horace Wilkins is a resident of Texas. At all relevant times, Wilkins was a member of the Board of Directors of U.S. Sugar. Prior to becoming a Director of U.S. Sugar, Wilkins served as a Director of a privately-held company owned by the Mott Family and controlled by William S. White and Claire Mott White.

29. Defendant Lloyd E. Reuss is a resident of Michigan. At all relevant times, Reuss, a longtime friend of William S. White, was a member of the Board of Directors of U.S. Sugar.

30. Defendant Roy E. Peterson is a resident of Michigan. At all relevant times, Peterson was a member of the Board of Directors of U.S. Sugar. Peterson is the former President of the Children's Health Center.

31. Defendant W. Archibald Piper is a resident of Michigan. At all relevant times, Piper was a member of the Board of Directors of U.S. Sugar. He is a medical doctor and a

member of the Board of Directors of the Children's Health Center and the past Chairman of that Board.

32.     Defendant Gerard Bernard is a resident of Wellington, Florida.  Bernard is the Chief Financial Officer ("CFO") and a Senior Vice President of U. S. Sugar.  Bernard is subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

33.     Defendant United States Trust Company, N.A. ("U.S. Trust") is a Delaware corporation with its principal place of business at 114 West 47th Street, New York, New York. At all relevant times, U.S. Trust was the Trustee of the U.S. Sugar ESOP and a named fiduciary of the U.S. Sugar ESOP.  U.S. Trust, directly and through its agents, (a) committed tortious acts within this state, and/or (b) is engaged in substantial and not isolated activity within this state, sufficient to subject itself to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

## GENERAL ALLEGATIONS

### A.     U.S. Sugar and its Shareholders.

34.     The Mott White Family is in control of U.S. Sugar.  They accomplish this through their direct and indirect holdings in U.S. Sugar stock, through the Mott Foundation's holdings in U.S. Sugar stock, and through William S. White's positions of power and control.  The Mott White Family directs its dealings through U.S. Sugar's Chairman, William S. White, who exercises actual direction and control over the conduct of the corporation and its Board of Directors and acts for the benefit of the Mott White Family.

35.     Of the Directors, (a) Frederick Kirkpatrick, Robert H. Buker, Jr. and William H. Piper each answer to William S. White on U.S. Sugar's Board of Directors and owe their positions and employment at U.S. Sugar and other Mott Family-controlled organizations to

White, (b) Ridgway White is the son of William S. White and Claire Mott White, and (c) John Butler is the cousin of Claire Mott White. All of the Directors, including Horace Wilkins, Lloyd E. Reuss, Roy Peterson and W. Archibald Piper, each owe their positions on the Board to White. Through the selection process, White controls the appointment of every member of the Board of Directors.

36.     The largest group of shareholders in U.S. Sugar is its employees, who in 2005 owned approximately 38% of the company through the ESOP. The Employee Shareholders consist of more than 4,000 employees and former employees who each own shares intended for their retirement. Despite being the largest single group of shareholders, the Employee Shareholders have <u>no</u> representation on U.S. Sugar's Board of Directors.

**B.     The Lawrence Group's Offer to Buy the Shares of U.S. Sugar.**

37.     The Lawrence Group is worth more than one billion dollars ($1,000,000,000). It owns diverse business holdings that range from more than 150,000 acres of agricultural land in Mississippi, Missouri, Arkansas and elsewhere and 30,000 acres of orange groves in Florida, to controlling interests in industrial corporations and regional banks.

38.     In June 2005, the Lawrence Group entered into negotiations with Robert Dolson, the CEO of U.S. Sugar, to discuss the possible acquisition of U.S. Sugar. The Lawrence Group was willing to buy all of the shares of U.S. Sugar, but was also willing to buy as little as 51% of the shares, which would have given it control of the company. Dolson, however, said that a purchase offer would only be considered if the Lawrence Group agreed to purchase all of the shares of U.S. Sugar. The Lawrence Group was ready, willing and able to meet that requirement.

39.     Negotiations continued throughout the month of July 2005.  On August 4, 2005, after careful financial analysis by the Lawrence Group, the Lawrence Group met again with Dolson and reached agreement on a purchase price and a timetable for definitive documentation and closing.  The agreement provided that the Lawrence Group would purchase all of the shares of U.S. Sugar for five hundred seventy-five million dollars ($575,000,000) in cash or $293 per share in cash, subject to routine due diligence.  The Lawrence Group also agreed to put up 5% of this sum, twenty-seven million five hundred thousand dollars ($27,500,000), on October 3, 2005 as a deposit towards closing, which was expected to take place by October 31, 2005.

40.     Dolson assured the Lawrences, that he could deliver all the shares in the company at that price.  Dolson made this assurance on more than one occasion, including at the meeting on August 4, 2005, where agreement was reached on the purchase price.  Dolson knew that the shareholders would accept the offer, because it was not only an extraordinary price, but it was also the first time in decades that the shareholders, who had frequently expressed a need to sell their shares, would have an opportunity to do so.  Dolson, who was scheduled to retire at the end of October 2005, told the Lawrence Group that he would see the deal through to its end.  At the time, Dolson had been CEO and President of U.S. Sugar for five years and on its Board of Directors for eleven years, and had decades of experience working for the Mott Family in other capacities, giving him intimate knowledge of the U.S. Sugar shareholders and their desire and need to sell their U.S. Sugar shares.

41.     The offer made by the Lawrence Group was an extraordinary offer by any reasonable measure.  It was the only outside offer for the corporation that had been made in over twenty years.  As will be discussed below, it represented a premium of approximately $100 per share more than what U.S. Sugar had been paying its employees for the same shares – an amount

that was supposed to represent the Fair Market Value for the shares. And it was $140 per share more than what the Mott Foundation was stating on its filings with the IRS (signed under penalty of perjury) as the Fair Market Value of the same shares.

42.     Nearly 80% of the Employee Shareholders are hourly employees, and a majority of them are relatively low paid farm workers, equipment operators and mechanics. Due to their relatively low total compensation, a large percentage of these workers have very modest retirement savings or incomes. The difference in retirement income based on the ESOP value of $194.10 to $204.10 per share that the employees were paid by U.S. Sugar and the retirement income the employees would have been paid based on the $293 per share from the Lawrence Group's offer is approximately 50% higher. For example, a typical employee might receive $800 per month in retirement income from the sale of his shares through the ESOP at the $194.10 price, but would have received $1,208 per month if he or she had sold at the $293 price offered by the Lawrence Group. That additional $408 per month is enough to make the difference between meeting basic needs and not, and enough to result in a significant difference in the quality of life for those lower paid employees.

**C.     William S. White Rejects the Offer in Order to Keep Control of U.S. Sugar.**

43.     After the meeting on Thursday, August 4, 2005, Dolson presented the agreement with the Lawrence Group to William S. White. While the purchase offer would have been a great benefit to the shareholders, it would have meant the Mott White Family losing their power and control over U.S. Sugar.

44.     After presenting the agreement to William S. White, Dolson was promptly terminated. White was the only individual with the power to fire Dolson. White fired Dolson

because he knew a majority of the shareholders would accept the offer, and because he made the decision to keep the offer from the shareholders.

