**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

```
_____ x
                          :
IN RE UNITED STATES SUGAR,     :
CORPORATION LITIGATION         :        Master File No.
                          :             08-80101-CIV-MIDDLEBROOKS
                          :
                          :
_____ x
```

## ORDER GRANTING IN PART AND DENYING IN PART THE MOTIONS TO DISMISS [DE 143, 145, 146, 147, and 148]

THIS CAUSE comes before the Court on Defendants' motions to dismiss [DE 143, 145, 146, 147, and 148]. I have reviewed the record and am advised in the premises. As Plaintiffs have filed a consolidated response, and various Defendants share common defenses, this Order will decide all five of the Defendants' motions to dismiss.

### I.      Background

This case is a class action filed against the United States Sugar Corporation ("U.S. Sugar" or the "Company") and related defendants for alleged breaches of fiduciary duties to former and current employees, and violations of ERISA statutes. Plaintiffs' complaint alleges that they are the beneficiaries of an employee benefits plan offered through U.S. Sugar, which funds the plan by placing shares of the Company in trust for the benefit of the former and current employees. The plan is administered under ERISA statutes.

According to the Complaint, U.S. Sugar and related defendants purposefully and unlawfully undervalued the price at which the class members could redeem the shares by failing to disclose or take into account a third-party offer to buy the shares. Plaintiffs allege that this,

1

along with other related acts and omissions, gives rise to their claims of breach of fiduciary

duties and violations of ERISA statutes.

A.    **The Plaintiffs**[1]

Five of the six named Plaintiffs allege that they are current or former participants in United

States Sugar Corporation's (the "Company") Employee Stock Ownership Plan (the "ESOP")[2]. On

October 6, 2008, Plaintiffs filed their amended Consolidated Class Action Complaint ("Complaint")

[DE 142].

Plaintiff Diallo Johnson, employed as a commodities analyst, was at all relevant times, a

participant in the U.S. Sugar ESOP, which held his vested and unvested U.S. Sugar shares of

common stock or an interest in the ESOP during the Class Period. Plaintiff Linda Stanley, employed

as a secretary and a cost analyst, also owned shares as a participant in U.S. Sugar's ESOP, and U.S.

Sugar purchased those shares from her at a price of $194.10 per share sometime after June 29, 2007.

Similarly, Plaintiffs Miguel Matura, and Michael Texton, at all relevant times, were participants in

the U.S. Sugar ESOP. Plaintiff Mary Rafter, a former secretary and administrative assistant for U.S.

Sugar, is a direct minority shareholder in U.S. Sugar.

B.    **The Defendants**[3]

----

[1]On December 9, 2008, Plaintiff Michael Roland filed a notice of voluntary dismissal
[DE 177]. Therefore, the claims brought by Michael Roland are dismissed and he is no longer a
named plaintiff or part of the purported class.

[2]Named Plaintiff Mary Rafter does not allege that she is or was a participant in the ESOP
and she does not seek relief under ERISA.

[3]The ESOP Committee is a purported defendant in this action, however, no one has made
an appearance on behalf of the ESOP committee as an entity, and there is nothing in the record to
indicate that Plaintiffs failed to complete service of process on any entity or individual.
Therefore, the Court will assume that the liability of the ESOP Committee is imputed to that of

The thirteen-count Amended Consolidated Complaint (the "Complaint") [DE 142] was brought against: (1) U.S. Sugar; (2) its Board of Directors: William S. White, John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins, Ridgway White (as of October 2006), and Robert H. Bunker, Jr. (collectively the "Directors"); (3) its CFO, Gerard Benard; (4) one of its controlling shareholders, the Charles Stewart Mott Foundation (the "Foundation"); and the United States Trust Company, N.A. ("U.S. Trust")[4]. I will describe who the defendants are with some detail, including their familial relationship with each other due to the fact that Plaintiffs have alleged that they have tortuously acted together for the purpose of preserving and increasing their family's interest in U.S. Sugar.

Defendant United States Sugar Corporation ("U.S. Sugar" or the "Company"), is a privately-held Delaware corporation with its principal place of business in Clewiston, Florida. Plaintiffs allege that it does business in the State of Florida and is subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193(1)(a), (1)(b) and (2).

Defendant Charles Stewart Mott Foundation (the "Mott Foundation") is a private foundation and Michigan nonprofit corporation. The Mott Foundation directly owns approximately 19% of the shares of the Company, however; Plaintiffs allege that the Mott Foundation, together with William S. White and his family, is a controlling shareholder of U.S. Sugar and a means through which the Mott/White family exercises actual control over the operations of U.S. Sugar. Plaintiffs allege that

---

the individual named defendants and the corporate defendant.

[4]As of February 22, 2008, United States Trust Company, N.A. was merged into Bank of America, N.A. There is no longer any entity named United States Trust Company, N.A. This suit was filed in January 2008, prior to the merger. The surviving entity, Bank of America N.A., has responded to Plaintiffs' claims, and both plaintiff and Bank of America N.A. refer to the defendant entity as U.S. Trust for ease of reference.

3

the Mott Foundation is controlled by seven members of its "Corporation" which is controlled by William S. White, Claire Mott White, their daughter Tiffany White Lovett, and William H. Piper. Defendant William S. White is the President and CEO of the Mott Foundation and the Chair of its Board of Trustees. Defendant William H. Piper serves as Vice Chair of the Mott Foundation's Board of Trustees.

Defendant William S. White is married to Claire Mott White, a granddaughter of C S. Mott. He has been on the Board of Directors of U.S. Sugar for 37 years, and has been the Chair for 20 years.

Defendant Robert H. Bunker, Jr. was allegedly "installed" by William S. White as President and CEO of U.S. Sugar in or around August 2005, thereafter becoming a member of the Board of Directors and Executive Committee of U.S. Sugar.

Plaintiffs allege that at all times relevant to this action, the Board of Directors of U.S. Sugar included William S. White, John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins, Ridgway White (as of October 2006) and Robert H. Bunker, Jr. (collectively, the "Directors").

Defendant John Butler is the great grandson of C. S. Mott and grandson of Aimee Butler, who allegedly inherited a large block of U.S. Sugar stock from her father. He has been on the Board of Directors for 9 years.

Defendant Frederick S. Kirkpatrick is the Chief Operating Officer and a Director of the Mott Family Office, a corporation that manages a large portion of the Mott Family's assets. He is currently Vice Chair of the Board. He has been on the Board of Directors for 14 years.

Defendant Roy E. Peterson is the former President of the Mott Children's Health Center

4

("Children's Health Center"), a Michigan public charity founded by C. S. Mott and owns approximately 22% of the outstanding shares of U.S. Sugar. He has been on the Board of Directors for 16 years.

Defendant William H. Piper is a member of the Executive Committee of the Mott Foundation, as well as being a member and Vice Chair of the Board of Trustees of the Mott Foundation. He has been a member of the Board of Directors for 18 years.

Defendant W. Archibald Piper is member of the Board of Directors of the Children's Health Center, and he has been a member of the U.S. Sugar Board of Directors for 12 years.

Defendant Lloyd E. Reuss is alleged to be a longtime friend of William S. White, and he has been a member of the Board of Directors for 12 years.

Defendant Horace Wilkins formerly served as a Director of a privately-held company owned by the Mott family and controlled by William S. White. He has been a member of the Board of Directors for 6 years.

Defendant Ridgway H. White is the sone of William S. White and Claire Mott White and the great-grandson of C. S. Mott. He was installed on the board of directors in 2006, at the age of 27, and according to Plaintiffs, without any noteworthy business experience. He was appointed by William S. White, and he is also a Director in the Mott Family Office, and an employee of the Mott Foundation.

Defendant Gerard Bernard is the CFO and Senior Vice President of U.S. Sugar. Since June 23, 2006, he has been a member of the ESOP Committee.

Defendant U.S. Trust is a Delaware Corporation with its principal place of business in New York, NY. U.S. Trust was the Trustee of the U.S. Sugar ESOP and a named fiduciary of the U.S.

Sugar ESOP.

Defendant U.S. Sugar ESOP Committee (the "ESOP Committee") consists of various officer and/or employees of U.S. Sugar who manage the operation and administration of the U.S. Sugar ESOP. The ESOP Plan Document provides (at § 11.1) that the ESOP Committee was to consist of no less than three individuals appointed by the Board of Directors. The ESOP Committee is a named fiduciary of the Plan and is the "Administrator" of the Plan.

### C.    The Complaint and Motions to Dismiss

The Complaint alleges breaches of fiduciary duty to the Company's shareholders, particularly its employee shareholders, and violations of the Employee Retirement Income Security Act ("ERISA").

Plaintiffs bring five state law claims:

> **Count I**      **Breach of Fiduciary Duty – Duty of Loyalty and Good Faith**, against the Director Defendants;
>
> **Count II**     **Breach of Fiduciary Duty – Self-Dealing**, against U.S. Sugar, the Director Defendants and the Mott Foundation;
>
> **Count III**    **Breach of Fiduciary Duty – Majority/Controlling Shareholder Oppression of Minority Shareholders**, against William S. White and the Mott Foundation;
>
> **Count IV[5]**   **Breach of Fiduciary Duty – Duty of Care**
>
> **Count V**      **Conversion**, against William S. White and the Mott Foundation.

Plaintiffs bring eight ERISA claims:

> **Count VI**     **ERISA Breach of Fiduciary Duty – Failure to Prudently and Loyally**

---

[5]In their Response [DE 161], Plaintiffs give notice of their dismissal without prejudice of Count IV as the claim is not ripe for consideration. As such, this Order will not discuss issues raised in response to Plaintiffs' Count IV, and that count will be dismissed.