45.     A few days later, <u>ten million dollars ($10,000,000)</u> was wired from U.S. Sugar to Dolson.  This was an extraordinarily large and highly unusual payment, particularly in light of the fact that during Dolson's presidency the total market value of U.S. Sugar had sharply declined in value.  Upon information and belief, the pay-off to Dolson was directed by White without having obtained the authorization of U.S. Sugar's Board.  Upon information and belief, the pay-off to Dolson was designed to keep him quiet about the Lawrence Group's $293 per share offer and keep him from disclosing it to the shareholders.

46.     Around this same time, Dolson told the Lawrence Group that he would no longer be involved in the transaction, but that Buker knew the shareholders needed to sell as much as he (Dolson) did.  William S. White also knew that a majority of the shareholders would accept the offer, but was unwilling to relinquish his family's control of U.S. Sugar.  White has been increasing the Mott Family's percentage ownership of U.S. Sugar at the expense of the Employee Shareholders for years.  Specifically, every time U.S. Sugar purchased and cancelled shares from the Employee Shareholders, the Mott Family's stake in U.S. Sugar grew both in size and value.  Moreover, the Mott Family paid nothing to accomplish this themselves.  Instead, they were content to have U.S. Sugar pay retiring employees $194.10 per share when those retiring employees could have received almost 51% more from the Lawrence Group's offer.

47.     As a condition to beginning the negotiations in the summer of 2005, U.S. Sugar required the Lawrence Group to sign a confidentiality agreement that included a provision that barred them from contacting the shareholders of U.S. Sugar directly or disclosing that there were any negotiations underway.  The agreement also required the Lawrence Group to make any and

17

all communications and inquiries regarding the transaction directly to Dolson (and later Buker). After firing Dolson, this allowed White to tightly control the information about the existence and amount of the Lawrence Group's offer.

48.     With Dolson's termination, White and Buker took control of the deal with the Lawrence Group. While White and Buker dragged the process out for a lengthy period of time before the offer was formally rejected, the conclusion was preordained. Exemplary of this decision was a statement made when William S. White introduced his son Ridgway White to the Lawrences after a meeting on August 10, 2005 and stated that Ridgway did not want to sell the company – a remark indicative of the Mott White Family's intent to continue their own control and their willingness to usurp a decision that U.S. Sugar's shareholders should have been permitted to make. The following year, Ridgway White was appointed to the Board of Directors of U.S. Sugar by his father William S. White.

49.     In another telling statement, U.S. Sugar's own investment bankers from Harris Nesbitt subsequently told the Lawrence Group's investment bankers that "the Board is the Lawrence Group's biggest competitor and not an offer from a third party." Directors, of course, are not supposed to be in competition with an offer to shareholders; they are supposed to carry out their fiduciary duties to the company's shareholders.

50.     At a meeting of the Board of Directors of U.S. Sugar on January 20, 2006, William S. White had the Board put off deciding what to do about the Lawrence Group's offer of $293 per share, purportedly in order to wait for the Board's consideration of another valuation of the assets (principally the land) owned by U.S. Sugar. This new valuation was bogus and obtained at this late date solely to give White cover to reject the Lawrence Group's offer. Upon information and belief, the new, bogus valuation was more than four times what U.S. Sugar was

paying its retiring employees. This bogus valuation was manufactured entirely for the purpose of providing a basis to reject the Lawrence Group's offer.

51.    Notably, at the same time the Board of Directors of U.S. Sugar was aware of a bogus valuation report for a value purportedly much, much higher than $293 per share, the Employee Shareholders were told in a February 16, 2006 letter that their shares had taken "a step backward in value" to $199.10 per share.

52.    On March 14, 2006, the Lawrence Group's offer of $293 per share was formally rejected. Buker wrote to the Lawrence Group on behalf of the Board of Directors that "the Company is not for sale." Buker stated that, at the Board meeting of March 13, 2006, "[b]ased on the condition and prospects of the assets and business of the Company, the Board of Directors has decided that the best interest of the shareholders will be served by maintaining ownership." *See* Exhibit A.

53.    Under the circumstances of this case, the decision to sell or not to sell is a decision that rested solely with the shareholders and not with the Board of Directors of U.S. Sugar or the Mott White Family. The Board was controlled by the Mott White Family, who acted as individuals to advance their own personal interests. The Mott White Family were merely minority shareholders and did not represent the interests of the majority of the shareholders. The Mott White Family had a conflict of interest in that they wanted to perpetuate their own control of the company and increase their ownership of the company, at the expense of the shareholders, as opposed to looking out for the best interests of the shareholders in seeking to maximize shareholder value. Under this conflict of interest, the Mott White Family and the Board of Directors of U.S. Sugar could not simply decide to reject the Lawrence Group's premium offers without giving the shareholders the right to make that decision for themselves.

54.    At no time did William S. White, Robert Buker or the Board of Directors of U.S. Sugar seek a higher or better offer from the Lawrence Group (or from anyone else). White was simply not going to let the shareholders sell U.S. Sugar.

**D.    The Lawrence Group's Second Offer to Buy U.S. Sugar for $293 per share.**

55.    On January 8, 2007, the Lawrence Group made a second offer to U.S. Sugar to buy all of the stock of U.S. Sugar for $293 per share. *See* Exhibit B.

56.    Upon information and belief, the second offer was not taken to the Board of Directors of U.S. Sugar. Instead, White and Buker summarily rejected the offer just two weeks after receiving it. *See* Exhibit C.

57.    Throughout this "process," the shareholders (other than the Mott White Family and its related interests) were never informed of the Lawrence Group's offers, never given an opportunity to consider them, and never given an opportunity to exercise their right to sell their shares to the Lawrence Group. Worse still, as will be discussed below, they were effectively lied to about it.

58.    The failure to provide the shareholders with the opportunity to sell or not to sell their shares in response to the Lawrence Group's offers is particularly noteworthy in light of the fact that White, speaking on behalf of the Mott Foundation and the entire Mott Family, did not speak for a majority of the shares of U.S. Sugar. The Employee Shareholders, when combined with other shareholders (excluding the Mott White Family and their interests) in fact held a significant majority of the shares that would have controlled the decision of whether U.S. Sugar was sold to the Lawrence Group. In fact, the appraisers for the U.S. Sugar shares held through the ESOP appraised those shares as the controlling interest in U.S. Sugar and so stated in their appraisal reports.

**D.**     **The U.S. Sugar ESOP.**

59.     The U.S. Sugar ESOP is a noncontributory, defined contribution retirement benefit plan covering substantially all of the employees of U.S. Sugar and is subject to the provisions and protections of the Employee Retirement Income Security Act ("ERISA"). The ESOP is an individual account plan under which a stock account and a non-stock account are established, as applicable, for each participant. U.S. Sugar is the Plan Sponsor. Overall responsibility for administering the ESOP rests with a Trustee and an ESOP Committee, both of which are selected by the Board of Directors of U.S. Sugar.

60.     At all relevant times, the Trustee of the U.S. Sugar ESOP was U.S. Trust. The Employee Shareholders are the beneficial owners of the U.S. Sugar shares held by the ESOP. All of the shares allocated to participants are voted by the ESOP Trustee in accordance with the directions received from each such shareholder.

61.     When an offer like the Lawrence Group's offer is made, the terms of the offer should be conveyed to each Employee Shareholder, and each Employee Shareholder must be given the opportunity to sell or not to sell his or her shares. It is not a decision for the Trustee to make, and certainly not a decision for the Mott White Family or the Board of Directors of U.S. Sugar to make.