6

**Manage the Plan**, against U.S. Trust and the U.S. Sugar ESOP Committee, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

**Count VII**    **ERISA Breach of Fiduciary Duty – Failure to Provide Complete and Accurate Information to ESOP Participants**, against the ERISA Fiduciary Defendants, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

**Count VIII**    **ERISA Breach of Fiduciary Duty – Failure to Monitor ERISA Fiduciaries Appointed by Board of Directors**, against the Director Defendants, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

**Count IX**    **ERISA Breach of Fiduciary Duty – Breach of Duty to Avoid Conflicts**, against the ERISA Fiduciary Defendants, pursuant to ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

**Count X**    **ERISA – Co-Fiduciary Liability**, against the ERISA Fiduciary Defendants, pursuant to ERISA § 405(a), 29 U.S.C. § 1105;

**Count XI**    **ERISA § 406(b) – Engaging in Prohibited Self-Dealing Transactions**, against the ERISA Fiduciary Defendants, pursuant to ERISA § 406(b), 29 U.S.C. § 1106;

**Count XII**    **Removal of the ESOP Fiduciaries and Trustee (ERISA § 409)**, against the U.S. Trust and the U.S. Sugar ESOP Committee, pursuant to ERISA § 406(b), 29 U.S.C. § 1109(a); and

**Count XIII**    **Unlawful Interference with the Attainment of Benefits Under ERISA § 510**, against U.S. Sugar, William S. White, and Robert Bunker, pursuant to ERISA § 510, 29 U.S.C. §§ 1149 and 1132(a)(3).

All defendants filed motions to dismiss all the counts alleged against them. Defendant U.S. Trust filed its motion to dismiss [143] on October 15, 2008, and a reply [DE 172]. Defendant Charles Stewart Mott Foundation filed its motion to dismiss [DE 145] on October 27, 2008, and a reply [DE 171]. The Directors filed their motion to dismiss [DE 146] on October 27, 2008, and a reply [DE 170]. Defendants William S. White and Ridgway White filed their motion to dismiss [DE 147] on October 27, 2008, and a reply [DE 169].  Finally, Defendant U.S. Sugar filed its motion to dismiss [DE 148] on October 27, 2008, and a reply [DE 173]. On January 27, 2009, the Directors filed a

notice of supplemental authority [DE 188].

On November 17, 2008, Plaintiffs filed one consolidated response [DE 161] addressing all of the motions to dismiss. As such, Defendants filed their individual replies on December 4, 2008. Pursuant to this Court's Order [DE 182], the Parties gave notice [DE 185] to the Court on January 5, 2009, that this action will go forward despite developments outside of the lawsuit relating to the potential sale of Defendant U.S. Sugar.

## II.    Plaintiffs' Allegations[6]

U.S. Sugar is a privately held corporation founded by Charles Stewart Mott and it is largely controlled by his descendants. Defendant William S. White, the Chair of the Board of Directors, married one of Mott's granddaughters. Plaintiffs allege that a majority of the Board of Directors is beholden to him for their jobs both at U.S. Sugar and other Mott family organizations and are therefore not independent. The Mott/White Family directly and indirectly own slightly more than 4% of the outstanding shares. [DE 142, ¶ 36]. Ridgway White is the 29-year-old son of William S. White, and John Butler is the cousin of Claire Mott White, who is also Ridgway White's mother.

The Plaintiffs' Complaint [DE 142] brings both common laws and ERISA claims against the Defendants. They allege that in June of 2005, a third-party corporation, the Lawrence Group, entered into negotiations with the then-CEO of U.S. Sugar, Robert Dolson, to purchase the Company. [DE 142, ¶ 47]. In August of 2005, Dolson and the Lawrence Group reached agreement on a purchase price of $293 per share in cash for the purchase of all of the outstanding shares. [DE 142, ¶ 48]. This price was at a 51% premium over what U.S. Sugar represented to its employees was the Fair Market

---

[6]At the motion to dismiss stage, the Court accepts the facts alleged by Plaintiffs as true. As such, the factual background is that according to the Plaintiffs.

Value of their shares, and approximately $100 per share more than what U.S. Sugar had been paying its employees for the same shares at that time. [DE 142, ¶ 50]. According to the Plaintiffs, the offer was presented to the Board of Directors (the "Board"), whereupon William S. White installed a new CEO in Dolson's place, Defendant Robert Bunker, who took control of dealings with the Lawrence Group. [DE 142, ¶ 51].

On March 14, 2006, the Board formally rejected the Lawrence Group's offer. [DE 142, ¶ 58]. On January 8, 2007, the Lawrence Group made a second offer to buy all of the U.S. Sugar stock for $293 per share, a price that was 51% higher than what was currently being offered as the Fair Market Value. [DE 142, ¶ 64].

The price paid to the ESOP participants for their shares when they become eligible for a distribution is supposed to be the "Fair Market Value," that is, the price at which the shares would change hands between a willing buyer and a willing seller.   [DE 142, ¶ 3, 45]. The gravamen of Plaintiff's complaint arises from the fact that, throughout these negotiations with the Lawrence Group, U.S. Sugar's Board represented to its employee shareholders that the Fair Market Value of their shares was $199.10. [DE 142, ¶ 61].[7] They claim that an outside offer to purchase the non-public stock is and should be a primary factor in the determination of the Fair Market Value of the shares. Therefore, U.S. Sugar and the Board's exclusion of this offer for consideration in its pricing artificially depressed the price they paid to the shareholders who never knew any better.

Plaintiffs further allege that the Defendants purposefully withheld the information about the Lawrence Group offer in order to preserve the Mott/White family's control over the Company, and

---

[7]Plaintiffs further claim that the price the Company has paid for the shares has declined since the events at issue, from $199.10 per share to $180.00 per share, and the dividends have been suspended.

to increase the family's ownership interest in the Company by repurchasing and retiring the ESOP participants' shares for unfairly cheap prices as explained further below.

The Mott Foundation defendant, Chaired by William S. White, directly owns approximately 19% of the shares of U.S. Sugar. [DE 142, ¶ 36]. Two other charitable organizations also play a role in the Plaintiffs' claims: the Children's Health Center and the Community Foundation of Greater Flint. Plaintiffs explain that the Mott Foundation entered into an agreement with the Children's Health Center in 1990 that prohibits selling Company shares if the result of the sale causes the purchaser to take control of the Company, thereby securing the Mott/White's present control of the Company. In 1992, the Mott Foundation entered into a similar agreement with the Community Foundation of Greater Flint. Plaintiffs allege that the Mott Foundation, the Children's Health Center and the Community Foundation of Greater Flint, combined with the shares the Mott/White family own constitute 51% of the outstanding shares, and thereby give the Mott/White family *de facto* control of the Company.

The employee shareholders are not direct shareholders. They are ESOP participants who are beneficiaries of individual trust accounts held by the Trustee, U.S. Trust. The trust accounts hold shares in the Company. The Complaint alleges that the rejection of the Lawrence Group offer constitutes conversion and a breach of the Board's fiduciary duties to the ESOP participants as well as Ms. Rafter. The Complaint further alleges that the wrongful conduct and undervaluation of the ESOP participants' shares violated various provisions of ERISA.

## III.    Jurisdiction and Venue

Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because this is a purported class action and members of the purported class are citizens of a state different than that of any of the

10

Defendants, and the matter in controversy exceeds $5,000,000, exclusive of interest and cost. This Court has federal question jurisdiction pursuant to 29 U.S.C. § 1132(e), as certain of Plaintiffs' causes of action arise under ERISA, and supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

This Court has personal jurisdiction over all of the Defendants because ERISA provides for nationwide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(1), and all Defendants are residents of the United States. This Court also has personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(1)(A) because all Defendants would be subject to the jurisdiction of a court of general jurisdiction in the State of Florida.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2), because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, because a large percentage of the purported class lives in this District, and because a large portion of the assets of Defendant U.S. Sugar is located in this District. Defendants' motions to dismiss do not challenge jurisdiction and venue.

**IV.    Legal Standard for a Motion to Dismiss**

A motion to dismiss is appropriate when it is demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v King & Spaulding*, 467 U.S. 69, 73 (1984). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). Conclusory allegations in the

11

complaint need not be taken as true and the plaintiff must allege sufficient facts to support his allegations. *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1568 (11th Cir. 1986). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1959 (2007)(internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. Id.

## V.     The Motions to Dismiss

Before analyzing the merits of the legal arguments presented in the motions to dismiss, I believe it is helpful first to set forth a summary of the Defendants' individual arguments for dismissal. Many of the various Defendants' arguments overlap, therefore, after the summaries, I will discuss each argument for dismissal as it relates to the various counts.

### A.     U.S. Trust's Motion to Dismiss [DE 143]

Defendant U.S. Trust filed its motion to dismiss [DE 143] (Counts VI and XII) on October 15, 2008, arguing that Plaintiffs failed to exhaust their administrative remedies prior to filing suit. U.S. Trust is the Trustee of the ESOP and a named fiduciary. It claims that the ESOP Committee has adopted an administrative claims procedure that participants must follow before resorting to litigation. U.S. Trust has attached copies of the United States Sugar Corporation Employee Stock Ownership Plan (the "ESOP") and the United States Sugar Corporate Employee Stock Ownership Plan Summary Plan Description (the "Plan Summary") as exhibits to their motion [DE 143], urging the courts to consider those documents at the motion to dismiss stage.

12

The Court may consider these documents in ruling on U.S. Trust's motion to dismiss because they are "central to the plaintiff[s'] claim" and "undisputed." *Hanna v. WCI Communities, Inc.,* 348 F. Supp. 2d 1322, 1325 (S.D. Fla. 2004) ("Under established Eleventh Circuit precedent, a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.") (citing *Horsley v. Feldt,* 302 F.3d 1125, 1134 (11th Cir. 2002)).