62.     Every employee shareholder who has reached the age of 55 has the right to retire and to sell his or her shares to U.S. Sugar for their Fair Market Value. Every employee shareholder who has reached the age of 55 also has the right to diversify his or her ESOP account by selling a portion of his shares at the Fair Market Value to U.S. Sugar and investing the proceeds in certain approved funds within the ESOP. Under the circumstances of this case,

every employee shareholder, regardless of age, should have been given the opportunity to sell their shares in response to the Lawrence Group's offers.

63.    The only way the Employee Shareholders can sell these shares, in the absence of an outside offer, is to sell the shares back to U.S. Sugar under the terms of the ESOP plan documents at the "Fair Market Value" based upon an appraised value obtained by U.S. Sugar and the ESOP Trustee. No sales to third parties have ever occurred in the history of the ESOP. The shareholders who are not participants in the ESOP have no market or viable means by which they can sell their shares.

64.    The Trustee of the ESOP determines the Fair Market Value of the shares held by the ESOP and is permitted to rely in part upon an appraisal. The appraisals for the shares are performed twice annually, as of April 30 and October 31 each year. Houlihan, Lokey, Zukin & Howard ("Houlihan Lokey"), a nationally-recognized appraisal firm and largest appraiser of ESOP's in the United States, was selected by U.S. Sugar in 1983 and continues to be the appraiser to this day. Houlihan Lokey bases its appraisals almost totally upon information provided to it and controlled by the executive management of U.S. Sugar. One of the primary factors used by any appraiser in determining the Fair Market Value of a non-public stock is whether any offers from third parties for those shares have been made or whether any other valuations or appraisals of the corporation's assets have been performed.

**E.    The Misrepresentations and Omissions to the Shareholders.**

65.    Remarkably, at the same time it was supposedly considering the adequacy of the $293 per share offer, U.S. Sugar continued to pay its Employee Shareholders almost $100 less per share. In a February 16, 2006 letter written on U.S. Sugar letterhead, Buker wrote to his "Fellow Employees," to inform them that the value of their shares of U.S. Sugar (as of October

22

31, 2005) was $199.10 per share and to explain to them why there had been "a step backward in value."

66.     A similar representation was made to all shareholders in the company's 2005 Annual Report, which disclosed nothing about the Lawrence Group's offer and instead stated that "as expected, the ESOP share price has fallen with the weather-driven decline in profitability."

67.     In other words, while the Board of Directors of U.S. Sugar purportedly continued to consider the merits of the Lawrence Group's offer for $293 per share, U.S. Sugar was telling its Employee Shareholders (and all shareholders) that the shares were worth only $199.10 per share. The Lawrence Group's offer was thus almost 50% higher than the price U.S. Sugar was paying its Employee Shareholders.

68.     In addition, at the same time, the Mott Foundation, in its Form 990 tax filings made under penalty of perjury to the IRS, was valuing its U.S. Sugar shares at a "fair market value" of $153 per share. (Since the Mott Foundation owned approximately 365,542 shares of U.S. Sugar in 2005, this means an understatement of the fair market value of more than $51.1 million to the IRS, in light of the Lawrence Group's $293 per share offer.) Yet William S. White and the U.S. Sugar Board of Directors unilaterally decided it was not in the best interest of the shareholders to sell at $293 per share – a price close to double the amount that the Mott Foundation was telling the IRS its shares were worth.

69.     Every time U.S. Sugar bought back Employee Shareholders' shares at the $199.10 per share price and redeemed the shares, the Mott Family's interests in U.S. Sugar increased as a percentage of the total outstanding shares – for free. To illustrate this point, as the ESOP participants' shares were purchased by U.S. Sugar, the percentage of U.S. Sugar owned by each

member of the Mott White Family increased between 2000 and 2005 by 19.4% without them having to buy a single share or pay a penny.

70.     Houlihan Lokey, the appraisers for the ESOP, routinely ask as a part of every appraisal evaluation (a) whether there have been any offers for the stock, (b) whether there have been any third-party or internal valuations of U.S. Sugar's assets, (c) whether there have been any forecasts of future performance presented to the Board of Directors, and (d) whether there have been any sales of stock.  Upon information and belief, Houlihan Lokey was never told about the Lawrence Group's $293 per share offer.

71.     The Employee Shareholders are not the only shareholders that have been harmed by the Defendants' actions (and inactions).  All of the other shareholders have also been denied the opportunity to sell their U.S. Sugar shares for $293 per share.  The effect of this on the charitable shareholders is noteworthy.  The Mott Foundation and other charitable shareholders determined that the fair market value of their U.S. Sugar shares was $153 per share in their Form 990 tax filings with the IRS for 2005.  The Lawrence Group's offer thus presented the opportunity to receive 91% more than that amount.  Moreover, the Children's Health Center and the other charities are receiving extremely low returns on their shares in U.S. Sugar in the form of a dividend of less than 2% per year.  If those charities had sold their shares in U.S. Sugar and invested them in a diversified portfolio earning a normal long-term return, those charities' income from their funds tied up in U.S. Sugar shares would have increased by more than 500%.

**F.     The Misrepresentations and Omissions Continue.**

72.     In May 2006, less than two months after U.S. Sugar's Board of Directors had rejected the $293 per share offer, the appraisers visited U.S. Sugar to review its financials and

perform their routine investigations and inquiries to determine the share values for the ESOP as of the period ending April 31, 2006.

73.     Upon information and belief, the appraisers were again intentionally <u>not</u> informed of the $293 per share offer by defendants Robert Buker and Gerard Bernard at the direction of William S. White.  The continued concealment of the Lawrence Group's offer was necessary to perpetuate White's scheme to keep the Lawrence Group's offers from the shareholders, to insure that future appraisals did not include any disclosure of the original offer, and to insure that the Employee Shareholders' shares could continue to be purchased at a price far below what the Lawrence Group offered.

74.     As a result, U.S. Trust actually <u>lowered</u> the valuation to $194.10 per share as of April 30, 2006, less than two months after William S. White had ordered Buker to turn down an offer more than 50% higher.  The $194.10 per share valuation set by the Trustee was the correct Fair Market Value of U.S. Sugar but for the fact of the Lawrence Group's offers.  The Lawrence Group's offers were not disclosed to the Trustee or the appraisers, making them unable to incorporate the offers as a component of the appraisal.  As a result, beginning on July 1, 2006, U.S. Sugar began paying its Employee Shareholders the even lower price of $194.10 per share, misrepresenting to the Employee Shareholders that this was the Fair Market Value by failing to include the Lawrence Group's offers.

75.     The Lawrence Group's offer was <u>51% higher</u> than the price U.S. Sugar was paying its Employee Shareholders for their shares.  These employees would have and should have received almost $100/share <u>more</u> to fund their retirement, invest or spend however they chose.  Most of the Employee Shareholders of U.S. Sugar have very modest retirement savings or income where a difference of a few hundred dollars per month would have a substantial

impact on their financial well being.  By contrast, with every share U.S. Sugar bought back from these employees, William S. White, Claire Mott White, and the Mott Family (a family controlling billions of dollars in assets) benefited – at the expense of the employees.