U.S. Trust explains that the ESOP is an ERISA-governed employee benefit plan administered by the United States Sugar Corporation Employee Stock Ownership Plan Committee (the "ESOP Committee"). It consists of no less than three individuals appointed to serve by the Company's Board of Directors. Central to U.S. Trust's central argument rests on the language in Article 11.6 of the Plan Summary, which states as follows:

11.6    <u>Power and Authority</u>. The Committee shall have power and authority to interpret this Plan, and shall determine all questions of fact arising in connection herewith where the power or determination is not expressly conferred on another person, including, without limitation thereto, questions of Disability, Compensation and determination and distribution of any benefits. Any determination of fact or interpretation of this Plan made in good faith shall be final and binding on all interested persons, subject in the event of a denial of claim for benefits to such review procedures as are established for this Plan.

Article 11.11 states: "The Committee shall adopt a reasonable claims procedure." The claims procedure is stated in the Summary Plan, as discussed below. It states: "The *Committee* serves as the Plan Administrator and the *Committee* has the power to determine all questions regarding eligibility to participate in the ESOP, to maintain ESOP records, to make rules on the operation fo the ESOP, and to compute the amount and kind of benefits payable to you and your *Beneficiaries*. Benefit requests must be filed with the Benefits Department."

**B.    The Mott Foundation's Motion to Dismiss [DE 145]**

13

On October 27, 2998, The Mott Foundation filed its motion to dismiss and incorporated memorandum of law [DE 145]. Plaintiffs' Complaint alleges three counts against the Foundation: (1) breach of fiduciary duty – self dealing; (2) breach of fiduciary duty – majority/controlling shareholder oppression of minority shareholders; and (3) conversion. The Foundation argues that the three claims are preempted by ERISA because they arise out of the ESOP Plaintiff's alleged rights as ESOP participants, namely, to sell or not to sell their U.S. sugar Shares at Fair Market Value. The Foundation also argues that the first two counts do not state a claim because there is no fiduciary duty owed to Plaintiffs. The third claim, conversion, fails because the law does not recognize a conversion claim for an intangible property right to sell or not to sell shares.

Citing 29 U.S.C. § 1144(a), the Foundation argues that the state law claims should be dismissed because they are preempted by ERISA due to the fact that they relate to Plaintiffs' alleged rights as participants in the ESOP. The Foundation then argues that even if that are not preempted, the claims do not state a cause of action. Under Delaware law, a shareholder owes a fiduciary duty to other shareholders only if (1) it owns a majority interest, or (2) it controls the business affairs of the corporation. *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). The Foundation argues that because Plaintiffs admit in their complaint that it only holds 19% of the outstanding shares, and does not allege that the Foundation controls the business affairs, Plaintiffs have failed to state a claim for breach of fiduciary duty in Count II and III.

The Foundation further argues that the two shareholder agreements (attached to one prior complaint, but not attached to the Complaint) should be considered by the Court. The Foundation argues that those agreements, in which the Foundation and two other charities entered into an agreement restricting sale, do not make up the majority shareholder block required under Delaware

14

law because even combined with the other entities, and the Mott-White Family, fall short of a majority interest in the Company.

**C.    The Directors' Motion to Dismiss [DE 146][8]**

On October 27, 2008, the Directors filed their motion to dismiss and incorporated memorandum of law [DE 146]. The Complaint [DE 142] brings four counts against the Directors: (1) breach of fiduciary duty – duty of loyalty and good faith; (2) breach of fiduciary duty – self-dealing; (3) breach of fiduciary duty – duty of care; and (4) ERISA breach of fiduciary duty – failure to monitor ERISA fiduciaries appointed by the board of directors.

As with U.S. Trust's motion to dismiss [DE 143], this motion also claims that the ERISA counts should be dismissed for failure to exhaust administrative remedies. As with the Foundation's motion to dismiss, the Directors also claim that the common law claims are preempted by ERISA. In addition to those arguments, the Directors claims that five of the six plaintiffs lack standing to sue them, and that the one remaining plaintiff, Mary Rafter, lacks standing for injury causation.

**1.    The "Non-Holding Parties" don't have standing to sue because their shares were held in trust.**

First, the Directors assert that all the plaintiffs except Mary Rafter, specifically, Plaintiffs Johnson, Stanley, Matura, and Texton (the "Non-Holding Plaintiffs") lack standing to assert common law claims. Essentially, the Directors argue that the Non-Holding Plaintiffs never directly owned the shares of the Company, but instead, they were held by the Trustee (U.S. Trust). Citing the Trust Agreement, they state that U.S. Trust has the power to "hold, invest, and administer the Trust assets as a single fund without identification of any part of the Trust assets to the Company or to any

---

[8]At this point, I will not address the Director's arguments concerning the individual ERISA counts.

15

Participant . . . ." The Directors urge the Court to consider the Trust Agreement and Summary Plan Document ("SPD") as central to Plaintiff's claims, without converting the motion into a motion for summary judgment.

According to the Directors, the Plan provides an Account for each participant, which represents each participant's beneficial interest in the Plan's assets. The Directors then point to language in the Trust Agreement that states: ". . . neither the establishment of the Plan . . . nor the creation of the Trust or any Account . . . shall be construed as giving any Participant . . . any legal or equitable right against the Company, any Employer, the Committee, or the Trustees, unless such right shall be specifically provided for in the Plan." They argue that neither the ESOP Plan nor the Trust Agreement provides participants with the rights of shareholders during their participation in the Plan, but instead, only upon distribution do participants actually receive shares. They argue that the ESOP participants are not shareholders (and mention that they would not be entitled to vote the shares under Delaware law) and therefore lack standing for the common law claims.

   2.   **Plaintiff Rafter lacks standing because she never sold any shares in order to suffer an "injury in fact."**

Plaintiff Rafter does not allege that she is or was a participant in the ESOP and, does not seek relief under ERISA. The Directors argue that she lacks standing to assert any claim because she does not allege that she sold any of her shares, and therefore has not suffered "injury in fact." They incorporate Section I(b) of U.S. Sugar's motion to dismiss.

   3.   **Breach of Fiduciary Duty**

Directors then argue that Count I for breach of fiduciary duty fails to state a claim because the Directors did not have a duty to seek shareholder approval to reject the Lawrence Groups' offer and therefore owed no duty to disclose it. Citing *Stroud v. Grace*, 06 A.2d 75, 84 (1992), Directors

16

stat that "directors or Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." Directors then cite case law that makes explicit the conclusion to be drawn from *Stroud*, that "Delaware law does not require a Board to divulge material developments with respect to the company's business if the board does not seek the vote of the shareholders." *Kahn v. Roberts*, No. 12324, 1995 WL 745056, at * 8 (Del. Ch. Dec. 6, 1995). Directors then argue that assuming the Lawrence Group offer was material information, the board did not seek approval of shareholders, and therefore did not have to disclose it. Directors ask the Court to, at a minimum, dismiss the duty to disclose aspects of Count I.

### 4.    Duty of Loyalty

Directors argue that they did not breach a duty of loyalty because their actions were protected by the business judgment rule and that the "entire fairness doctrine" does not apply. For this argument, they primarily rely on *Gantler v. Stephens*, No. 2392-VCP, 2008 WL 401124, at *8 (Del. Ch. Feb. 14, 2008). However, on January 27, 2009, that *Gantler* decision was overturned by the Delaware Supreme Court in *Gantler v. Stephens*, 965 A.2d 695 (Del. Supr. 2009), and the Directors filed a notice of supplemental authority [DE 188] regarding the recent decision. In *Gantler*, plaintiff shareholders brought a breach of fiduciary duty action against the directs of the company for their rejecting a valuable opportunity to sell the Company, deciding instead to reclassify shares in order to benefit themselves, and issuing a misleading proxy statement to induce shareholder approval. The Supreme Court of Delaware held that the shareholders' complaint pled sufficient facts to overcome the business judgment presumption, thereby reversing the Court of Chancery's dismissal. The lower court had evaluated the complaint under the business judgment standard instead of the entire fairness

17

standard.

The *Gantler* Court held that "a cognizable claim of disloyalty rebuts the business judgment presumption," and that "the claim of disloyalty was subject to entire fairness review." *Id.* at 708. As pointed out by the Directors in their notice [188], the *Gantler* Court noted:

> [a]lthough it may be problematic to determine the fair price of a transaction that was never finalized, our decisions have applied the entire fairness standard in a non-transaction context. . . . That the Board did not implement any impermissible defensive measures does not, *ipso facto*, insulate their actions from entire fairness review. Nor does Delaware's broad allocation of power to directors require less searching review where shareholders are able to establish a cognizable claim of self-interest director behavior.

*Id.* at 709, FN 33.

Here, plaintiffs have made a similar allegation to that in *Gantler*: the directors, in buying back the shares from the ESOP members, were able to increase their personal holdings, and do so at a discounted price for the Company. In addition, Plaintiffs have stated this claim beyond vague allegations, distinguishing this case from *In re Paxson Comm'cn Corp. S'holder Litig.*, No. CIV. A. 17568, 2001 WL 812928, at * 10 (Del. Ch. July 12, 2001, in which the Plaintiffs merely pled that the "Board members also have close personal and business ties with each other").

**5.    Count II Fails to State a Claim for "Insider Trading" or "Self-Dealing"**

Directors also state that they have not engaged in insider trading. Citing *U.S. v. Heron*, 525 F.Supp. 2d 729, 737 (E.D.Pa.), they argue that insider trading "is committed when a corporate insider who has material, non-public information trades on that information without first properly disclosing it," and citing *In re Oracle Corp.*, 867 A.2d 904, 950 (Del. Ch. 2004), Delaware law requires the claim be supported by an allegation of scienter. However, on the face of the Complaint, Plaintiffs have alleged that the material non-public information was the Lawrence Group's offer of a 150%

18

premium on the share price paid by the Company, because it was known to the Directors and not disclosed to the Plaintiffs. Furthermore, the Complaint does allege that the Offer was not disclosed purposely in order to continue purchasing shares at the lower price offered to the ESOP participants.