76.     In January 2007, the Lawrence Group made their second offer for $293 per share, informing U.S. Sugar that they remained ready, willing and able to purchase a majority or all of the shares of U.S. Sugar for the price of $293 per share.  White and Buker rejected the offer outright just two weeks later.  At the same time, U.S. Sugar was purchasing shares from its Employee Shareholders for only $194.10 per share.

77.     Three weeks after the Lawrence Group made their second offer for $293 per share, the valuation for the ESOP shares as of October 31, 2006 was released and was $204.10 per share.  When this valuation was released in late January 2007, U.S. Sugar began paying its Employee Shareholders just $204.10 per share, continuing to misrepresent to the Employee Shareholders that this was their Fair Market Value (and again failing to include the Lawrence Group's offers as a component in the valuation).

78.     A similar representation was made to all shareholders in the U.S. Sugar's 2006 Annual Report for the year ending October 31, 2006, which again disclosed nothing about the Lawrence Group's offers and instead stated that "providing we can avoid major weather events, we hopefully will see the share price continue to increase although the rate at which it increases is likely to be modest."  Shortly after the release of the 2006 Annual Report, U.S. Sugar began buying the shares of Employee Shareholders at a new appraised price of $195.40 per share (the price set as of April 30, 2007).  By contrast, an increase from the $195.40 per share paid by U.S. Sugar to the $293 per share offered by the Lawrence Group (a 51% increase) would have been

very far from "modest." And, if the bogus valuation used to reject the Lawrence Group's offer had been incorporated in the appraised valuation, the increase would have been extraordinary.

79.     Again, these employees would have and should have received almost $90 per share _more_ to fund their retirement, invest, or spend however they chose. Instead, with every share U.S. Sugar bought back from these employees, William S. White, Claire Mott White, and the Mott Family benefited – at the expense of the employees.

80.     Likewise, all those employees eligible to retire were provided with fraudulent information regarding the Fair Market Value of their retirement holdings (their shares in U.S. Sugar). The 50% higher value, and the certainty of cashing in on their shares at that price, would have made a material difference in the retirement (and diversification) decisions of those Employee Shareholders.

81.     The misrepresentations to the shareholders have continued to this day, in that, upon information and belief, the Lawrence Group's offers have never been disclosed.  A valuation of the ESOP shares was released as of April 30, 2007 at only $195.40 per share. In a June 29, 2007 letter written on U.S. Sugar letterhead, Buker wrote to the Employee Shareholders to inform them that the value of their shares of U.S. Sugar (as of April 30, 2007) was only $195.40 per share and to explain to them why there had been "a step backward in value."

82.     The huge difference between what U.S. Sugar paid its Employee Shareholders as the fair market value (and what the Mott Foundation represented to the IRS as the Fair Market Value of their  shares ) and what the shares could actually be sold for is set forth in the following chart:

| Time Period | What U.S. Sugar Paid Employees for Their Shares | What the Mott Foundation stated as Fair Market Value to the IRS | What the Lawrence Group Was Offering |
|---|---|---|---|
| August 2005 to Dec. 31, 2005 | $213 per share | $194 per share | $293 per share |
| Jan. 1, 2006 to June 30 2006 | $199 per share | $153 per share | $293 per share |
| Jul. 1, 2006 to Dec. 31, 2006 | $194 per share | $153 per share | $293 per share |
| Jan. 1, 2007 to June 30, 2007 | $204 per share | $164 per share | $293 per share |
| July 1, 2007 to Dec. 31, 2007 | $195.40 per share | $164 per share | $293 per share |

83.     In addition, to the extent the Director Defendants had the bogus valuation suggesting that the U.S. Sugar shares were worth even more than $293 per share as a basis for rejecting the Lawrence Group's offer, then their wrongdoing is compounded, as the shares held by the Employee Shareholders were potentially of even greater value.

84.     Recently, in a continuing erosion of retiree benefits, William S. White had the Board of Directors of U.S. Sugar end all retiree health care benefits, something it had provided for more than fifty years to its employees.  Now U.S. Sugar retirees, many already struggling to meet basic needs, must provide their own medical care on that same low retirement funding.  By

also taking away the employees' right to sell their shares at $293 per share, White has compounded the adverse impact on them.

## CLASS ACTION ALLEGATIONS

### A.     Class Definition

85.     Plaintiffs bring this action individually and upon behalf of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.   The class upon whose behalf this suit is brought is defined as follows:

> **All beneficial owners of shares in U. S. Sugar as of August 4, 2005 or anytime thereafter up to the date of the filing of this Complaint other than the Defendants.**

86.     The class includes at least one sub-class to be defined as follows:

> **All participants in the U. S. Sugar ESOP who were vested in their shares in U.S. Sugar as of August 4, 2005 or anytime thereafter up to the date of the filing of this Complaint other than the Defendants.**

87.     The class and subclass do not include any of the Defendants.

88.     The aforesaid class of Plaintiffs on whose behalf this suit is filed may be divided into such additional subclasses as the Court deems appropriate.   Alternatively, the Court should certify such other class, classes and/or subclasses as the Court deems appropriate.

### B.     Rule 23(a) Prerequisites.

89.     The prerequisites for bringing a class action under Rule 23(a) are satisfied in this case for the following reasons:

(a).     **Numerosity:** The class of participants is so numerous that joinder  of  all members  is  impracticable.    As  of  the  end  of 2004, there  were  more  than  4,000 shareholders in U.S. Sugar.

(b).   **Commonality**: There are questions of law and fact common to the class, as set forth in detail in paragraph 91 below.

(c).   **Representativeness**: The claims asserted by the representative Plaintiffs are typical of the claims of the members of the class.

(d).   **Adequacy:** The representative Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have retained attorneys experienced in complex class action litigation.

### C.   Rule 23(b)(1).

90.   This case is appropriate for class certification under Rule 23(b)(1)(A), in that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants. The relief sought in this action consists of a combination of monetary, declaratory and injunctive relief as a result of the Defendants' conduct.

### D.   Rule 23(b)(3).

91.   The case is also appropriate for class certification under Rule 23(b)(3), in that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These common questions of law and fact include the following:

> (a) whether Defendants committed fraud, conversion, constructive fraud, and other tortious acts that intentionally deprived the shareholders of U.S. Sugar of the right to sell or not to sell their shares;

(b)   whether certain of the Defendants had a duty to disclose to the shareholders the existence of the Lawrence Group's offers and provide them with an opportunity to sell or not to sell their shares in response to said offers;

(c)   whether certain of the Defendants owed a fiduciary duty under applicable common law to the Plaintiffs;

(d)   whether certain of the Defendants owed a statutory fiduciary duty under ERISA to the Employee Shareholders;

(e)   whether certain of the Defendants breached their common law fiduciary duties by failing to follow a fair and adequate process in considering the Lawrence Group's offers, by failing to disclose the existence of said offers to the shareholders, and/or by rejecting said offers without providing the shareholders an opportunity to sell or not to sell their shares on said offers;

(f)   whether certain of the Defendants breached their ERISA fiduciary duties by failing to follow a fair and adequate process in considering the Lawrence Group's offers, by failing to disclose the existence of said offers to the Employee Shareholders, by making misrepresentations and/or omissions to the Employee Shareholders regarding the existence of said offers, by making misrepresentations and/or omissions to the Employee Shareholders regarding the Fair Market Value of their shares, and/or by rejecting said offers;

(g)   whether the Defendants breached their common law fiduciary duties by misrepresenting to the Employee Shareholders the fair market value of their shares in U.S. Sugar;

(h)   whether the Defendants breached their ERISA fiduciary duties by misrepresenting to the Employee Shareholders the fair market value of their shares in U.S. Sugar;

(i)   whether the Defendants breached their common law fiduciary duties by causing the shares held by the Employee Shareholders to be purchased at amounts below their fair market value; and

(j)   whether the Defendants breached their ERISA fiduciary duties by causing the shares held by the Employee Shareholders to be purchased at amounts below their fair market value.