Directors then state that Plaintiffs failed to adequately plead self-dealing because the Complaint does not allege that the Directors "received any material benefit that would constitute self-dealing from rejecting the Lawrence offers." They further allege that, as a matter of law, the mere fact that the directors will retain their board memberships, is not sufficient to create director self-interest.

### D.    Defendants William S. White and Ridgway White's (the "Whites") Motion to Dismiss [DE 147]

Defendant William White is the Chairman of the Board of U.S. Sugar, and named as a defendant in Counts I - V and VII - XIII. Defendant Ridgway White is also on the Board of U.S. Sugar and is the son of William White. Ridgway White is a named defendant in Counts I - II, IV, & VII - XI. Together, they will be referred to as the "Whites."

The Whites reiterate that the ESOP participants do not own the shares held in trust for their benefit under both Delaware law and the Trust Document, that they cannot vote the shares, and voting power is held instead by the trustee. Therefore, the Plaintiffs could not have sold stock even if they had known of the overture, so the failure to disclose the overture was not the proximate cause of harm to any Plaintiffs. They explain: "[t]he Lawrence overture was not a tender offer made to shareholders generally, and as Plaintiffs allege, the Lawrence family was only interested in acquiring at least 51% of the stock."

The Whites also argue that William white is a minority shareholder, therefore, Plaintiffs' allegations regarding majority/controlling shareholder status are insufficient as a matter of law, and

19

that Plaintiff's attempts to aggregate the ownership of the shareholders to satisfy the majority shareholder control test is legally deficient.

### E.     U.S. Sugar's Motion to Dismiss [DE 148][9]

In addition to the arguments already detailed in this Order, U.S. Sugar argues that Plaintiff Mary Rafter lacks standing under Count II, breach of fiduciary duty – self-dealing (the only state law claim against U.S. Sugar). Count II claims that U.S. Sugar repurchases the shares at an unfairly low price, however; Ms. Rafter does not allege that she sold any of her shares. Therefore, she has not alleged any injury.

U.S. Sugar goes on to argue that the Complaint is self-contradictory. They explain that the Complaint alleges that an offer was made for 100% of the stock, however, it also alleges that the Mott Foundation (which owns approximately 19% of the shares) entered into shareholder agreements with two other foundations prohibiting the sale of stock if the result of such a sale would give the purchaser control of the company. Under these circumstances alleged in the Complaint, no purchaser could ever obtain more than 49% of the company. Further, the minimum the Lawrence Group would have accepted is 51%. Therefore, unable to reach 51% ownership due to the Mott Foundation shareholder agreement, the Lawrence Group's offer would never have come to fruition.

U.S. Sugar also argues that the allegation that the ESOP would have tendered its shares is speculative: the ESOP participants have no right to tender the shares, only the Trustee can do that. The Complaint lacks the allegation that the Trustee would have tendered the shares. The Trustee,

---

[9]In its motion to dismiss, U.S. Sugar states that pursuant to a confidentiality agreement between U.S. Sugar and the Lawrence Group, the Lawrence Group agreed not to make an offer for U.S. Sugar shares for two years without the written consent of the Board of Directors. Therefore, there could be no agreement with Robert Dolson for the Lawrence Group to purchase all of the shares. This is an issue of fact and not property before the Court at this time.

under the Trust Agreement, gives the Trustee discretion whether or not to buy shares, even at a premium. However, the participants do have the right to direct the Trustee in its action, as discussed below.

## VI.    Discussion

I will address the two threshold issues raised in multiple Defendants' motions first: failure to exhaust administrative remedies, and the preemption of the state law claims by ERISA.

### A.    Plaintiffs Must Exhaust Administrative Remedies

Defendants William S. White and Ridgway White's motion [DE 147], U.S. Sugar's motion [DE 148], the Director's motion [DE 146], and U.S. Trust's motion [DE 143] all argue that Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies, and that the administrative remedy process was set forth in the Plan Summary . Plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court, but the district court has sound discretion to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place. *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315. This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself. *Id.* at 1316 n. 6. The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which is reviewed only for clear abuse of discretion. *Id.* at 1315.

There are compelling policy rationales for the exhaustion requirement, well-stated by courts in other jurisdictions. "Courts require exhaustion of administrative remedies 'to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for

21

benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 249 (3d Cir. 2002) (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)). *See also Lane v. Sunoco Inc.*, 260 Fed. Appx. 64, 66 (10th Cir. 2008) (stating that not requiring exhaustion would permit premature judicial interference and would impede those internal processes that result in a completed record of decision-making for a court to review) (internal citations omitted), cited by Jennifer E. Johnsen, Nicole J. Buntin, & Mary A. Giorgi, *ERISA Litigation: Back to Basics*, 56-JAN Fed. Law. 26 at * 27, FN 25 (2009). Therefore, the exhaustion requirement rightly puts the burden on the ESOP Committee, and ultimately, the corporation, to fairly handle the claims of its participants, and safeguards against the expense of possibly unnecessary litigation.

In this case, Plaintiffs admit that they have not pursued any administrative remedies provided in the Plan Summary, instead; they put forth four arguments for exemption from this requirement: (1) the Plan Summary which sets forth an administrative procedure is not properly before the Court and therefore cannot be considered; (2) the administrative procedure cannot remedy Plaintiffs' claims; (3) embarking on the administrative procedures would be futile because the ESOP Committee is appointed by the Board of Directors; and (4) Plaintiff Mary Rafter cannot be said to be required to exhaust administrative remedies, therefore, in the interest of the parties' costs and judicial economy, the case should not be stayed as to the other Plaintiffs to exhaust remedies before returning to court with their claims.

First, Plaintiffs argue that the Defendants cannot rely on the Plan Summary because (1) it was created by U.S. Sugar and is not a Plan document; and (2) it is not properly before the Court because it is not referenced or included in the Complaint, therefore, it should be treated as a matter for

22

evidence and not on a motion to dismiss. In further support, Plaintiffs state that there is no evidence on the record that Plaintiffs were ever provided with the Plan Summary, that the procedures were actually utilized, or that the Plaintiffs knew of any administrative remedies. However, Plaintiffs do not actually make the claim that the Plaintiffs never received the Plan Summary.

A document is properly before the Court on a motion to dismiss even if it is not referenced or included in the complaint when it is (1) central to the Plaintiffs' claims; and (2) undisputed in terms of authenticity. *See Maxcess, Inc. V. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 FN 3 (11th Cir. 2005), citing *Horsley v. Feldt*, 304 F.3d 1225, 1135 (11th Cir. 2005). Plaintiffs do not dispute that the ESOP is properly before the Court, as it was, in fact, referenced in the Complaint. The Plan Summary, however, is brought before the Court by the Defendants. It purports to be a type of users' guide that "[t]he Company publishes . . . to provide [the ESOP participant] with the general information [an ESOP participant] need[s] to understand the benefits available . . . under the ESOP." [DE 135, Exhibit 2, p. 3]. As such, the plan summary is central to the Plaintiffs' claims in so far as it relates to the administration and implementation of the ESOP. There is also no dispute of its authenticity. Therefore, the Plan Summary is properly before this Court on the motion to dismiss. I note, however, that consideration Plan Summary is not essential to my determination that Plaintiffs need to exhaust administrative remedies, as such a determination can be based off of the ESOP and the Trust Agreements alone: § 11.6 of the ESOP states that the Committee has the "power and authority to interpret this Plan, and shall determine all questions of fact arising in connection herewith where the power or determination is not expressly conferred on another person . . . ."

Plaintiffs also argue that even if they had made a claim to the Committee, as a practical matter, there is nothing the Committee can do to satisfy their claims. They argue that, under the

23

ESOP, it is the responsibility of the Trustee to value the shares, and the ESOP does not give the Committee power to revalue the shares to reflect the Lawrence Groups offer. Further, Plaintiffs point out that "[w]hile U.S. Trust argues that the [ESOP] Plan gives the ESOP Committee broad discretion, it does not point to anything that would allow the ESOP Committee to supplant U.S. Trust's role and take charge of determining the Fair Market Value of the shares for itself." [DE 161, p. 36].

There are certain textual inconsistencies between the ESOP and the Trust Agreement. Section 5.3 of the Trust Agreement states as follows:

> (a) **The Trustee shall determine, and report to the Committee, the current fair market value of the assets and liabilities of the Trust Fund, and Participants' and Beneficiaries' interest therein**, as of the regular Valuation Date and as of any interim Valuation Date that may be fixed by the Committee.

> (b) **The fair market value of assets of the Trust Fund shall be determined by the Trustee.** In valuing the assets, the Trustee may rely on information from the Company, the Committee, appraiser, or other sources, and will not be liable for an inaccurate valuation based in good faith on such information. Notwithstanding the foregoing, the fair market value of shares of Company Stock shall be (I) if the Stock is readily tradeable on an established securities market on the Valuation Date or (ii) if the Stock is not readily tradeable on an established securities market, the fair market value determined in good faith by the Trustee based upon an apprisal by an independent appraiser meeting requirements similar o the requirements of Code section 170(a)(1).

Trust Agreement [DE 146, Ex. 3], emphasis added.

Based on those two passages alone, Plaintiffs can conclude that the "power or determination" of the stock price is "expressly conferred on another person," namely, the Trustee. However, in reading both the ESOP and the Trust Agreement as an integrated whole, as affirmed in *Bickley*, one can observe that the ESOP Committee, too, can determine the valuation of stock that is at issue in this litigation. Section 5.3 of the ESOP vest the Committee with power to value the accounts:

24

5.2    Valuation of Accounts. The Committee shall value each Participant's Accounts as of each Valuation Date as herein provided to reflect each Participant's interest in the Trust Fund. For this purpose, the value of Stock held in the Trust shall be its fair market value as determined by the Committee based upon the determination of one or more independent appraisers having expertise in rendering such evaluation and in accordance with applicable regulations under the Code and the Act.[10] The Committee's determination of the value of the Stock as of each Valuation Date shall be reported to Participants.