92.   There is no strong interest of members of the class in individually controlling the prosecution of separate actions.  Given the size of the individual class member's claims, and the complexity and expense involved in this litigation, few, if any class members could afford to seek legal redress individually for the wrongs the Defendants have committed against them.

93.     To Plaintiffs' knowledge, there is no other litigation concerning this matter already commenced by members of the class against any of the Defendants.

94.     The concentration of the litigation of these claims in this particular forum is also desirable, because U.S. Sugar is headquartered in this State, much of the wrongful conduct took place in this State, and the great majority of the victims of the wrongful conduct live or work in this State.

95.     Finally, this action presents no unusual difficulties that would impede management as a class action.  The class members can be readily identified and communicated with using mailing lists in the possession of U.S. Sugar which identify all shareholders of U.S. Sugar.

## CAUSES OF ACTION

### COUNT I
**Breach of Fiduciary Duty**
**(Against the Director Defendants)**

96.     Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

97.     The Director Defendants owed a fiduciary duty of loyalty, good faith and due care to the Plaintiffs, in their capacity as shareholders of U.S. Sugar, at all relevant times.  These fiduciary duties owed by the Director Defendants to the shareholders are separate and apart from the duties owed by certain of the Director Defendants under ERISA, as set forth in Count VI below.  This cause of action is brought against the Defendants in their distinct capacities as Directors of U.S. Sugar – not in the capacity that certain of the Directors held as fiduciaries to the U.S. Sugar ESOP.

98.     The Director Defendants breached their fiduciary duties in the following ways: (a) they failed to follow a fair and reasonable process in considering the purchase offer from the Lawrence Group; (b) they failed to disclose the purchase offer from the Lawrence Group to the shareholders; (c) they failed to provide the shareholders with the opportunity to sell their shares in response to the purchase offer from the Lawrence Group; and (d) they failed to act in the best interests of the shareholders when they rejected the purchase offer from the Lawrence Group.

99.     The Director Defendants operated, at all relevant times, under a substantial conflict of interest with respect to their decisions regarding the Lawrence Group's offer and their dealings with Plaintiffs. The Director Defendants' primary motivation for resisting and rejecting the Lawrence Group's offer was to entrench themselves in their positions of power.

100.    In addition, the majority of the Director Defendants were, at all relevant times, dominated or controlled by William S. White, who, in turn, had a material interest in seeing the Lawrence Group's offer rejected. By rejecting the Lawrence Group's offer and keeping it from the shareholders, White both maintained the Mott White Family's control over U.S. Sugar and continued to cause the Mott Family's ownership interest in U.S. Sugar to grow in size and value as shares were purchased from Employee Shareholders.

101.    The Director Defendants' breaches of their fiduciary duties proximately caused damages to Plaintiffs. If the Director Defendants had disclosed the Lawrence Group's purchase offer to Plaintiffs and provided them with an opportunity to vote on whether to sell their shares, a majority of the shareholders of U.S. Sugar would have voted to sell their shares.

102.    The Director Defendants' breaches of fiduciary duty were willful, malicious, wanton and/or oppressive.

WHEREFORE, Plaintiffs Diallo Johnson, Mary Rafter and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against the Director Defendants for compensatory and punitive damages, including pre-judgment and post-judgment interest, for attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT II**
**Breach of Fiduciary Duty and**
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against William S. White, Claire Mott White, Ridgeway White and the Mott Foundation)**

103.    Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

104.    Defendants Mott Foundation, William S. White, Claire Mott White, and Ridgway White (collectively the "Mott White Family Control Group"), through William S. White's positions of power and control at U.S. Sugar and the Mott Foundation, through Claire Mott White's positions of power and control at the Mott Foundation, through William S. White's control of the Mott Family Office, through the shares owned or controlled by William S. White, Claire Mott White and the Mott Foundation, and through controlling the information flow and the selection of Directors of U.S. Sugar and Trustees of the Mott Foundation, constituted the *de facto* controlling shareholders and control group of U.S. Sugar. As such, they owed a fiduciary duty of loyalty, good faith and due care to the Plaintiffs, in their capacity as shareholders of U.S. Sugar, at all relevant times.

105.    The Mott White Family Control Group breached their fiduciary duties in the following ways:  (a) they caused U.S. Sugar's Board of Directors to fail to follow a fair and reasonable process in considering the purchase offer from the Lawrence Group; (b) they caused U.S. Sugar's Board of Directors to fail to disclose the purchase offer from the Lawrence Group to the shareholders; (c) they caused U.S. Sugar's Board of Directors to fail to provide the

34

shareholders with the opportunity to sell their shares in response to the purchase offer from the Lawrence Group; and (d) they caused U.S. Sugar's Board of Directors to failed to act in the best interests of the shareholders when they rejected the purchase offer from the Lawrence Group.

106.    The Mott White Family Control Group operated, at all relevant times, under a substantial conflict of interest with respect to their dealings with the Plaintiffs and their influence over the consideration of the Lawrence Group's offers.  Specifically, the Mott White Family Control Group had a vested interest in perpetuating their control over U.S. Sugar, and they had an interest in causing U.S. Sugar to purchase Plaintiffs' shares at a price far below what the Lawrence Group offered, as such purchases increased both the size and the value of the their ownership interest in U.S. Sugar.

107.    The Mott White Family Control Group's breaches of their fiduciary duties proximately caused damages to Plaintiffs.  If the Director Defendants had disclosed the Lawrence Group's purchase offer to Plaintiffs and provided them with an opportunity to sell their shares, a majority of the shareholders of U.S. Sugar would have sold their shares.

108.    To the extent that Claire Mott White, Ridgway White and/or the Mott Foundation did not directly owe a fiduciary duty to Plaintiffs, those defendants knew that William S. White certainly owed a fiduciary duty to Plaintiffs, knew that William S. White's conduct described above breached that fiduciary duty, and aided and abetted said breaches.

109.    The Mott White Family Control Group's breaches of fiduciary duty were willful, malicious, wanton and/or oppressive.

WHEREFORE, Plaintiffs Diallo Johnson, Mary Rafter and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against the Mott Foundation, William S. White and Claire Mott White, and Ridgway White for compensatory and punitive

damages, including pre-judgment and post-judgment interest, for attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT III
### Constructive Fraud
**(Against the Director Defendants, Claire Mott White, Gerard Bernard, and the Mott Foundation)**

110.    Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

111.    The Director Defendants owed a fiduciary duty of loyalty, good faith and due care to the Plaintiffs, in their capacity as shareholders of U.S. Sugar, at all relevant times.  These fiduciary duties owed by the Director Defendants to the shareholders included a duty of candor and full and accurate disclosure regarding the Lawrence Group's purchase offer.  Again, these duties are separate and apart from the duties owed by certain of the Director Defendants under ERISA, as set forth in Count VI below.