This provision gives the Committee authority to correct the allegedly flawed valuation of the stock.

This provision, combined with the § 11.6 provision which gives the Committee the "power and authority to interpret this Plan, and [to] determine all questions of fact arising in connection herewith," puts the plan participants on notice that (1) the Committee has the power to determine questions of fact" relating to the Fair Market Value of the stock price; and (2) the Committee has the power to determine the fair market value of the stock price. Therefore, based solely on the ESOP, the Participants are alerted to the fact that they could seek an administrative remedy for the complaint, despite the seemingly inconsistent passage in the Trust Agreement.

In addition, the Plan Summary outlines the administrative remedy procedure whereby a plan participant may prevail upon the Committee to change its course. The Plan Summary expressly provides the following:

The *Plan* [the ESOP] is administered by the *Committee*, which consists of no less that 3 individuals appointed by the Board of Directors of the *Company*. The *Committee* serves as the Plan Administrator and the *Committee* has the power to determine all questions regarding eligibility to participate in the ESOP, to maintain ESOP records, to make rules on the operation of the ESOP, and to compute the amount and kind of benefits payable to you and your *Beneficiaries*.

_____

[10]The "Code" refers to the Internal Revenue Code of 1986, as amended from time to time and as in effect at the time with respect to which such term is used. *See* ESOP at 5. The "Act" refers to the Employee Retirement Income Security Act (ERISA) of 1974, as amended from time to time and as in effect at the time with respect to which such term is used. The 1934 Securities and Exchange Act. *See* ESOP at 2.

25

Benefit requests must be filed with the Benefits Department.

- ### *How to file a claim*

All claims for benefits under the ESOP which have been denied by the Benefits Department must be filed with the *Committee* in writing. The *Committee* will review your claim and, if your claim is denied, the *Committee* will notify you, in writing and generally within 90 days of the date your claim is denied, if your claim has been denied. Reference to the ESOP provisions upon which the denial was based will be included and you will be advised what you should do to have the claim reconsidered. . . .

Plan Summary [DE 143, Ex. 1, p. 19].

Plaintiffs argue that they are not making a claim for particular benefits under the ESOP, and they had no claim for benefits "denied," but instead, they claim breach of fiduciary duty and improper valuation of the Fair Market Value of the shares. [DE 161, p. 36]. However, they are making a claim that the stock price of their shares held in trust was too low based on the Lawrence Group's offer. Redeeming the share at retirement, early retirement, or at other times allowed by the plan is the plan's primary purpose, as it was "established for the exclusive benefit of the Participants." *See* ESOP, § 12.1. From my reading of the ESOP, receiving the fair market value for one's shares, and holding that valuation in a trust account before their redemption upon retirement, are the chief benefits of the of the plan. Therefore, if a participant is not receiving fair market value for their shares, or if their trust account is not valued to reflect the fair market value of the shares, that participant can make a claim to the Committee that s/he is being denied benefits under the plan. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325 (11th Cir. 2006)(in an ERISA action, the Eleventh Circuit rejected a plaintiff's argument that because the administrative remedy under the plan only related to the denial of benefits, and the plaintiff's claims were statutory, there was no remedy available under the plan).

26

Plaintiff's third argument must also be addressed. Plaintiffs assert that even if a claim was made to the Committee, the Committee would not provide the relief Plaintiffs seek because the ESOP Committee is appointed by the Board of Directors, thereby making exhaustion futile. In *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008), the Court held that "[t]he exhaustion requirement applies to complaints for breach of fiduciary duty under ERISA regardless of whether the breach was committed by a third-party administrator of the plan or the employer." I have reviewed an order issued in another ERISA case brought in this district, *Almonor v. Bank Atlantic Bancorp, Inc.*, Case No. 07-61862-CIV-UNGARO, filed as Plaintiff's notice of supplemental authority [DE 196].    Judge Ungaro held that the ERISA plaintiffs need not exhaust their administrative remedies because the claim was brought on behalf of the plan itself for breaches of fiduciary duty, as opposed to having been brought by persons whose claims have been denied under the plan.  The Court also gave a second reason for waiver of the exhaustion requirement:

> Second, the Court excuses Plaintiff from the administrative exhaustion requirement because it was clear that the procedure would be futile in this case. The claims here are made against the same fiduciaries who would decide Plaintiff's claims, the very same Defendants who have publicly disparaged Plaintiff's claims and made their positions known. Therefore, there would be no purpose in requiring Plaintiff to pursue the claims procedures articulated in the Plan.

*Almonor v. Bank Atlantic Bancorp, Inc.*, Case No. 07-61862-CIV-UNGARO, at *29.

In this case, the Director Defendants appointed the fiduciaries to the plan, the ESOP committee. The ESOP committee, in turn, appoints the Trustee. As recounted above, the ESOP committee must consist of no less than three individuals appointed by the Board. Plaintiffs allege that Defendant Gerard Bernard has been on the ESOP Committee since June 23, 2006. And, Plaintiffs have alleged that the ESOP Committee "consists of various of officers and/or employees of U.S. Sugar who managed the operation and administration of the U.S. Sugar ESOP." [DE 142,

27

¶ 34].Although Plaintiffs have made a showing that the Board does have some control over the ESOP Committee, and even some overlap in the people seated on the Board and the Committee, Plaintiffs have not shown sufficiently that seeking an administrative remedy is necessary futile.

Finally, Plaintiffs' assert that regarding the costs to the parties and judicial economy, the case should not be stayed as to the ERISA claims because Ms. Rafter's claims can go forward. I recognize that the costs involved in pursuing two tracts of litigation at the same time are great. I give great weight to the Plaintiffs' argument that requiring the exhaustion of administrative remedies will necessarily cause them to incur additional expense, and possible delay of the resolution of their claims. These factors are momentous, however; for the reasons stated above, I hold that on balance, the reasons compelling exhaustion outweigh the additional expense. Although it will not remedy Plaintiffs' entire grievance with regard to additional costs, if they so chose, Plaintiffs may move the Court to stay the claim of Ms. Rafter until it may be prosecuted along with the ESOP participants' ERISA claims if they come before the Court, depending on the resolution of the administrative remedy process.

**B.     The State Law Claims Are Not Preempted by ERISA**

At the outset of their response [DE 161], Plaintiffs seek to clarify why they have brought both state law claims and ERISA claims. William S. White, the Directors, and the Mott Foundation argue that the common law claims against them are preempted by ERISA because they relate to their rights under the ESOP. Plaintiffs respond that the common law claims are distinct, that they arose out of the Defendants conduct in (1) "failing to extend the Lawrence Group's offers to the shareholders; and (2) their rejection of the offer. In contrast, the ERISA violations occurred after that, at the time when certain defendants allegedly "misrepresent[ed] to the ESOP participants that the Fair Market Value

28

of their shares was far below what the Lawrence Group offered." [DE 161, p. 28]. Plaintiffs say that the basis of their common law claims is the same as that of Mary Rafter, that of a minority shareholder, and in support thereof, cite *Ervast v. Flexible Products Co.*, 346 F.3d 1007 (11th Cir. 2003). In short, the common law claims arise from the failure to disclose the offer and the failure to sell the shares in response to the offer. The ERISA claims arise out of the alleged purposeful undervaluing of the ESOP shares after the Lawrence Group's offers. This distinction is central to Plaintiffs' argument that the ERISA claims do not preempt the state law claims.

In *Ervast*, the plaintiff, a participant in an ERISA-governed employee benefits plan, brought only state law claims for breach of fiduciary duty in state court. Defendants removed to federal court on preemption grounds, and the district court denied summary judgment for plaintiff and granted it for defendant. Plaintiff appealed, and the Eleventh Circuit reviewed the preemption issue. (A district court's preemption analysis is reviewed de novo. *Hall v. Blue Cross/Blue Shield of Ala.*, 134 F.3d 1063, 1064-65 (11th Cir.1998)). The appeals court held that the district court erred in evaluating the preemption issue under a "defensive preemption" standard instead of a "super preemption" standard, as set forth in *Butero v. Royal Maccabees Life Ins.*, 174 F.2d 1207, 1212 (11th Cir. 1999). *Ervast*, 346 F.3d at 1013. The appeals court held that when the "super preemption" standard is properly applied to the facts in the case, there is no preemption of Plaintiff's state law claims, thereby denying the parties federal jurisdiction and making remand to state court appropriate. *Ervast*, 346 F.3d at 1017.

As the *Ervast* Court explains, super-preemption is a jurisdictional inquiry, and defensive preemption is a substantive issue, and they are evaluated under different standards. *Ervast*, 346 F.3d at 1012, 1014.[11] In this case, the preemption issue raised by Defendants is "defensive preemption"

---

[11]There is a third type of preemption, "complete" preemption, which occurs when ERISA completely preempts the area of an employee benefit plan and thus converts state law claims into

29

because jurisdiction already properly lies in federal court, due to the ERISA claims. Therefore, the "super preemption" evaluation done by the *Ervast* Court does not apply in this case.