112.    The Director Defendants, Claire Mott White, the Mott Foundation and Gerard Bernard made, caused to be made and/or aided and abetted the making of, misrepresentations to U.S. Sugar's shareholders and/or concealed material facts from U.S. Sugar's shareholders. Namely, these Defendants were fully aware that the Lawrence Group was ready, willing and able to purchase the shares of U.S. Sugar for $293 per share in or after August 2005.  Certain of these Defendants also knew that the charity shareholders were stating the fair market value of their shares to be $140 less per share than the Lawrence Group's offer, and that the ESOP shareholders were being told the value was almost $100 less per share.  Despite this knowledge, these Defendants allowed representations to be made to the shareholders that the value of their shares was far less than what the Lawrence Group's offer was.  In light of the Lawrence Group's offer, these representations were false and/or misleading.

113.    In addition, these Defendants possessed inside information regarding the value of the U.S. Sugar stock in that the Lawrence Group was offering $293 per share, which inside information was not disclosed to the Employee Shareholders whose shares continued to be purchased at far lower amounts.

114.    Accordingly, these Defendants have committed constructive fraud and violated their duty of candor. As a result of the foregoing, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs Diallo Johnson, Mary Rafter and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against Director Defendants, Claire Mott White, the Mott Foundation and Gerard Bernard for compensatory and punitive damages, including pre-judgment and post-judgment interest, for attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

**COUNT IV**

**Abuse of Control**
**(Against the William S. White, Claire Mott White,**
**Ridgway White, and the Mott Foundation)**

115.    Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

116.    Defendants Mott Foundation, William S. White, Claire Mott White and Ridgway White (collectively the "Mott White Family Control Group"), through William S. White's positions of power and control at U.S. Sugar and the Mott Foundation, through Claire Mott White's positions of power and control at the Mott Foundation, and through the shares owned or controlled by William S. White, Claire Mott White and the Mott Foundation, constituted the *de facto* controlling shareholders and control group of U.S. Sugar.

117.    In addition, the majority of the Director Defendants were, at all relevant times, dominated or controlled by William White.

118.    The Mott White Family Control Group Defendants engaged in the conduct set forth above for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit, and control over U.S. Sugar, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at U.S. Sugar, and their substantial gains and enrichment that resulted from the purchase and redemption of the Employee Shareholders' shares described above.

119.    As part of this course of conduct, the Mott White Family Control Group Defendants actively made and/or participated in the making of, and/or aided and abetted the making of misrepresentations to Plaintiffs.

120.    As part of this course of conduct, the Mott White Family Control Group Defendants wrongfully deprived the U.S. Sugar shareholders of their right to sell or not sell their U.S. Sugar shares in response to the Lawrence Group's offers.  The Mott White Family Control Group appropriated the shareholders' right to sell or not to sell their shares in U.S. Sugar for their own personal benefit.

121.    The Mott White Family Control Group Defendants' course of conduct constituted an abuse of their ability to control and influence U.S. Sugar.

122.    By reason of the foregoing, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs Diallo Johnson, Mary Rafter and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against the Mott Foundation, William S. White, Claire Mott White and Ridgeway White for compensatory and punitive damages, including pre-judgment and post-judgment interest, for attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT V
### Conversion
### (Against William S. White, Claire Mott White, Ridgway White,
### Robert H. Buker, Jr. and the Mott Foundation)

123.    Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

124.    Defendants William S. White, Claire Mott White, Ridgway White, Robert H. Buker, Jr., and the Mott Foundation (acting through its agents William S. White, Claire Mott White and Ridgway White) converted the property of the shareholders of U.S. Sugar to their own benefit.

125.    The property of the shareholders converted by these Defendants was the right of each shareholder, including all Employee Shareholders, to sell or not to sell the shares they owned in U.S. Sugar.

126.    The actions of defendants William S. White, Claire Mott White, Ridgway White, and Robert Buker, Jr. in this regard were not the acts of directors or officers carrying out their fiduciary obligations and responsibilities, but were individual acts taken by them for their own personal benefit and for the benefit of the Mott White Family, while knowing such acts would be harmful to the shareholders.

127.    This tortious conduct began on the weekend of August 5-7, 2005, when William S. White terminated Robert Dolson and had Dolson paid ten million dollars ($10,000,000), thereby by eliminating him as CEO of U.S. Sugar, eliminating him as an advocate of the sale to the Lawrence Group, and keeping control of the information about the Lawrence Group's offer with White.  William S. White, Claire Mott White, Ridgway White and Robert Buker, Jr. then manipulated the process followed for the purported consideration of the Lawrence Group's offer,

controlled the information provided (or not provided) to the Board, and ultimately caused the Board to reject the Lawrence Group's offer.

128.     This conduct was intended to, and did, perpetuate the control of the Mott White Family over U.S. Sugar and advance the personal economic interests of the Mott White Family, the Mott Foundation and Buker (who is dependent on White for his position and his compensation), while depriving the shareholders of U.S. Sugar of their right to sell their shares.

129.     William S. White, Claire Mott White, Ridgway White and Robert Buker, Jr. knew and intended their acts to cause damage to the shareholders of U.S. Sugar.   These Defendants consciously, maliciously and intentionally deprived the U.S. Sugar shareholders of their property.

WHEREFORE, Plaintiffs Diallo Johnson, Mary Rafter and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against William S. White, Claire Mott White, Ridgway White, Robert H. Buker Jr. and the Mott Foundation for compensatory and punitive damages, including pre-judgment and post-judgment interest, for attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT VI

### Breach of Fiduciary Duty Under ERISA Section 502(a)(2)
### [29 U.S.C. §§ 1132(a)(2) & 1109(a)]
### (Against U.S. Sugar, the Director Defendants, Robert Buker, and Gerard Bernard)

130.     Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

131.     Plaintiffs, as participants and/or beneficiaries of the U.S. Sugar ESOP, bring this cause of action on behalf of the U.S. Sugar ESOP for damages as a result of certain of the Defendants breaches of their ERISA fiduciary duties with respect to the U.S. Sugar ESOP.

132.    U.S. Sugar was a fiduciary with respect to the U.S. Sugar ESOP under ERISA because it exercised discretionary authority and/or discretionary control respecting the management of the ESOP, and had discretionary authority and/or discretionary responsibility in the administration of the ESOP, by virtue of (a) its role in providing (and failing to provide) essential information the Trustee and to the appraisers regarding the value of the ESOP shares, and (b) its role in making material misrepresentations and omissions directly to the ESOP participants regarding the purported value of their shares and the price at which they would be purchased by U.S. Sugar.

133.    The Director Defendants were fiduciaries with respect to the U.S. Sugar ESOP under ERISA because they exercised discretionary authority and/or discretionary control respecting the management of the ESOP, and had discretionary authority and/or discretionary responsibility in the administration of the ESOP, by virtue of (a) their role in the selection and appointment of the Trustee of the ESOP and the appraisers for the ESOP, (b) their role in failing to inform the ESOP participants or the Trustee of the Lawrence Group's offer and failing to provide the Employee Shareholders the opportunity to vote on the offer, (c) their role in adopting a process for consideration of the Lawrence Group's offer that was inadequate and unreasonable with respect to the ESOP participants.  The Director Defendants were aware of the $194.10 per share appraisal adopted by the ESOP Trustee (and several were also aware of the $153 per share valuation used by the charities) and knew these could no longer be the true Fair Market Value in light of the offer of the Lawrence Group (or in light of the bogus appraisal obtained by William White).