However, as noted by the *Ervast* Court, "there might be some overlap between the two issues" and many of the facts in the *Ervast* case are similar, so it is worth a more careful examination. *Id.* at 1012. As in this case, in *Ervast*, the plaintiff employee participated in an ESOP plan, through which the employer company made contributions to a trust that invested primarily in the corporate stock, and held the assets for the benefit of the participants. *Id.* at 1009. As is the case here, the ESOP trustee maintained a separate account for each participant, however, the participants did not directly hold stock as shareholders. *Id.* Additionally, as is the case here, the participants had a "put" option, which obligated the company or trustee to purchase the participant's shares at a price valued based on an annual independent valuation of the company's stock. *Id.*

In September of 1999, the employer company entered into a confidentiality agreement with another company regarding a potential sale, and the following January the merger was consummated.[12] *Id.* at 1010. At that time, October 26, 1999 was the date selected "as the point after which the shareholders who sold their [employer company] shares were to receive the higher merger price because it was the date [the employer company] deemed the merger negotiations became 'material.'" *Id.* Meanwhile, the plaintiff had exercised his "put" option on October 12, 1999, in ignorance of the contemplated merger. *Id.* He subsequently brought suit in state court for breach of fiduciary duty and negligence for the employer company's failure to disclose the merger information

---

federal claims when the state law claim is preempted by ERISA and also falls within the scope of the civil enforcement section of ERISA, Section 1132(a). *See Ervast*, 346 at 1014 n. 7.

[12]In another similarity, U.S. Sugar claims that it entered into a confidentiality agreement with the Lawrence Group in relation to the company's discussions of a potential sale. [DE 173, p. 2]

30

that would have affected his decision postpone the exercise of his put option. *Id.* He claimed he was

entitled to the difference in the price he received for his put, and the at which the shares were

valued. *Id.* at 1015.

After removal, the district court determined that the claims were "super" preempted by

ERISA. On appeal the appellate court disagreed with the district court's determination that the

claims were "super" preempted because the court evaluated them using a "defensive" preemption

analysis:

> This conclusion [that the state law claims were preempted] exposes the preexisting
> error by the district court – Ervast's claim does not contest his distribution under the
> terms of the ESOP. Instead, he claims a right to information that, if he possessed,
> would have changed his decision making process with regard to the time he sought to
> collect his benefits. Ervast also does not claim entitlement to this information under
> the terms of the ESOP; rather, his claim is based on his status as minority shareholder
> and the duty owed him by the majority shareholders."

*Id.* at 1015.

The Court of Appeals held that the plaintiff's claims "did not seek 'compensatory relief akin to that

under § 1132 under the fourth prong [of the *Butero* test], and thus we need not reach the arguments

concerning the remaining three prongs of the *Butero* analysis. *Id.* at 1014-5. Importantly, the *Ervast*

plaintiff did "not contend that the valuation for the shares he received under the ESOP was improper

under the terms of the ERISA plan," but instead he "he hinges defendants' liability on a failure to

communicate material information to which he allegedly was entitled as a shareholder and affected

his individual decision to . . . cash out." *Id.* at 1015. Therefore, the Court held that

> [t]he relief [plaintiff] seeks, and the basis upon which that relief is sought, is not akin to that
> available under §1312(a). [Plaintiff's] allegations do not in any way involve a clarification
> of his rights, nor is he seeking to enforce his rights *under the terms* of the ESOP. [Plaintiff]
> does not dispute the distribution he received as being contrary to the terms of the plan, or that
> under its terms he should have received more than he did. Thus, neither the second nor third
> types of claims for recovery under § 1132(a) are applicable here.

31

*Id.*

The Court of Appeals emphasized that the plaintiff's claim

does not contest his distribution under the terms of the ESOP. Instead, [plaintiff] claims a right to information that, if he possessed, would have changed his decision making process with regard to the time he sought to collect his benefits. [Plaintiff] also does not claim entitlement to this information under the terms of the ESOP; rather, [plaintiff's] claim is based on his status as a minority shareholder and the duty owed him by the majority shareholders.

*Id.*

Finally, the court stated: "we are not considering a claim casting the parties in [ERISA] roles . . . [t]he state law action does not . . . call into question the administration of the ESOP." *Id.* at 1016. The Court held that plaintiff's state law claim for breach of corporate fiduciary duty "is not completely pre-empted because it does not seek compensatory relief "akin to" that available under § 1132." *Id.*

Defendants correctly point out that the review the *Ervast* court took was under the super-preemption standard and not the defensive-preemption standard that is appropriate in this case. Based on this difference, Defendants argue that *Ervast* should have no precedential value. However, defendants fail to show how applying the defensive preemption standard mandates a different result, particularly when the *Ervast* Court itself see "overlap" between the two issues. *See also Ervast*, 346 F. 3d at 1014 ("Defensive preemption may not be a prerequisite for complete preemption, but they usually co-exist").

For example, the Eleventh Circuit's four-part test to determine super preemption (as was required in *Ervast*) requires that: "(1) relevant ERISA plan exists, under which a (2) plaintiff with standing is suing (3) an ERISA entity for (4) compensatory relief akin to that available under § 1132(a); often this will be a claim for benefits due under a plan." *Id.* at 1013 (internal quotation

32

marks omitted). Citing 29 U.S.C. § 1144(a), William S. White, the Directors, and the Mott Foundation argue that the state law claims "relate to" the ERISA claims:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

However, defendants do not explain how the super preemption test demands a different result in *Ervast* from applying the plain reading of the statute. Specifically, defendants do not explain why the fourth prong of the test – finding that a plaintiff is suing under state law claims "compensatory relief akin to that available under § 1132(a)" – is a lower threshold for standing than finding that a plaintiff is suing under state law claims that "relate to any employee benefit plan described in section 1003(a)." Certainly, differences may exists, but as they are applied to this case, Defendants have not argued, and I cannot see how the "relate to" requirement under the statute compels a different result than the Eleventh Circuit super preemption test to the case at hand. Therefore, based on *Ervast*, I hold that the state law claims are not preempted by ERISA insofar as they relate to fiduciary duties that do not arise out of the ESOP documents or Trust Agreements.

**C.    Most of the Plaintiffs Lack Standing to Bring Common Law Claims**

Even without preemption, the question remains whether Plaintiffs have standing to bring the state law claims, despite the fact that they do not directly own the stock as shareholders, but merely have an interest in trust accounts that hold the stock through the ESOP. At this point, I reiterate that with regard to the state law claims, Plaintiffs allege that they arise out of (1) "failing to extend the Lawrence Group's offers to the shareholders; and (2) their rejection of the offer. This highlights an important difference between the Plaintiffs' claims and those of the plaintiff in *Ervast*. In this case,

33

Plaintiffs claims that the offer should have been extended to the ESOP participants so that the participants could take some action – namely, to vote their shares to accept the offer. In *Ervast*, the plaintiff claimed that the merger possibility should have been disclosed to him as an ESOP participant so that he too could have taken some action – namely, to delay exercising his put option. In the later description, the plaintiff had an uncontested right to exercise his put option, but in this case, Plaintiffs' right to decide to accept the offer is not only contested, but not supported by the record or case law. Further, with regard to the second issue giving rise to the state law claims – the Defendant's rejection of the offer – Plaintiffs have not clearly shown that under Delaware law, Defendants owed a duty to the ESOP participants, or any minority shareholder, to accept the offer, upon which a claim could be made.

In this section, the "Plaintiffs" to which I refer are those excluding Mary Rafter, the direct shareholder. Plaintiffs have brought state law claims as a minority shareholders to whom the majority shareholders owe duties under Delaware law. In contrast, the *Ervast* plaintiff brought state law claims under Georgia corporate law, and the *Ervast* Court stated that "Georgia corporate law permits this direct action by a minority shareholder, apparently even if those shares are held in trust." *Id.* at 1016. Plaintiffs do not cite to any case applying Delaware law that clearly indicates that they are entitled to standing to bring a direct claim as trust beneficiaries. Neither party cites to a case under Delaware law that either explicitly allows or denies standing for ESOP participants who bring common law fiduciary duty claims where they are not direct shareholders, but merely beneficiaries of shares held in trust within an ESOP, and I know of none.

The Defendants dispute that the Plaintiffs have any standing as shareholders independent of the rights they hold under the ESOP. In Plaintiffs' response [DE 161], they claim that a number of

34

courts have held that ESOP participants and other beneficial stockholders have standing under Delaware law to bring common law claims under a variety of circumstances. Defendants replied that the cases cited by Plaintiffs in support of their standing are all shareholder derivative cases, and are therefore inapposite. *See, e.g., Housman v. Albright*, 857 N.E.2d 724 (Ill. App. 2006)(holding ESOP participants were equitable stockholders with standing to maintain a shareholders' derivative suit under Delaware law); *Elish v. Wilson*, 434 S.E.2d 411 (W. Va. 1993)(holding that ESOP member can bring a derivative action as equitable owners of stock); *Brown v. Dolese,* 154 A.2d 233, 239 (Del. Ch. 1959)(In derivative action, the equitable owner of shares has standing, despite his failure to appear as holder, as trustee, of legal title to shares of corporation); and *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000).

In the cited cases, Employee Stock Ownership Plan participants had standing to bring *shareholder* derivative claims. In this case, Employee Stock Ownership Plan participants bring direct claims as shareholders. The lexicon involved in these two scenarios suggest that Defendants argue a distinction without a difference. In both types of suits, non-direct, or "beneficial" shareholders seek standing as direct shareholders to pursue their claims. However, in a derivative suit, the entity that is said to have suffered the injury is the corporation itself, and the determination of standing turns on who suffered the alleged harm and who benefits from the remedy.[13]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992) continues to be the standard bearer on issues of standing:

First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally

---

[13]In their response, the White Defendants point out the obvious distinction between derivative actions and direct actions. Analysis turns on who suffered the alleged harm and who would benefit from the remedy; if the corporation, then derivative, if the shareholders, then direct. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1013, 1036 (Del. 2004).

protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2136 (internal citations omitted).

Further, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.*, 504 U.S. at 561, 112 S.Ct. at 2137.