134.    In addition, the Director Defendants were required to monitor other fiduciaries whom they appointed, including U.S. Trust and the ESOP Committee, and to provide them with

information sufficient to perform their duties with respect to the ESOP. The Director Defendants were responsible for selecting U.S. Trust and for appointing the ESOP Committee, and had a duty to convey the information necessary for these appointees to perform their duties. An inherent facet of the duty to monitor these appointees is the duty to keep the appointees informed.

135.    William S. White, Robert Buker and Gerard Bernard were also fiduciaries with respect to the U.S. Sugar ESOP under ERISA. Robert Buker and Gerard Bernard exercised discretionary authority and/or discretionary control respecting the management of the ESOP, and had discretionary authority and/or discretionary responsibility in the administration of the ESOP, by virtue of their role in determining what information the ESOP appraiser did and did not receive regarding the Lawrence Group's offer. They determined what information was, and more importantly was <u>not</u> communicated to the appraisers. In addition, Buker communicated the misrepresentations directly to the ESOP participants in letters, the preparation and dissemination of which constituted fiduciary functions with respect to the ESOP.

136.    When William S. White decided on or about the weekend of August 5, 2005 to hide and reject the Lawrence Group's offer, he thereby dictated the course of actions to be taken by his subordinates Robert Buker and Gerard Bernard, including the nondisclosure of the offer to the appraisers or the ESOP Trustee. White thereby exercised discretionary authority and/or discretionary responsibility in the administration of the ESOP.

137.    Separate and apart from its role as an ESOP fiduciary, U.S. Sugar and the Director Defendants are also responsible for the breaches of fiduciary duty by Buker and Bernard under principles of respondeat superior and vicarious liability.

138.    The ERISA fiduciary duties owed by these Defendants with respect to the ESOP participants included the duty of loyalty, the duty of disclosure, and the duty to monitor.  Such fiduciary duties required the Defendants to, among other things, discharge its duties with respect to the ESOP solely in the interest of the participants and beneficiaries, and for the exclusive purpose of providing benefits to the ESOP participants and their beneficiaries.  U.S. Sugar was required to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and in accordance with the documents and interests governing the ESOP.

139.    The Defendants breached the responsibilities, obligations and/or duties imposed upon them as ERISA fiduciaries in the following ways:  (a) they failed to afford the Employee Shareholders the rights they were entitled to under the ESOP plan documents and the Trust Agreement, including the right to sell or not to sell their shares; (b) they failed to disclose the existence of the first purchase offer from the Lawrence's to the ESOP participants, to the Trustee of the ESOP and/or to the appraisers of the ESOP shares; (c) they made, caused to be made, and allowed to be made material representations and omissions to the ESOP participants in its communications regarding the fair market value of their U.S. Sugar shares; and (d) they caused and allowed the ESOP participants shares to be purchased at less than Fair Market Value.

140.    The Plaintiffs bring this claim derivatively on behalf of the U.S. Sugar ESOP. The relief sought in this Count is sought on behalf of the U.S. Sugar ESOP.

141.    These breaches of U.S. Sugar's fiduciary duty proximately caused damages to the Plaintiffs individually and to the ESOP generally.

WHEREFORE, Plaintiffs Diallo Johnson and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against Defendants U.S. Sugar, William S. White, Robert Buker, Gerard Bernard and the Director Defendants for: (a) compensatory damages; (b) pre-judgment and post-judgment interest; (c) attorney's fees and costs pursuant to 29 U.S.C. 1132(g); and (d) such other and further relief as the Court deems just and proper.

## COUNT VII
### Breach of Fiduciary Duty Under ERISA Section 502(a)(2)
[29 U.S.C. §§ 1132(a)(2) & 1109(a)]
(Against U.S. Trust)

142.   Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

143.   Plaintiffs, as participants and/or beneficiaries of the U.S. Sugar ESOP, bring this cause of action on behalf of the U.S. Sugar ESOP for damages as a result of Defendant U.S. Sugar's breach of its ERISA fiduciary duties with respect to the U.S. Sugar ESOP.

144.   U.S. Trust was the trustee of the U.S. Sugar ESOP and a named fiduciary of the ESOP. As trustee, U.S. Trust was required to act in the interests of the beneficial owners of the shares, the Employee Shareholders, and only in their interest. Among other things, U.S. Trust was responsible for making a good faith and independent valuation of the shares of U.S. Sugar held by the ESOP participants. U.S. Trust did not act prudently and did not fulfill its duty of conducting an independent investigation of the value of the U.S. Sugar shares held by the ESOP.

145.   The Lawrence Group's $293 per share purchase offer had a direct and immediate effect on the valuation of the ESOP shares. U.S. Trust, however, failed to learn of the existence of the offer and/or failed to ensure that the offer was properly taken into consideration in the valuation of the ESOP shares. A reasonable and prudent exercise of its fiduciary responsibility

would have led U.S. Trust to learn of the Lawrence Group's offers and to take the necessary steps to see to it that its effect on the valuation of the ESOP shares was taken into consideration.

146.   The Plaintiffs bring this claim derivatively on behalf of the U.S. Sugar ESOP. The relief sought in this Count is sought on behalf of the U.S. Sugar ESOP.

147.   These breaches of U.S. Trust's fiduciary duty proximately caused damages to the Plaintiffs individually and to the ESOP generally.

WHEREFORE, Plaintiffs Diallo Johnson and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against Defendant U.S. Trust for: (a) compensatory damages; (b) pre-judgment and post-judgment interest; (c) attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and (d)  such other and further relief as the Court deems just and proper.

## COUNT VIII
### Action for Benefits Under ERISA Section 502(a)(1)(B)
### [29 U.S.C. § 1132(a)(1)(A)]
### (Against U.S. Sugar)

148.   Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

149.   Plaintiffs, as participants and/or beneficiaries of the U.S. Sugar ESOP, bring this cause of action to recover benefits due to them under the terms of the ESOP, to enforce their rights under the terms of the ESOP, and to clarify their rights to future benefits under the terms of the ESOP.

150.   The Plaintiffs whose shares were purchased by U.S. Sugar from August 4, 2005 to the present were entitled to receive the Fair Market Value of those shares, that is, the price at

which the shares would change hands between a willing buyer and willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell.

151.    The Plaintiffs who were eligible to sell their shares back to U.S. Sugar or diversify their holdings by selling such shares, from August 4, 2005 to the present, were entitled to be advised of the Fair Market Value of those shares, that is, the price at which the shares would change hands between a willing buyer and willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell.

152.    The Plaintiffs who were not eligible to sell their shares back to U.S. Sugar or diversify their holdings by selling such shares, were nonetheless entitled to, and possessed the right under the ESOP plan documents and the Trust Agreement, to sell or not sell their shares to the Lawrence Group, and were deprived of that right.

153.    The $293 per share offer by the Lawrence Group, who provided clear evidence of their financial ability to consummate the purchase of U.S. Sugar for five hundred and seventy five million dollars ($575,000,000) is definitive evidence of a Fair Market Value far higher than what U.S. Sugar misrepresented to the Plaintiffs.