Defendants argue that the Trust Agreement provides that ". . . neither the establishment of the Plan . . . nor the creation of the Trust or any Account . . . shall be construed as giving any Participant . . . any legal or equitable right against the Company, any Employer, the Committee, or the Trustees, unless such right shall be specifically provided for in the Plan." [Trust Agreement, p. 71]. Defendants then argue that under Delaware law, only the Trustee can vote the shares held in trust: "§ 217. Voting rights of fiduciaries . . . (a) Persons holding stock in a fiduciary capacity shall be entitled to vote the shares so held . . .." 8 Del.C. § 217. Defendants' argument on voting is in response to Plaintiffs' argument that they do have standing because they are, in fact, entitled to vote their shares in response to the Lawrence Group's offer.

Plaintiffs' claim to injury is that (1) the Board of Directors (and others) failed to extend the Lawrence Group's offers to the shareholders; (2) their rejection of the offer. Plaintiffs argue that they have a right to the information about the Lawrence Group's offer as shareholders, and that such information would have given them the right to direct the Trustee to sell their shares, and that such a right is based solely as their status as shareholder. More specifically, Plaintiffs allege that they have

36

standing because they should have been entitled to vote on the Lawrence Group's offer pursuant to Section 4.4(a) of the Trust Agreement, which allows the ESOP participants to direct the trustee how to vote. Section 4.4(a),(b) states as follows, with emphasis added.

    (a)    If the Company has a registration-type class of securities (as defined in Section 409(e)(4) of the Code), the all tender or exchange decisions with respect to Company Stock held by the Trust shall be made in accordance with the following provisions of this section 4.4(a).

        (I)    **In the event an offer shall be received by the Trustee** (including a tender offer for shares of Company Stock subjection to Section 14(d)(1) of the Securities Exchange Act of 1934 or subject to Rule 13e-4 promulgated under that Act, as those provisions may from time to time be amended) **to purchase or exchange any shares of Company Stock held by the Trust, the Trustee will advise each Participant** who has shares of Company Stock credited to such Participant's Account in writing of the terms of the offer as soon as practicable after commencement and will furnish each Participant with a form by which **he may instruct the Trustee confidentially whether or not to tender or exchange the shares allocated to such Participant's account** .

    . .

    (b)    If the Company does not have a registration-type class of securities, then the Trustee shall tender or exchange, or not tender or exchange, all allocated and unallocated shares in its own discretion.

Plaintiffs allege that Section 4.4(a) applies because (1) U.S. sugar stock is a "registration-type class" security; and (2) § 4.4(b) applies only to "tender offers," and the Lawrence Group did not make a "tender offer."

A "registration-type class" of securities is a class that either (1) is required to be registered under section 12 of the Securities Act of 1934, or (2) would be required to be so registered except for the exemption provided in § 12(g)(2)(H). 26 U.S.C. § 409(e) (ESOP voting rights). Section 12(g)(2)(H) contains an exemption from registration for qualifying "stock-bonus, pension, or profit-sharing plans." Plaintiffs argue that for the exemption, "U.S. Sugar could not treat its over 4,000 employee shareholders as a single shareholder in order to avoid section 12's registration

37

requirements." [DE 161, p. 11]. Defendants deny that the shares are "registration-type class," and therefore, the right to vote the shares cannot be triggered. As the ESOP participant Plaintiffs are not direct shareholders, Plaintiffs can not state a claim that the employee participants are individual shareholders for the purpose of registration.

Defendants agree with Plaintiffs that the Lawrence Group's offer was not a "tender offer" and therefore § 4.4(b) does not apply. However, Defendants also argue that § 4.4(a) does not apply either, because § 4.4(a) applies only to offers "received by the Trustee," and Plaintiffs do not plead that the offer was made to the Trustee. [DE 169, p. 5]. In sun, Plaintiffs have not stated a claim alleging that they have been deprived of their right to vote pursuant to § 4.4 of the Trust Agreement, as they have not pled that the events triggering the right to vote ever occurred.

Plaintiffs argue that even if the Court finds that they did not have the right to vote on the Lawrence Group's offer (and only the Trustee would), they still have standing, because a duty was owed to the ESOP participants "irrespective of who would have been or would not have been entitled to tender their shares in response to the offer." [DE 161, p. 11]. Defendants respond that the ESOP participants are not actually stockholders, but only potential stock holders, as under the terms of the plan, they can elect to receive a payment for the value of the shares or receive direct ownership of the shares. Delaware law treats actual stock holders and prospective stockholders quite differently. *Montgomery*, 231 F.3d at 407, *citing Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174-77 (Del. 1988). Most significantly, prospective stockholders are not owed fiduciary duties. *Id.* Fiduciary duties arise only after a stockholder comes into actual possession of stock, regardless of how certain the stockholder's future ownership was when the challenged transaction took place. *Id.* Therefore, because prospective stockholders are not owed fiduciary duties under

38

Delaware law, and the ESOP participants have no present right to the value in the account, the ESOP participants should not be considered stockholders for purposes of standing. *Id.*

The ESOP participants have an interest in the stock and in the stock's price as it relates to them as participants in the ESOP under ERISA, but that interest is not an interest as a direct shareholder under Delaware law. Therefore, the common law claims cannot allege that the plaintiffs have suffered an "injury in fact" - an invasion of a legally protected interest, as required by *Lujan*. As such, it is appropriate to dismiss the ESOP participants' breach of fiduciary duty claims. Plaintiffs can seek redress for the alleged mis-pricing of the shares through pursuing remedies under ERISA.

Plaintiffs also brought a conversion claim, Count IV, against William S. White and the Mott Foundation, alleging that they had wrongfully taken Plaintiffs right to sell their shares in response to the Lawrence Group's offers. As discussed above, Plaintiffs as ESOP participants, did not have the right to sell their shares in response to the Lawrence Group offer made to the Board of Directors. Therefore, they have failed to state a claim for conversion.

That leaves the common law claims brought by Plaintiff, Mary Rafter, who is a direct shareholder in the stock. Plaintiffs, including Mary Rafter, have failed to state a claim in Counts II, III, and V against the Mott Foundation. Plaintiffs concede that the Mott Foundation is a minority shareholder. Under Delaware law, a shareholder owes a fiduciary duty to other shareholders only if (1) it owns a majority interest, or (2) it controls the business affairs of the corporation. *Ivanhoe Partners v. Newmont Mining Corp.*, 535 A.2d 1334, 1344 (Del. 1987). Plaintiffs concede that the Mott Foundation is a minority shareholder, and they do not allege that the Mott Foundation controls the business affairs of U.S. Sugar.

Instead, Plaintiffs allege that the William S. White and the Mott White Family exercise

39

control over U.S. Sugar through its control over the Mott Foundation, thereby controlling a majority of shares. Plaintiff bases this argument on shareholder agreements between the Mott Foundation and two other charities holding shares in U.S. Sugar, and the fact that the Mott Foundation shares some of its Directors with U.S. Sugar, thereby making the Mott Foundation a *de facto* majority shareholder.

The Mott Foundation Defendant alleges that the shareholder agreements were "dropped" improperly from the current iteration of the Complaint because they contradict the allegations of control, but are nonetheless properly before the Court. However, at the motion to dismiss stage, these Agreements which, according to Plaintiffs, preserve its (and the other two charities) control over U.S. Sugar are not relevant to the analysis. No party alleges that the Agreements actually give the Mott Foundation "control" to run the company or make business decisions. Instead, the Agreements purport to govern "control" with regard to the portion of U.S. Sugar shares that the foundations own. Plaintiffs attempt to conflate the two types of control, however; they are distinct. Under the test for aggregate "control" cited by Plaintiffs, the "control" needed is *in addition* to the "control" the comes from one group that combines to form a majority: they must together "dominate[] the board of directors and control[] the corporation." In other words, a group of shareholders cannot be said to "control" the company simply because their collective interest is greater than 50%. "Control" is not simply mathematics. Otherwise, any minority shareholder could be said to owe a duty to any other minority shareholder if it is alleged that the first minority shareholder is affiliated with other shareholders who together own more than half of outstanding shares.

The Mott Foundation argues that Plaintiffs cannot impute a fiduciary duty to the Mott Foundation merely because U.S. Sugar Directors also sit on the Mott Foundation's Board of

Directors, and that under Delaware law, directors can wear different "hats." Defendants further argue that even when aggregating the shares held by the Mott Foundation and the two other charities with which it has shareholder agreements, combined with the shares held by the other state law claim defendants, namely, the family, they still would not have more than 50% of the shares. Plaintiffs contend that the distribution of shares is a factual determination not appropriate for a motion to dismiss, and I agree.

Citing *Solomon v. Armstrong*, 747 A.2d 1098, 1116 n. 53 (Del. Ch. 1999), Plaintiffs state that "[u]nder Delaware law, the notion of a 'controlling' stockholder includes both *de jure* control and *de facto* control." Further, "although a majority of shares owned by a shareholder would be conclusive in finding that a controlling shareholder exists, the reverse cannot be said to be true." *Gradient OC Master, Ltd. V. NBC Universal, Inc.*, 930 A.2d 104, 130 (Del. Ch. 2007). Finally, Plaintiffs say that they "have alleged that there is actual control over U.S. Sugar's corporate conduct . . . by Chairman William S. White, the Mott Foundation's agent and representative on the Board."