154.    The Plaintiffs have been denied a benefit due to them under the terms of the ESOP, and have been denied their rights under the terms of the ESOP

WHEREFORE, Plaintiffs Diallo Johnson and Linda Stanley, individually and on behalf of all others similarly situated, demand judgment against Defendant U.S. Sugar for: (a) compensatory damages; (b) pre-judgment and post-judgment interest; (c) attorney's fees and costs pursuant to 29 U.S.C. § 1132(g); and (d)  such other and further relief as the Court deems just and proper.

**COUNT IX**
**Equitable Relief Under ERISA Section 502(a)(3)**
**[29 U.S.C. § 1132(a)(3)]**
**(Against U.S. Sugar, the Director Defendants, and the Mott Foundation)**

155.   Plaintiffs incorporate and reallege in this Count each of the allegations set forth in Paragraphs 1 through 95 above.

156.   Plaintiffs, as participants and/or beneficiaries of the U.S. Sugar ESOP, bring this cause of action to enjoin acts and practices of the Defendant which violate ERISA and/or the terms of the ESOP, and to obtain other appropriate equitable relief to redress such violations and to enforce the provisions of ERISA and the terms of the ESOP.

157.   As set forth in Counts VI and VIII above, the Defendant has engaged in acts and practices which violate ERISA and/or the terms of the ESOP, namely, failing to inform the ESOP participants of the Lawrence Group's offer, misrepresenting to the ESOP participants the fair market value of their U.S. Sugar shares, and purchasing ESOP participants U.S. Sugar shares for prices below the Fair Market Value.

WHEREFORE, Plaintiffs Diallo Johnson and Linda Stanley, individually and on behalf of all others similarly situated, seek appropriate equitable relief to redress such violations, including (a) a constructive trust over all of the shares that were purchased by U.S. Sugar at a price below what the Lawrence Group offered; (b) disgorgement and restitution from the Mott White Family and the Mott Foundation of the amounts by which they have been unjustly enriched; (c) an injunction requiring U.S. Sugar, its Board of Directors and its officers to advise the Trustee, the appraisers and the ESOP participants of any future purchase offers received by the company; (d) an injunction barring ESOP fiduciaries William S. White, Robert Buker and Gerard Bernard from having any future dealings with the ESOP; (e) an injunction requiring U.S. Sugar to deliver its current audited financial statements and the ESOP appraisal reports on an

annual or more frequent basis to all ESOP participants age 55 or over; (f) an injunction requiring the ESOP Trustee to be selected by a nine member committee chosen by a majority vote of ESOP participants; and (g) for such other equitable or declaratory relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a jury trial as to all portions of this suit to which trial by jury is appropriate or permitted under the law.

Dated:  January 31, 2008

Respectfully submitted,

COLSON HICKS EIDSON
255 Aragon Avenue
Coral Gables, Florida 33133
Tel: (305) 476-7400
Fax: (305) 476-7444

By: _____
       Mike S. Eidson, Esq.
       (Fla. Bar No. 151088)
       mike@colson.com

By: _____
       Roberto Martínez, Esq.
       (Fla. Bar No. 305596)
       bob@colson.com

By: _____
       Curtis B. Miner, Esq.
       (Fla. Bar No. 885681)
       curt@colson.com

*ATTORNEYS FOR THE PLAINTIFFS*

# **EXHIBIT A**



**UNITED STATES SUGAR CORPORATION**

Robert H. Buker, Jr.
President and CEO

111 Ponce de Leon Avenue
Clewiston, FL 33440
Ph: 863-902-2102
E-mail: bbuker@ussugar.com

March 14, 2006

Mr. Gaylon M. Lawrence, Jr.
9000 Carothers Parkway
Franklin, Tennessee 37067

Dear Gaylon:

The Board of Directors of United States Sugar Corporation ("the Company") met yesterday, as part of its review of the Company's strategic alternatives, to decide what action to take in regard to your family's interest in acquiring the Company. Based on the condition and prospects of the assets and business of the Company, the Board of Directors decided that the best interests of the shareholders will be best served by maintaining ownership. Accordingly, the Board requested that I communicate to you its decision that the Company is not for sale. We have instructed our advisors to discontinue any further discussions with Rabobank.

We thank you for your interest. I am sure your family will be successful in pursuing other opportunities.

Sincerely,

Robert H. Buker

RHB/ngc

## **EXHIBIT B**

# Gaylon M. Lawrence, Jr.

**Agriculture – Banking – Real Estate**

January 8, 2007

Mr. Robert Buker, President
United States Sugar Corporation
111 Ponce De Leon Ave
Clewiston, Fl 33440

## PERSONAL AND CONFIDENTIAL

Dear Bob,

I hope 2006 has been a successful and prosperous year for you and U.S. Sugar. As our offer last year demonstrated, we believe U.S. Sugar has many positive strengths and fits well with our other business interests.

Although in March of last year you told us that the Board of Directors had determined that it was not in the interest of the shareholders to sell the company, circumstances do change. Our own performance in 2006 has placed us in an even better financial position to quite comfortably consummate a transaction. In pursuit of that, my Father and I want to again offer to purchase all of the stock of U.S. Sugar for $575 million ($293 per share), exactly the same offer we made last year.

If your shareholders have any interest in pursuing the offer, please call me to discuss the matter.

My best wishes for a Prosperous and Happy New Year.

Gaylon M. Lawrence Jr.

4007 Hillsboro Road Nashville, TN 37215
p 615-298-8000  c 615-347-9601
glawrence@tennbank.com

# **<u>EXHIBIT C</u>**



**UNITED STATES**
# SUGAR
**CORPORATION**

Robert H. Buker, Jr.
President & CEO

111 Ponce de Leon Avenue
Clewiston, FL 33440
Ph: 863-902-2102
E-mail: bbuker@ussugar.com

January 22, 2007

Mr. Gaylon M. Lawrence, Jr.
4007 Hillsboro Road
Nashville, Tennessee  37215

Dear Gaylon:

I received your letter of January 8, 2007.  Since the circumstances surrounding the extensive analysis done last year at the direction of our Board of Directors have not changed in any material way, our conclusions have also not changed.

We wish you and your family continued success.

Best regards,

*Robert H Buker*

cfb

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Diallo Johnson, et al. | William S. White, et al. |

MAGISTRATE JUDGE JOHNSON

**(b)** County of Residence of First Listed Plaintiff **Philadelphia, PA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Flint, Michigan**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**08 - 11**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Curtis B. Miner, Esq., Colson Hicks Eidson, 255 Aragon Avenue, 2nd Floor, Coral Gables, FL 33134, Ph: (305) 476-7400

Attorneys (If Known)

**CIV-MIDDLEBROOKS**

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

9: 2008 CV 80108/DMM/LRJ

III. CITIZENSHIP OF PRINCIPAL PARTIES

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Re-filed- (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

| VI. RELATED/RE-FILED CASE(S). | (See instructions second page): | a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO | JUDGE | DOCKET NUMBER |
|---|---|---|---|---|

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Shareholders action for breach of fiduciary duty, constructive fraud, conversion and ERISA violations.

LENGTH OF TRIAL via **15** days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ Greater than $150,000,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No |
|---|---|---|---|

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD    *CBM*

DATE  **1-31-08**

FOR OFFICE USE ONLY

AMOUNT **$350.00**    RECEIPT # **974027FP**

01/31/08