On this point, Plaintiffs' arguments belie their aggregation theory by alleging that it was William S. White, and not the Mott Foundation as an entity, who is involved in the actual control and domination of the Board of U.S. Sugar. Plaintiff cite *In the Matter of Reading Co.*, 711 F.3d 509, 5167 (3d Cir. 1983), which held that Under Delaware law, a majority shareholder, or a group of shareholders who combine to form a majority, has a fiduciary duty to the corporation and to its minority shareholders if the majority shareholder dominates the board of directors and controls the corporation. Again, however, Plaintiffs do not allege that the Mott Foundation, or even the Mott Foundation working in conjunction with U.S. Sugar, its Board, or any of the family members actually *controls* U.S. Sugar. A group of shareholders in control – including minority shareholders

41

– would certainly have a fiduciary duty to the minority shareholders, however, the Mott Foundation, as an entity, is not alleged to be part of the control and dominion of the Board. As Defendants point out, the Mott Foundation is not alleged to done any acts against the Plaintiffs, and its alleged omission is it failure to inform the minority shareholders about the Lawrence Group offer. The Mott Foundation's failure to inform the minority shareholders of the offer does not constitute control over U.S. Sugar. While the Court must accept the facts as pled at the motion to dismiss stage, Plaintiff have the burden to plead the facts that give rise to the claims. Plaintiffs have not pled any facts that support its claim that the Mott Foundation has control over U.S. Sugar or its Board. Its shared directors does not give the Mott Foundation *de facto* control over U.S. Sugar. Therefore, it is appropriate to dismiss all of Mary Rafter's counts against Defendant, the Mott Foundation with prejudice.

This leaves four claims: breach of duty of loyalty and good faith against the Directors; self-dealing against U.S. Sugar and the Directors; majority oppression of minority shareholders against William S. White; and conversion against William S. White.

With regard to Count I, at the motion to dismiss stage, Plaintiff Mary Rafter has stated a claim for breach of fiduciary duty, duty of loyalty and good faith against the Director Defendants.

With regard to count II, Plaintiffs have pled that U.S. Sugar and the Director Defendants breached their fiduciary duties by ". . . unfairly and illegally increasing William S. White's . . . ownership interest in U.S. Sugar by causing U.S. Sugar to discharge employees and buy back their stock at unfairly low prices, while in possession of material non-public information, which gave the an unfair illegal advantage over the Employee Shareholders." [DE 142, ¶ 96]. Plaintiffs further allege that the insider trading ". . . increased the ownership interest of the Defendants named in this Count

42

at the expense of the selling class members." [DE 142, ¶ 98]. As Plaintiffs have alleged that the harm in this alleged activity was done to gain an "advantage over the Employee Shareholders" and "at the expense of the selling class members," Plaintiffs have failed to allege that the non-employee shareholder, Mary Rafter, was harmed by this alleged breach of fiduciary duties.[14] Therefore, this claim, with regard to Mary Rafter, is deficient, and will be dismissed without prejudice.

With regard to Count III, breach of fiduciary duty - majority/controlling shareholder oppression of minority shareholders against William S. White only, Plaintiff Mary Rafter has not stated a claim against William S. White because she has failed to state a claim against the Mott Foundation as discussed above. No Plaintiff has plead that the Mott foundation has actual control over the Company or its Board. Plaintiffs have pled that William S. White has actual control over U.S. Sugar and its Board, and has pled that the Directors have breached their fiduciary duty as to Ms. Rafter. However, as discussed above, no Plaintiff has pled that William S. White has acted as a controlling shareholder oppressing minority shareholders. As such, this count does not state a claim upon which relief may be granted.

Finally, with regard to Count V, conversion against William S. White, I note that Plaintiffs Complaint states that this count is brought by the Plaintiffs in *Johnson, et. al.* On October 6, 2008, Plaintiffs filed the Complaint, which was a consolidated complaint incorporating plaintiffs who had filed separately under different case numbers. The last iteration of the *Johnson* complaint before the consolidated complaint was the amended complaint in the master case file [DE 81]. That amended complaint was brought by Plaintiffs Diallo Johnson, Mary Rafter, and Linda Stanley. Therefore, Ms.

---

[14]Plaintiffs define "Employee Shareholders" as U.S. Sugar's "employees and former employees, who owned approximately 35% of the outstanding shares through the U.S. Sugar Employee Stock Ownership Plan (the "ESOP" or "Plan") as of October 31, 2005. [DE 142, ¶ 2].

Rafter brings Count V as well.

Count V alleges that Defendant William S. White (and the Mott Foundation) converted the property of the shareholders to their own benefit, and the property was "the right of each shareholder . . . to sell or not to sell the shares owned in U.S. Sugar." [DE 142, ¶ 115-116]. Plaintiffs further allege that the conversion "was intended to, and did, perpetuate the control of the Mott White Family over U.S. Sugar and advance the personal and economic interest of the Mott White Family and the Mott Foundation, while depriving the shareholders of U.S. Sugar of their right to sell their shares." [DE 142, ¶ 118]. Defendant William S. White argues that Plaintiffs do not state a claim for conversion because the property right allegedly converted does not exist. Specifically, they allege that the decision to sell or not to sell shares to the Lawrence Group lay with the Board and not with the shareholders.

The parties disagree as to which state's law applies to the conversion claim. Plaintiffs believe that Florida law should be applied to this count because Florida has more significant relationship to the parties, pursuant to Section 309 of Restatement (Second) of Conflicts of Law (1971). Defendant William S. White argues that Delaware law applies, but bases his argument primarily with regard to the ESOP participants. However, he does argue that under both Florida and Delaware law, ESOP participants do not have a right to sell the shares. Mr. White does not address the purported property right to sell the shares with regard to Ms. Rafter. The Commentary to Section 309 states:

> The local law of some state other than the state of incorporation is most likely to be applied to determine issues of this sort in a situation where the corporation does all, or nearly all, of its business and has most of its shareholders in this other state and has little contact, apart from the fact of its incorporation, with the state of incorporation. Within the [exception] fall act, such as seizing a corporate opportunity or causing the making of a contract or the commission of a tort.

The Restatement (Second) of Conflicts §§ 145 and 146 set forth the appropriate factors to

44

consider when applying the "significant relationships test." Section 146 provides that the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, another state has a more significant relationship. The contacts to be taken into account under § 145 include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

The alleged injury occurred in Florida, and the alleged conduct or omission was alleged to have occurred in Florida. The corporation is incorporated in Delaware, however, its place of business is Florida. Although Plaintiffs allege that Mr. White is a Michigan resident, Plaintiffs also allege that he has a residence in Florida and that he is not a resident of Delaware. [DE 142, ¶ 21, DE 161, p. 26]. Plaintiff also allege that Ms. Rafter is a resident of Broward County, Florida. [DE 142, ¶ 13]. Finally, the place where the relationship between the parties is centered is in Florida. Florida law applies.

"[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Nat'l Union Fire Ins. Co. of Pa. v. Carib. Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985) (quoting *Senfeld v. Bank of N.S. Trust Co.* (Cayman), 450 So.2d 1157, 1160-61 (Fla. 3d DCA 1984)). Under Florida law, the claimant must further establish "possession or an immediate right to possession of the converted property at the time of conversion." *U.S. v. Bailey*, 419 F.3d 1208, 1212 (11th Cir.2005). While demand by the rightful owner serves as actual notice of the rights of the bereaved party to the recipient, demand and refusal are not required elements for a conversion claim. *Senfeld*, 450 So.2d at 1161. "The generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand

45

is made." *Goodrich v. Malowney*, 157 So.2d 829, 832 (Fla. 2d DCA 1963) (citation omitted). Therefore, despite Defendants' arguments, Plaintiff's failure to plead "demand," is not fatal to this claim.

While much has been said regarding the rights of the ESOP participants to sell their shares in response to the Lawrence Group's offer, little has been put forth by Plaintiffs in support of Ms. Rafter's claim of right to sell her shares in response to the offer. Further, Plaintiffs have conceded that the Lawrence Group's offer did not constitute a tender offer to the shareholders. Plaintiffs have not put forth any evidence to support the allegation that Ms. Rafter has a right to sell her shares in response to the Lawrence Group's offer. As recited above, *Twombly* requires the plaintiff to "provide the grounds of his entitlement to relief" in addition to "labels and conclusions, and a formulaic recitation of the elements of a cause of action." While Plaintiffs have put forth their theory of why they believe the ESOP participants were entitled to sell their shares in response to the Lawrence Group's offer, Plaintiffs have not put forth any grounds or any theory to support the allegation that Ms. Rafter had the right to sell her shares to the Lawrence Group when the Lawrence Group approached the Board with an offer to buy shares. Therefore, Plaintiffs have not stated a claim for Count V.

Accordingly, it is hereby

ORDERED AND ADJUDGED:

1.    The ESOP Plaintiffs' claim in Count I, breach of fiduciary duty, duty of loyalty and good faith against all defendants named in this count is DISMISSED WITH PREJUDICE. Plaintiff Mary Rafter's claim in Count I remains.

2.    The ESOP Plaintiffs' claim in Count II is DISMISSED WITH PREJUDICE as to all

46

Defendants. Plaintiff Mary Rafter's claim in Count II is DISMISSED WITHOUT PREJUDICE as to all Defendants.

3.  All Plaintiffs' claim in Count III is DISMISSED WITH PREJUDICE as to all defendants.

4.  All Plaintiffs' claim in Count IV is DISMISSED WITHOUT PREJUDICE.

5.  The ESOP Plaintiffs' claim in Count V is DISMISSED WITH PREJUDICE against all defendants. Plaintiff Mary Rafter's claim in Count V is DISMISSED WITH PREJUDICE against Defendant the Mott Foundation. Plaintiff Mary Rafter's claim in Count V is DISMISSED WITHOUT PREJUDICE against Defendant William S. White.

6.  Plaintiffs' claims in Counts VI - XIII are DISMISSED WITHOUT PREJUDICE.

7.  Plaintiff Michael Roland's claims are DISMISSED.

8.  Plaintiffs may file a motion requesting a stay regarding Plaintiff Ms. Rafter's claim until the resolution of the administrative remedy process within ten (10) days of the issuance of this Order that will not exceed two (2) pages in length.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 27 day of April, 2009.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to counsel of record