UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____
                                        :
                                        :
IN RE UNITED STATES SUGAR               :        Master File No.
CORPORATION LITIGATION                  :        08-80101-CIV-MIDDLEBROOKS
                                        :
                                        :
                                        :
_____ :


**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Plaintiffs Linda Stanley, Diallo Johnson, Mary Rafter, Michael Texton and Miguel Maturana respectfully move for an order: (1) granting preliminary approval of the settlement of this litigation; (2) granting certification of the proposed Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure; (3) approving the forms for the mailing and publication of the Notice of Settlement; (4) authorizing the mailing and publication of those notices; and (5) setting the date and time for the Final Fairness Hearing and related deadlines as set forth in the proposed Preliminary Approval Order.[1]

## **INTRODUCTION**

Plaintiffs seek preliminary approval of a proposed settlement (the "Settlement") on behalf of (1) a class consisting of certain shareholders who held Class A common stock of United States Sugar Corporation ("U.S. Sugar") between August 4, 2005 and September 24, 2009 to be certified pursuant to Rule 23(b)(3) as an opt-out class (the "Shareholder Class"); and (2) a class consisting of all participants and beneficiaries of the U.S. Sugar Employee Stock Ownership Plan ("ESOP") during the period beginning January 31, 2002 and ending September 24, 2009 to be certified pursuant to Rule 23(b)(1) as a non-opt out class (the "Participant Class") (and collectively referred to as the "Classes"). If the Court preliminarily approves the Settlement, pursuant to Rule 23(e)(1)(B), members of the Settlement Classes will be provided with a notice (the "Notice") advising them, *inter alia*, of the terms of the Settlement, how to object to the Settlement, and the date of the Final Fairness Hearing. The Notice will also explain who is a member of each of the Settlement Classes.

---

[1]   Attached to this motion as <u>Exhibit 1</u> is the Settlement Agreement. The proposed form of Notice of Settlement, the proposed Preliminary Approval Order, and the proposed Final Approval Order are attached to the Settlement Agreement as Exhibits 1A-1C, respectively.

The Settlement, as described in greater detail below, will require a cash payment on behalf of the Defendants of **$8.4 million**, to be followed by an additional cash payment of **$7.5 million**, the latter payment to be made if and only if certain conditions are met, for a total potential value of the Settlement of **$15.9 million**.  The Settlement of this action was reached approximately nineteen months after the first complaint was filed on January 31, 2008.  By that point in time, this Court had entered its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss [Doc. 224], extensive document discovery had taken place both from the parties and from a substantial number of non-parties, consulting and testifying experts had been retained and utilized, 21 depositions of potential fact witnesses and 4 depositions of expert witnesses had been taken all around the United States, and an independent mediator (Bruce Greer) had facilitated three separate negotiation sessions throughout the pendency of the litigation.  Each term and detail of the Settlement is the product of extensive arm's-length negotiations.

As set forth in detail below, Plaintiffs submit that the Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Eleventh Circuit.  Further, Plaintiffs submit that certification of two settlement classes, one as an opt-out class and the other as a non-opt out class, is appropriate pursuant to Rule 23, and that the proposed notice plan more than meets the requirements of due process.

## BACKGROUND

### A.      Procedural Background and Litigation History.

**The Complaints.**  Plaintiffs Linda Stanley, Diallo Johnson and Mary Rafter filed their initial complaint on January 31, 2008, followed successively by three similar complaints.  This Court consolidated the four complaints on September 23, 2008.  On October 6, 2008, Plaintiffs filed their Consolidated Class Action Complaint [Doc. 142] (the "Complaint") alleging thirteen

separate causes of action for breaches of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") and under Delaware law, and for conversion under Florida law, against Defendants William S. White, Robert H. Buker, Jr., John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins, Ridgway White, Gerard Bernard, Bank of America, N.A. (as successor to United States Trust Company, N.A.), the Charles Stewart Mott Foundation (the "Mott Foundation"), and U.S. Sugar.

The Complaint sought to recover losses under ERISA §§ 409 and 502(a)(2) suffered by the ESOP and its participants and under Delaware law and Florida law for losses to the shareholders as a result of Defendants' alleged breaches of their fiduciary duties. There are two general parts to the Plaintiffs' claims. The first part relates to the rejection of alleged offers to acquire all of the shares of U.S. Sugar for $293 per share by a third party purchaser known as the Lawrence Group. Plaintiffs, as direct and beneficial shareholders in U.S. Sugar, brought common law claims for breach of fiduciary duty (Counts I – III) and conversion (Count V) against William S. White and the other members of the Board of Directors who presided over this conduct (collectively, the "Director Defendants"), U.S. Sugar's CFO Gerard Bernard, and one of its shareholders, the Charles Stewart Mott Foundation (the "Mott Foundation"). The second part relates to allegations of additional wrongful conduct and undervaluation of the ESOP participants' shares in U.S. Sugar that followed the rejection of the alleged offers from the Lawrence Group. The Plaintiffs (other than Mary Rafter, who is a direct shareholder) brought these claims under various ERISA provisions based on their status as participants in the U.S. Sugar ESOP (Counts VI – XIII).

Plaintiffs' Counsel conducted a thorough and lengthy investigation into Plaintiffs' claims and the allegations set forth in the Complaint prior to the filing of this action.

**The Motions to Dismiss.**   On October 27, 2008, the Defendants filed four separate motions to dismiss the Complaint.  (Motions to dismiss were also filed prior to this by the Defendants, to which the Plaintiffs responded by amending the complaint, thus mooting the first round of motions.)  Plaintiffs filed a consolidated opposition brief to the Defendants' motions on November 17, 2008, and the Defendants' motions to dismiss were fully briefed after the Defendants filed their replies on December 4, 2008.  The Court held a lengthy oral argument on the motions on March 16, 2009.

On April 27, 2009, this Court entered its 47-page Order Granting in Part and Denying in Part Defendants' Motions to Dismiss the Complaint [Doc. 224].  In the Order, the Court dismissed with prejudice or dismissed without prejudice all counts in the Complaint with the exception of Count I on behalf of Plaintiff Mary Rafter, the direct shareholder.  The Court held that the Plaintiffs had failed to exhaust their administrative remedies prior to filing suit with respect to all of the ERISA claims (Counts VI-XIII), dismissing each of those claims without prejudice.  In addition, the Court dismissed with prejudice (1) the ESOP participant Plaintiffs' claims for breach of common law fiduciary duties in Counts I and II, (2) all Plaintiffs' claims for breach of fiduciary duty in Count III, and (3) Plaintiff Mary Rafter's claim for conversion against the Mott Foundation in Count V.

The Director Defendants and defendants William S. White and Ridgeway H. White subsequently filed Answers to Plaintiffs' Complaint on May 12, 2009.

**Discovery.**   In the interim, the parties also engaged in extensive discovery to prepare this case for trial.  The investigative efforts carried out by Plaintiffs' Counsel to date have included inspecting, reviewing and analyzing nearly 100,000 pages of documents produced by the parties and approximately 28 subpoenaed non-parties, as well as voluminous publicly available

documents, ranging from news articles and press releases to information obtained from public records requests.   Plaintiffs' Counsel have also reviewed and analyzed numerous documents concerning the ESOP and its administration, and have consulted with ERISA experts on such documents.  Plaintiffs' Counsel have also researched the applicable law, often in highly complex and technical areas of the law, with respect to the claims asserted and the potential defenses thereto.  Outside of the "formal" discovery process, Plaintiffs' Counsel have also continued their investigation into the claims by interviewing potential fact witnesses and ESOP participants. Plaintiffs' Counsel have also employed consulting and expert witnesses, two of whom produced expert reports in this matter and were deposed.   Similarly, Plaintiffs' Counsel reviewed and analyzed expert reports prepared by four expert witnesses utilized by the Defendants and deposed two of them.

In total, depositions were taken of 21 fact witnesses, and of 4 testifying expert witnesses (2 from each side).  These depositions, a number of which involved complex subject matter, were conducted in Florida, Michigan, Louisiana, Mississippi, New York, Illinois, North Carolina, South Carolina, Tennessee and Georgia.  The parties also served nearly 100 subpoenas to various non-parties either for testimony or for documents or for both.   Since reaching a settlement in principle, Plaintiffs' Counsel have also engaged in certain additional discovery with the Defendants, including reviewing thousands of pages of documents and deposing a U.S. Sugar officer, relating to the potential transaction between U.S. Sugar and the South Florida Water Management District.

In addition, while discovery was ongoing, Plaintiffs' Counsel prepared a motion for class certification that was due to be filed shortly after a settlement in principle was reached.

**Mediations.**   While discovery was ongoing, the parties discussed the possibility of settlement and retained an experienced mediator, Bruce Greer, and participated in three separate mediations with Mr. Greer during the pendency of this case on August 15, 2008, September 29, 2008, and May 28, 2009.  After the Court's Order granting in part and denying in part the Defendants' motions to dismiss, the parties met for their third mediation, on May 28, 2009, and at its conclusion reached a settlement in principle of the case.

## THE SETTLEMENT

The terms and conditions of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Settlement Agreement"), which is attached as Exhibit 1.  The following is a summary of the principal terms of the Settlement Agreement (none of which is meant to alter any of the actual terms of the Settlement Agreement itself, which terms control):

1.   The Settlement Classes.  The Settlement Agreement contemplates that the Court will certify the following two classes for settlement purposes:

(A) A settlement class under Rule 23(b)(3) defined as:

**All holders of Class A common Stock of U.S. Sugar during the period beginning August 4, 2005 and ending September 24, 2009.**

This settlement class is referred to as the "Shareholder Class."  This class includes but is not limited to: (1) Evercore Trust Company, N.A., (which succeeded Bank of America, N.A., which succeeded U.S. Trust, N.A.) as trustee for the ESOP with regard to the ESOP's shares and on behalf of the participants to whose accounts shares have been allocated, and (2) the  Mott Foundation.  This class excludes defendants William S. White, Ridgeway H. White and John Butler and any trusts in which (1) William S. White is both the trustee and sole beneficiary, (2) Ridgeway H. White is both the trustee and sole beneficiary, or (3) John Butler is both the trustee and sole beneficiary.

(B)  A settlement class under Rule 23(b)(1) defined as:

**All participants and beneficiaries of the ESOP during the period beginning on January 31, 2002 and ending September 24, 2009.**

This settlement class is referred to as the "Participant Class."  This class <u>excludes</u> defendants Gerard A. Bernard and Robert H. Buker, Jr.

Together, the two classes are referred to as the "Settlement Classes."

2.       <u>The Proposed Class Representatives</u>.  In connection with their request that the Court certify the two classes for settlement purposes, Plaintiffs respectfully request that the Court appoint Plaintiffs Diallo Johnson, Linda Stanley and Miguel Maturana as class representatives for the Participant Class and Mary Rafter for the Shareholder Class.  The former are or were participants in the ESOP during the relevant time period, and the latter is a direct shareholder of U.S. Sugar stock.  Plaintiffs have been actively involved in the litigation, having provided their Rule 26 Initial Disclosures to the Defendants, formally responded to discovery requests served upon them, and have each been deposed by the Defendants.  Additionally each plaintiff has been advised of the Settlement and approves of it.

3.       <u>Settlement Amount</u>.  The Plaintiffs and the Defendants have agreed to settle this action for the sum of **$8,400,000** (the "Settlement Payment") to the Settlement Classes.  The Settlement Agreement requires U.S. Sugar to pay for all costs of administration of the Settlement and for the services of an independent fiduciary to examine the settlement terms as they relate to the ESOP.  Garden City Group, a professional claims administrator, will be utilized to administer the Settlement.

The Defendants also agree to pay an additional **$7,500,000** (the "Additional Settlement Payment") to the Shareholder Class <u>if and only if</u> U.S. Sugar closes on the transaction with the South Florida Water Management District (the "SFWMD") that is set forth in the Amended and

7

Restated Agreement for Sale and Purchase, between U.S. Sugar, SBG Farms, Inc. Southern Garden Groves Corporation, and the SFWMD, dated May 13, 2009, or a transaction involving a sale of assets of U.S. Sugar and/or its subsidiaries to the SFWMD for the purchase price of at least $500,000,000 that closes on or before December 31, 2011 (the "SFWMD Transaction").

The Additional Settlement Payment is fully contingent on the closing of the SFWMD Transaction. In other words, if the SFWMD Transaction does not close, there will be no Additional Settlement Payment (and there will be no release of certain claims identified in the Settlement Agreement). However, the balance of the Settlement (including the $8.4 million payment will remain intact and proceed to completion if approved by the Court. At present, the contract embodying the SFWMD Transaction has been approved of by the boards of both the SFWMD and U.S. Sugar and has been executed by both parties. In addition, on August 26, 2009, a court challenge to the issuance of bonds (certificates of participation) to finance the purchase of the U.S. Sugar land was resolved in favor of the SFWMD and U.S. Sugar. *See* Final Judgment Validating Certificates of Participation Lease-Purchase Financing, Not to Exceed $650 Million, in *South Florida Water Management District v. State of Florida*, Case No. 50-2008-CA-031975 (Palm Beach County Circuit Court). Under state law, that decision is now subject to a direct appeal to the Florida Supreme Court. According to published news reports, the SFWMD anticipates selling $650 million in bonds by March 2010 to fund the purchase of land contemplated by the SFWMD Transaction. *See* "Florida Plans $650 Million Everglades-Land Bond Sale by March," *Bloomberg.com* (August 31, 2009).

Although these developments suggest that the SFWMD Transaction is headed in the direction of a closing, there is no guarantee that the SFWMD Transaction will close – and thus no guarantee that the Additional Settlement Payment will be made. Plaintiffs' Counsel

negotiated the Settlement Agreement with the view that the payment of $8.4 million settlement payment was a fair and adequate settlement of this lawsuit, but that the Additional Settlement Payment provision was a way to leverage the amount paid to the Settlement Classes if and when U.S. Sugar received an infusion of cash as a result of the SFWMD Transaction.

        4.    <u>The Plan of Allocation</u>.  The Settlement Agreement contemplates, subject to the Court's approval, that after payment of Court-approved attorneys' fees, litigation expenses and costs, and the named Plaintiffs' contribution awards, the net proceeds of the $8,400,000 Settlement Payment will be distributed to both Settlement Classes according to the plan of allocation formulas stated in the Settlement Agreement.  In general terms, the amount received by a member of either class will be on a *pro rata* basis based on the highest number of shares the class member held during the respective class period -- or the highest number of "participation units" held by participants in the ESOP.  The calculation will be limited by an additional formula to avoid double recovery between the Shareholder Class and the Participant Class.  In this way, the Plan of Allocation is intended to distribute the net proceeds equitably based upon each Class Member's number of shares held.

        Similarly, if the Additional Settlement Payment is made, then it will be distributed using the same formula to the Shareholder Class.  Current ESOP participants will also benefit from this payment because the Trustee of the ESOP, as a shareholder of U.S. Sugar, will receive the payments on behalf of the ESOP and will allocate the payment to the ESOP participants' accounts based on the number of participation units that they have.

        All payments received by the Participant Class -- and by the ESOP Participants through the Trustee of the ESOP for payments made to the Shareholder Class -- will be made in the form of cash to the ESOP participants' account (or an account created for them if they are a

former participant).  Those sums will be subject to the same rules and restrictions otherwise applicable to the ESOP (e.g., no withdrawals until retirement, early retirement or certain other circumstances specified in the ESOP Plan documents).   All payments received by the Shareholder Class will be in the form of direct cash payments.

5.     <u>The Released Parties</u>.  The parties who will be released of potential liability are as follows: William S. White, Robert H. Buker, Jr., John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins, Claire Mott White, Ridgway H. White, Gerard Bernard, all members of the U.S. Sugar ESOP Committee during the Class Period, the Mott Foundation, Bank of America, N.A. (as successor to United States Trust Company, N.A.), Evercore Trust Company, N.A. (as the current Trustee of the ESOP which succeeded Bank of America, N.A. as Trustee), and U.S. Sugar.  The Released Parties include, for all of the above, all predecessors, successors and assigns or any current or former affiliate, partner, principal, directors, officers, representatives, insurers, attorneys, agents and accountants and, in the case of individuals, their respective heirs, beneficiaries, executors, administrators, successors, and legal representatives.

6.     <u>Settled Claims</u>.  Paragraphs 4-5 and 8 of the Settlement Agreement define with specificity the settled claims.  The released claims in exchange for the Settlement Payment include, in general terms, all claims raised or that could have been raised in this action.  The released claims do not include claims for personal injury or wrongful death or for wrongful termination or employment discrimination (other than those under ERISA).  In addition, in the event that the Additional Settlement Payment is made, additional claims against the Defendants will be released that include, in general terms, all claims raised or that could have been raised relating to the SFWMD Transaction.  Again, these released claims do not include claims for

personal injury or wrongful death or for wrongful termination or employment discrimination (other than those under ERISA). In the event that the Additional Settlement Payment is not made (because the SFWMD Transaction is not closed), then the additional release set forth in paragraph 8 of the Settlement Agreement will not be provided.

7.     <u>Notice</u>. A proposed Notice to be sent to each Class Member is attached as <u>Exhibit 1.B</u>. The proposed Preliminary Approval Order provides for the following regarding notice to the Class Members:

> • The Notice will be mailed by first class mail to the last known address of all members of the Settlement Classes who can be identified with reasonable effort by U.S. Sugar.

> • The Notice will be posted on U.S. Sugar's website (<u>www.ussugar.com</u>).

8.     <u>Attorneys' Fees & Costs</u>. Plaintiffs' Counsel will make an application to the Court for an award of attorneys' fees and litigation costs and expenses out of the common fund created as a result of this Settlement. The Defendants agree to not object to the amount of attorneys' fees sought in the fee application so long as the amount of the attorneys' fees sought in connection with the recovery of the Settlement Payment is less than or equal to 30% of the Settlement Payment Fund, and the amount sought in connection with the recovery of Additional Settlement Payment is less than or equal to 30% of the Additional Settlement Payment Fund. If the Additional Settlement Payment is not made (because the SFWMD Transaction does not close), then Plaintiffs' Counsel will receive no fee in connection with the Additional Settlement Payment. Litigation costs and expenses to be sought will not count towards the 30% limit.

9.     <u>Jerry Grace Agreement</u>. Separate and apart from the Settlement Agreement, U.S. Sugar and Jerry Grace, a former employee of U.S. Sugar, entered into an agreement, the principal terms of which are as follows: (1) mutual agreements not to disparage each other, (2)

an agreement by Grace not to participate in any litigation against U.S. Sugar, (3) an agreement by Grace to return any confidential or other company information he possesses to U.S. Sugar, and (4) an agreement by U.S. Sugar to forebear from withholding payments due to Grace under U.S. Sugar retirement plans knows as the SERP and the Phantom Stock Plan so long as he abides by his covenants under the agreement.  Grace provided paralegal-related services to Plaintiffs Counsel and who was deposed by the Defendants in this lawsuit.  This agreement is separate and apart from the Settlement Agreement; it is not subject to Court approval, and does not affect the members of the Settlement Class.  However, Plaintiffs' Counsel has included a description of this agreement in this motion in the interests of full disclosure as the agreement does relate to the underlying litigation.

## PROPOSED SCHEDULE

As laid out in the Preliminary Approval Order, the parties have agreed to the following schedule of events, the dates of which will be determined after the Court sets a date for the Final Fairness Hearing:

| **Event** | **Time for Compliance** |
|---|---|
| Claims Administrator shall cause the Notice to be mailed to all Shareholder Class Members and Participant Class Members | __ days from entry of Preliminary Approval Order |
| Notice to be published on the U.S. Sugar website. | __ days from entry of Preliminary Approval Order |
| Any Shareholder Class Members wishing to make an exclusion ("opt-out") request shall mail the request to the Claims Administrator | __ days before the Fairness Hearing |
| Any "Objector" wishing to object to the fairness, reasonableness or adequacy of the Settlement shall serve his or her objection on Class Counsel | __ days before the Fairness Hearing |
| Objectors or their attorneys intending to appear at the Final Approval Hearing must serve a "Notice of Intention to Appear" | __ days before the Fairness Hearing |
| Class Counsel shall file a motion for final approval of the Settlement | __ days before the Fairness Hearing |

| | |
|---|---|
| Application by Class Counsel for attorney fees and reimbursement of expenses must be filed | __ days before the Fairness Hearing |
| The Parties shall file any response to any Objector | __ days before the Fairness Hearing |
| Proposed Final Fairness Hearing | _____ 2009 |

The events set forth above are all tied to the Fairness Hearing date, which Plaintiffs respectfully request be scheduled for approximately 50-60 days from the date a Preliminary Approval Order is entered, which would be _____.

## **LEGAL STANDARD**

To conclude the Settlement, Rule 23(e) requires that there be notice to the Class, a fairness hearing, and this Court's approval.  Before scheduling a fairness hearing and ordering Class Notice, this Court must be presented with a settlement that warrants implementing the Rule 23(e) procedures.  The purpose of obtaining preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with the fairness hearing." *Armstrong v. Bd. of School Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980).  In reviewing a motion for preliminary approval, a court "is to determine if the proposed settlement falls within the range of possible approval, i.e., whether probable cause exists to certify the class and issue notification of the settlement's terms." *Matter of Skinner Group, Inc.*, 206 B.R. 252, 261 (N.D. Ga. 1997).

In determining whether to preliminarily approve a class action settlement, the court assesses whether there is "probable cause" to provide notice and hold a fairness hearing. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1385 (D. Md. 1983).  An inquiry into the ultimate fairness of the Settlement is not necessary at this time, because there will be a further hearing at which the fairness of the Settlement will be addressed, after notice to the Class

13

Members.  Therefore, even if there are aspects of a proposed settlement that raise questions, they "should not derail the orderly workings of the settlement process at this point." *Id.* at 1386. Preliminary approval should be denied only if there are apparent grounds to doubt the settlement's fairness, or other "obvious deficiencies."  MANUAL FOR COMPLEX LITIGATION, § 30.41 (3d ed. 1993).

### DISCUSSION

### A.  THE SETTLEMENT AGREEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL.

Federal courts strongly favor the voluntary resolution of complex class action cases.  *See Bennett v. Behring Corp.*, 737 F.2d 983, 986 (11th Cir. 1984) (stating that the court's decision to uphold the district court's approval of settlement was "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement"); *Wal-Mart Stores Inc., v. U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."). Consequently, a district court has broad discretion in evaluating a class action settlement, and its decisions will not be overturned "absent a clear abuse of discretion."  *Bennett*, 737 F.2d at 986 (citations omitted); *see also Weiner v. Roth*, 791 F.2d 661, 662 (8th Cir. 1986) (same).

In deciding whether to grant preliminary approval, the court does "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.* 450 U.S. 79, 88 n.14 (1981).  Rather, a strong initial presumption of fairness attaches to the proposed settlement if the settlement is reached by experienced counsel after arm's length negotiations. *See In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[S]o long as the integrity of the arm's length negotiation process is preserved . . . a strong presumption of fairness attaches to the proposed settlement."); *see also* MANUAL FOR COMPLEX LITIGATION §

30.43, at 289 (3d ed. 2002).   Courts should accord great weight to the recommendations of

counsel, who are most closely acquainted with the particular facts of the litigation.  *See Minolta

Camera Prods. Antitrust Litig*., 668 F. Supp. 456, 460 (D. Md 1987); *Chatelain v. Prudential-*

*Bache Secs., Inc*., 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

This initial presumption of fairness and adequacy applies here with special force, because

the Settlement was reached by a number of different experienced and fully informed counsel for

both the Plaintiffs and the Defendants, including experienced plaintiffs counsel and class action

counsel from the law firms of Colson Hicks Eidson, Squitieri & Fearon, LLP and Vianale &

Vianale, LLP, and experienced defense counsel from the law firms of Gunster, Yoakley &

Stewart, P.A., Alston & Bird, LLP, Greenberg Traurig, P.A., and King & Spalding LLP.   In

addition, the Settlement was only reached after roughly nineteen months of protracted and hotly

contested litigation and intense arm's length negotiations.  *See PaineWebber,* 171 F.R.D. at 125

("So long as the integrity of the arm's length negotiation process is preserved… a strong

presumption of fairness attaches to the proposed settlement.").

Further, the Settlement satisfies the six factors articulated by the Eleventh Circuit,

commonly referred to as the "*Bennett* factors", to determine whether the settlement is fair,

adequate and reasonable.   The *Bennett* factors are as follows:

> (1) the likelihood of success at trial; (2) the complexity, expense and
> duration of the litigation; (3) the range of possible recovery; (4) and the
> point on or below the range of possible recovery at which a settlement is
> fair, adequate and reasonable; (5) the substance and amount of opposition
> to the settlement; and (6) the stage of proceedings at which the settlement
> was achieved.

*Perez v. Asurion Corp*., 501 F. Supp.2d 1360, 1379-80 (S.D. Fla. 2007) (citing *Bennett*, 737 F.2d

at 986).  Consideration of these factors demonstrates that the proposed Settlement is well within

the possible range for approval.

**1.  _The "Likelihood of Success at Trial" Favors Approval of the_
_Proposed Settlement Agreement._**

When evaluating a settlement for preliminary approval, courts need only weigh the plaintiffs' case against the amount offered in settlement, rather than consider the strength of plaintiffs' case on the merits.  *See, e.g., Nat'l Rural Telecomms. Coop. v. Directv, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004).  As evidenced by the vigor with which Plaintiffs' Counsel have prosecuted this action, and the time, money and resources that have been put into the prosecution of this action, Plaintiffs' Counsel believe strongly in the merits of this case and the claims alleged in the Complaints.  Discovery conducted by Plaintiffs' Counsel, in Plaintiffs' view, supports certain of their core allegations that the Defendants breached their fiduciary duties owed to shareholders of U.S. Sugar and participants in the ESOP by failing to disclose the Lawrence Group's offers to minority shareholders and ESOP participants and by rejecting those offers.  Moreover, in Plaintiffs' Counsel's view, the discovery supports Plaintiffs' allegations that the Defendants' rejection of the Lawrence Group's offers, and the subsequent undervaluing of ESOP participants' shares, were in breach of the Defendants' fiduciary duties.

Nonetheless, the Defendants have conceded nothing in this case, and Plaintiffs recognize the risks of continued litigation and an adverse outcome.  Plaintiffs readily acknowledge that many of the complex factual and legal issues involved in this action are vigorously contested, and both sides have proffered evidence to support their competing views of the case.  For example, the Defendants submitted an expert report from Chester Gougis, a proffered valuation expert, in which he opined that the valuations of the ESOP shares performed by an outside valuation firm were proper in all respects and consistent with generally accepted industry practices and standards.  In addition, the Defendants submitted an expert report from Thomas Hogan, a proferred expert in the area of industry standards for ERISA fiduciaries, in which he

16

opined that both U.S. Trust and the U.S. Sugar ESOP Committee acted consistently with the ESOP plan documents and generally accepted industry practices in their handling of the alleged Lawrence Group offers and the methods employed for the valuation of the ESOP shares.

Plaintiffs also recognize that, in light of the Court's Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, the Plaintiffs' position has been substantially weakened. All but one of the Plaintiffs' claims has been dismissed with or without prejudice.  Thus, while Plaintiffs and their counsel continue to believe they have a strong case, the outcome of continued litigation remains most uncertain.  These risks must be weighed against the recovery provided by the Settlement, which the Plaintiffs submit is very substantial -- potentially totaling $15.9 million.

In short, the balance between the overall strength of the case and the substantial recovery obtained supports preliminary approval of the proposed Settlement.

      **2.**      ***The "Complexity, Expense and Duration of Litigation" Weigh in Favor of Approval.***

"Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 525.   Courts favor settlement, as it preserves individual resources by avoiding protracted litigation and the likely subsequent appeals. *See Strube v. Am. Equity Inv. Life Ins.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D.C. Md. 1983).

The continued litigation of this case poses risks for both the Plaintiffs and the Defendants.  Although Plaintiffs' Counsel believe strongly in the merits of this case, Plaintiffs' Counsel are cognizant of the risk that continued litigation could end in a non-recovery.  This is particularly apparent here given that the Court has already dismissed with prejudice a number of

Plaintiffs' claims.  Moreover, Defendants have vigorously defended against the allegations made by Plaintiffs and are expected to do so should this action proceed through trial.

In addition to the risks presented by continued litigation, proceeding through trial and the likely subsequent appeals would undoubtedly require significant undertakings by both parties. Due to the complexity of the case, the number of potential witnesses, and the number of experts involved, the costs of litigating this action (both in terms of attorneys' fees and in litigation costs) have already been substantial.  Proceeding with the litigation through a potential trial would compound those already-substantial costs.

The Settlement also cuts short the additional months (or years) that would be necessary before the Class Members would receive a fully-litigated recovery after a trial.  It will take 6 months or more for Plaintiffs to proceed through the administrative process and exhaust their potential remedies before the U.S. Sugar ESOP Committee.  In addition, even after that time, additional fact and expert discovery would likely have to be completed, substantial motion practice would have to be completed, and assuming a favorable result for the Plaintiffs at trial, a lengthy appeal process would likely follow.

Thus, the Settlement serves to conserve resources (both for the parties and for the Court) and will mean the receipt of an amount certain by a date certain for the Class Members as opposed to the many contingencies and delays that would be associated with a fully-litigated result.

3.     _**The "Range of Possible Recovery" and "Point at Which a Settlement is Fair" Weigh in Favor of Approval.**_

There is a broad range of potential recovery if the case were to be litigated to a conclusion rather than settled.  "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."  *Behrens v.*

*Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Moreover, a settlement should not be judged against a "speculative measure" of what could have been attained in negotiation. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

At one extreme is the possibility that the Defendants could prevail on their additional legal or factual arguments on summary judgment or at trial to defeat liability entirely, resulting in no recovery of any sort for any of the Class Members. Plaintiffs recognize that this possibility cannot be discounted. Assuming that liability can be established, several variables would be at work in determining the actual amount of recoverable damages. Plaintiffs anticipate that these matters would be hotly contested in the absence of a settlement, and the Court's ultimate determinations on the liability issues would impact greatly the recoverable damages.

As a point of reference, with respect to Plaintiffs' "valuation claims" – that is, the claims that the Defendants undervalued the U.S. Sugar stock held by the ESOP after the rejection of the Lawrence Group's offers – Plaintiffs commissioned an expert analysis by Scott Bouchner with the accounting firm of Berkowitz Dick Pollack & Brandt. Without going into all of the details of the analysis, Mr. Bouchner's report opined that the damages suffered by the ESOP participants who sold their shares at what Plaintiffs allege to be an improperly determined share price range between $8.58 million and $11.96 million. The range is based on the dollar figure used to determine what the price should have been, with the low end of the range resulting from the $293 per share offered by the Lawrence Group and the high end of the range resulting from the values ascribed to the U.S. Sugar shares by Plaintiffs' ESOP valuation expert, Robert Reilly. (Through their deposition of Mr. Bouchner, Defendants sought to establish that, even applying Mr. Bouchner's methodology, if a "minority discount" was applied to the $293 per share figure, the resulting damages could be as low as $1,760,445.)

19

This does not measure the full scope of the damages that Plaintiffs could seek at trial, as it relates only to the damages suffered by ESOP Participants who sold their shares during the relevant time period.  Plaintiffs also sought damages on behalf of the ESOP participants and the minority shareholders based on the Defendants' rejection of the Lawrence Group's offers.  The scope of damages Plaintiffs might seek on these claims, however, were potentially impacted by the Court's Order on the motions to dismiss, which dismissed these claims on behalf of the Plaintiffs except for the claims brought in Count I by plaintiff Mary Rafter.  In any event, Plaintiffs' Counsel believe that the initial settlement payment of $8.4 million, standing alone, is a fair, reasonable and adequate settlement of this action, regardless of whether the additional settlement payment is made.  The additional settlement payment, if the SFWMD Transaction closes, provided a means to leverage the amount paid to the Settlement Classes upon an infusion of cash consideration to U.S. Sugar.

Given the wide range of damages outcomes at trial (as well as the possibility of summary judgment or a verdict in favor of Defendants), the Settlement provides a very substantial recovery that is well in excess of the range that courts traditionally have found to be fair under the law.  *See, e.g., In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with all defendants that amounted to one-sixth of plaintiffs' potential recovery); *Officers for Justice*, 688 F.2d at 624 (9th Cir. 1982).  ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." (citations omitted)).  Accordingly, the substantial amount recovered for the Settlement Classes as compared to the range of potential recoveries in this case also supports preliminary approval of the Settlement.

4.        ***The Stage of the Proceedings.***

The Settlement of this action was not reached until roughly nineteen months after the first complaint was filed on January 31, 2008.  By that point in time, extensive document discovery had taken place both from the parties and from a substantial number of non-parties, consulting and testifying experts had been retained and utilized, 21 depositions of potential fact witnesses and 4 depositions of expert witnesses had been taken all around the United States, and an independent mediator (Bruce Greer) had facilitated three separate negotiation sessions throughout the pendency of the litigation.  In addition, this Court had entered its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss [Doc. 224].  This extensive work has allowed the parties to undertake a thorough evaluation of the strengths and weaknesses of theirs claims and defenses, and each term and detail of the Settlement was the product of extensive arm's-length negotiations.  This factor too points in favor of preliminary approval of the Settlement.

5.        ***The Substance and Amount of Opposition to the Settlement.***

This factor becomes more relevant at a Final Fairness Hearing, after the Class Members have received Notice of the proposed Settlement and provided an opportunity to object.  That said, Plaintiffs and other Class Members who Plaintiffs' Counsel have consulted with support the proposed Settlement.  Full discussion of this factor, though, cannot occur until after Notice is issued and the Class Members have had the opportunity to evaluate the Settlement.

B.        **THE SETTLEMENT ALSO MEETS THE STANDARD FOR CLASS CERTIFICATION.**

"The propriety of certifying plaintiff classes for the purposes of implementing settlements is well recognized."  *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 338 (D.S.C. 1991). The Defendants have consented to certification of an opt-out and a non-opt-out class for

21

settlement purposes under Rules 23(b)(3) and (b)(1).  The parties have stipulated to the opt-out

class pursuant to Rule 23(b)(3) defined as:

> **All holders of Class A common Stock of U.S. Sugar during the period beginning August 4, 2005 and ending September 24, 2009.**[2]

The parties have stipulated that the non opt-out class pursuant to Rule 23(b)(1) be defined

as:

> **All participants and beneficiaries of the ESOP during the period beginning on January 31, 2002 and ending September 24, 2009.**[3]

Under Rule 23, the Court must engage in a two-step analysis in order to determine

whether it should certify the classes for settlement purposes.  Rule 23(a) sets for the prerequisites

to class certification, typically referred to as: (1) numerosity, (2) commonality, (3) typicality, and

(4) adequacy of representation.  *See Turner v. Beneficial Corp.,* 242 F.3d 1023, 1025 (11th Cir.

2001) (*en banc*); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).

Additionally, the Plaintiffs must satisfy the requirements of one or more of the three subsections

of Rule 23(b).  Here, the Plaintiffs can easily satisfy the prerequisites of Rule 23(a), as well as

the requirements of Rule 23(b)(3) and (b)(1) for purposes of the Settlement.

### 1. *Numerosity -- Rule 23(a)(1).*

Rule 23(a)(1) requires the class to be so numerous that joinder of all members is

impracticable.  Although there is no bright line number, "generally less than twenty-one is

---

[2]   This class <u>includes</u> but is not limited to: (1) Evercore Trust Company, N.A., (which succeeded Bank of America, N.A., which succeeded U.S. Trust, N.A.) as trustee for the ESOP with regard to the ESOP's shares and on behalf of the participants to whose accounts shares have been allocated, and (2) the Charles Stewart Mott Foundation.  This class <u>excludes</u> defendants William S. White, Ridgeway White and John Butler and any trusts in which (1) William S. White is both the trustee and sole beneficiary, (2) Ridgeway White is both the trustee and sole beneficiary, or (3) John Butler is both the trustee and sole beneficiary.

[3]   This class <u>excludes</u> defendants Gerard A. Bernard and Robert H. Buker, Jr.

inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (citing *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)). The test is not really the number of members, but the impracticability of joinder. "The numerosity requirement is met when it would be inconvenient or difficult to join all of the class members, and may be satisfied with as few as 25-30 class members." *In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 684 (S.D. Fla. 2004). As such, courts in the Eleventh Circuit have routinely certified classes with as few as 25 people. *See, e.g., Kilgo v. Bowman Transp., Inc*., 789 2d 859, 878 (11th Cir. 1986) (certifying a 31 person class); *Kreuzfeld, A.G. v. Camehammer*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (explaining that a class with as few as 25 or 30 class members can satisfy numerosity). In assessing whether a case satisfies the numerosity requirement, the Court may properly "make common sense assumptions in order to find support for numerosity." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997). If a good faith estimate of the class size reaches the thousands, the test is certainly satisfied. *See In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. at 685 n21.

Here, there are over 4,000 ESOP participants comprising the Participant Class and approximately 50 direct shareholders who are putative class members of the Shareholder Class. This class size far exceeds the number at which joinder becomes, according to the Eleventh Circuit, impracticable. Thus, the numerosity requirement is easily met in this case.

### 2. *Commonality -- Rule 23(a)(2).*

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The threshold for commonality is not high. *See Cheney*, 213 F.R.D. at 490; *Campos v. INS*, 188 F.R.D. 656, 659 (S.D. Fla. 1999). It does not require that all questions of law or fact be common, but only that there be at least one common question of law or fact which affects all class members. *See Cheney*, 213 F.R.D. at 490; *In re Disposable Contact Lens Antitrust Litig.*,

23

170 F.R.D. 524, 529 (M.D. Fla. 1996).  Factual differences between class members do not defeat commonality, so long as a common question of law exists.  *See Cheney*, 213 F.R.D. at 490.  The Eleventh Circuit has stated that claims generally involve common questions of fact or law where the allegations of wrongdoing involve a common course of conduct by the defendants.  *See Rosario v. King & Prince Seafood Corp.,* 2006 WL 2367130, at *11 (S.D. Ga. March 7, 2006); *Cheney*, 213 F.R.D. at 490 ("Where a common scheme is alleged, common questions of law or fact will exist."); *Drossin v. National Action Fin. Servs., Inc.*, 255 F.R.D. 608, 615 (S.D. Fla. 2009) (commonality generally satisfied when "defendants have engaged in standardized conduct that affects all class members").

Here, Plaintiffs have alleged a common scheme by the Defendants.  Specifically, Plaintiffs allege that, after receiving offers from the Lawrence Group for the purchase of all of the shares of U.S. Sugar for $293 per share, the Defendants failed to follow a fair and adequate process in considering those offers and failed to disclose those offers to U.S. Sugar's minority shareholders and to its ESOP participants.  This course of conduct affected the minority shareholders as a whole and the ESOP participants as a whole.  In addition, Plaintiffs allege that, after rejecting those offers, U.S. Sugar undervalued its stock held by the ESOP participants – again, a course of conduct that applied to all of the ESOP participants.  As a result, the conduct alleged to have been engaged in by the Defendants involves a uniform course of conduct affecting all proposed class members.  There are multiple questions of law and fact which are common to the class, not just one.  These include, inter alia:

> (a) whether certain of the Defendants owed a fiduciary duty under applicable common law to the Shareholder Class;
>
> (b) whether certain of the Defendants had a duty to disclose to the shareholders the existence of the Lawrence Group's offers and

provide them with an opportunity to sell their shares in response to said offers;

(c) whether certain of the Defendants breached their common law fiduciary duties by failing to follow a fair and adequate process in considering the Lawrence Group's offers;

(d) whether certain of the Defendants breached their common law fiduciary duties by rejecting the Lawrence Group's offers without providing the shareholders an opportunity to sell or not to sell their shares on said offers;

(e) whether Defendant William White converted an intangible right of the shareholders;

(f) whether certain of the Defendants owed a separate and distinct statutory fiduciary duty under ERISA to the Employee Shareholders;

(g) whether certain of the Defendants breached their separate and distinct ERISA fiduciary duties by making misrepresentations and/or omissions to the Employee Shareholders regarding the Fair Market Value of their shares in U.S. Sugar; and

(h) whether certain of the Defendants breached their separate and distinct ERISA fiduciary duties by causing the shares held by the Employee Shareholders to be purchased at amounts below their fair market value.

In short, the commonality element is more than satisfied in this case.

### 3.  *Typicality -- Rule 23(a)(3).*

Rule 23(a)(3)'s typicality requirement is also not demanding.  *See Disposable Contact Lens*, 170 F.R.D. at 532.  The critical consideration is whether the plaintiffs' claims are the same or similar to the claims of the other members of the class, or whether they allege a common course of conduct by the Defendants towards Plan participants.  *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001); *Singer v. AT&T Corp.,* 185 F.R.D. 681, 689 (S.D. Fla. 1998).  Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims of the class."  While

similar to commonality, typicality focuses on the class representative's characteristics as compared to the members of the class as a whole. *See Drossin*, 255 F.R.D. at 615. The class representative(s) must possess the same interest and suffer the same injury as the class members. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *Drossin*, 255 F.R.D. at 615.

This requirement is met if the same practice or course of conduct by the defendant(s) affected both the class representative and the class members, and if the class representative's claims are based on the same legal theories as those of the class members. As the Eleventh Circuit has explained:

> In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984).

The typicality requirement is readily met here. As stated above, this case involves a uniform course of conduct on the part of the Defendants which affects all members of the proposed classes. This is not a situation where the Defendants engaged in conduct on an individualized basis vis-à-vis the Class Members. In addition, the named Plaintiffs possess the same interest and have suffered the same injury as the class members they seek to represent. Named plaintiffs Linda Stanley, Diallo Johnson and Miguel Maturana all are current participants in the ESOP or were participants in the ESOP during the time period covered by the Participant Class. Named plaintiff Mary Rafter directly owns shares in U.S. Sugar. Each suffered an injury

that is of the same sort as the other members of the Settlement Classes they seek to represent. This is sufficient to meet the undemanding test of typicality.

### 4. _Adequacy of Representation -- Rule 23(a)(4)._

The adequacy of representation requirement is met when the representative parties will fairly and adequately protect the interests of the class.  In making this determination, the Court must consider whether (1) the class representative has any interests antagonistic to the class, and (2) class counsel possesses the competence to undertake the litigation.  _See Fabricant_, 202 F.R.D. at 314.

Here, the named Plaintiffs do not have interests antagonistic to the class members.  They were all injured by the same conduct and are suing under the same legal theories.  The Named Plaintiffs have actively participated in this litigation and understand the claims in the action as well as the responsibilities of a class representative.   In addition, Plaintiffs' counsel are competent lawyers experienced in complex litigation and class actions.  The law firm of Colson Hicks Eidson ("CHE"), counsel for Ms. Stanley, Mr. Johnson, and Ms. Rafter, has been certified as class counsel on numerous occasions and has handled a variety of complex corporate litigation on behalf of shareholders.  It has the experience, ability, and resources to properly prosecute, administer and manage this class action.  It has already committed substantial resources to identifying potential claims and representing the named plaintiffs and the putative class. Similarly, Plaintiff Maturana has retained counsel (Squitieri & Fearon, Vianale & Vianale and Wexler Wallace LLP) with significant experience in class action litigation, shareholder litigation and ERISA litigation and who have represented classes in numerous state and federal actions. Plaintiff Maturana's counsel is likewise well qualified to conduct this litigation and will assure that the interests of the Classes are vigorously protected and that this action is properly prosecuted.

Finally, Plaintiffs' counsel have no conflicts which would prevent them from adequately representing the interests of the Class, and they have considerable experience in complex litigation and with class actions.  As their actions in this case and others demonstrate, Plaintiffs' counsel have committed, and are willing to commit, considerable resources to the prosecution of class actions, and have fully, fairly and more than adequately represented the interests of the Class in this action to date.

### 5.      *The Shareholder Class is properly certified under Rule 23(b)(3).*

Under Rule 23(b)(3), a class may be certified if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"Common questions of law or fact predominate if 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  *Veal v. Crown Auto Dealerships, Inc*., 236 F.R.D. 572, 579 (M.D. Fla. 2006).  "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (quotation omitted); *see also Veal*, 236 F.R.D. at 580 (same).

"Common issues of law and fact predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Klay*, 382 F.3d at 1255.  Class certification is particularly appropriate where the complaint alleges that the defendant engaged in a common course of conduct with regard to all members of the proposed class such that the class members claims are essentially identical. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Kennedy v.*

*Tallant*, 710 F.2d 711, 717-18 (11th Cir. 1983); *Bruhl v. PriceWaterhousecoopers Int'l,* 2008 WL 4500328, at *9-12 (S.D. Fla. Sept. 30, 2008).

In both *Kirkpatrick* and *Kennedy*, the Eleventh Circuit held that the requirements of Rule 23(b)(3) were met where the claims involved allegations that the defendants "committed the same unlawful acts in the same method against the entire class."  *Kirkpatrick*, 827 F.2d at 724; *Kennedy*, 710 F.2d at 717-18; *see also Bruhl*, 2008 WL 4500328, at *9-12.  The Eleventh Circuit has found that cases involving a single fraudulent scheme against a large number of individuals are "particularly appropriate for class action [treatment]" and that "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick*, 827 F.2d at 725*; see also Kennedy,* 710 F.2d at 718.

Here, common questions of law and fact predominate over questions affecting only individual members of the Shareholder Class.  The putative class members were either direct or beneficial shareholders of U.S. Sugar to whom the Defendants breached their fiduciary duty through a common course of conduct.  There were common representations and common omissions, and they all seek a common measure of damages and equitable relief.  The Defendants' conduct with respect to each member of the class was uniform and the claims of the class members are essentially identical.

All of these issues are subject to generalized proof applicable to the class as a whole without the need for significant individualized proof after adjudication of the class issues.  Thus, the state law and ERISA claims are suitable for certification under Rule 23(b)(3*).  See Bruhl,* 2008 WL 4500328, at *13-14 (common law breach of fiduciary duty claims certified under (b)(3)); *In re Enron Corp*., 2006 WL 1662596, at *17-18 (ERISA class certified under (b)(3)); *Del Rosario v. King & Prince Seafood Corp*., 2006 WL 2367130 (S.D. Ga. March 7, 2006)

(ERISA class certified under (b)(3)); *Nelson v. Ipalco Enterprises, Inc.*, 2003 WL 23101792 (S.D. Ind. 2003)(ERISA class certified under (b)(3)); *Bunnion v. Consolidated Rail Corp.*, 1998 WL 372644 (E.D. Pa. May 14, 1998) (state law fraud and misrepresentation claims certified under (b)(3), and ERISA claims certified under (b)(1)(A), (b)(1)(B), and (b)(2)); *see also Klay*, 382 F.3d 1241 (RICO fraud and conspiracy claims properly certified under (b)(3)); *Kirkpatrick*, 827 F.2d 718 (federal securities fraud claims should have been certified under (b)(3)); *Kennedy*, 710 F.2d 711 (federal securities fraud claims properly certified under (b)(3)).

In addition, a class action is the superior, and in fact the only, method to resolve the claims in this action.  The economic reality is that a party only has an interest in litigating a claim if the potential for recovery exceeds the expected costs and attorneys' fees.  *See Fishler v. AmSouth Corp.*, 176 F.R.D. 583, 589 (M.D. Fla. 1997).  Class certification is clearly in the best interests of the Classes because the expense of litigating each individual action separately would not be feasible or cost effective.  *See Fishler*, 176 F.R.D. at 589.  Each Plaintiff, and each member of the Classes, has relatively small claims which would be dwarfed by the cost of litigating the claims individually.  Rule 23, however, provides a mechanism for these class members to join those small claims together in one case in a way that makes much more economic sense.

**6.     *The Participant Class may be properly certified as a non-opt-out class under Rule 23(b)(1).***

Under Rule 23(b)(1), a class may be certified if prosecuting separate actions by individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions, Inc. Securities Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000). Certifications under both sections of Rule 23(b)(1) are common in ERISA breach of fiduciary cases because of the Defendants' alleged "unitary treatment" of the individual members of the proposed class. *Id*; *see also* Rule 23(b)(1)(B), Advisory Comm. Notes to 1996 Amend. (stating that certification under Rule 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

Here, the Complaint alleges breaches of fiduciary duties under ERISA to the ESOP participants. The only practical remedy available to the ESOP participants is Plan-wide relief, including the restoration of losses to the Plan. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-140 (1985). Thus actions such as the instant one for breaches of fiduciary duty under ERISA are by law representative actions. "Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (certifying an analogous class of defined contribution plan participants for settlement); *see also Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (holding that certification of a class seeking relief for violations of ERISA was proper under Rule 23(b)(1)).[4] Given the unique "group based relief offered under ERISA for violations of fiduciary duties

---

[4]   *See also In re Merck & Co., Inc. Securities, Derivative & ERISA Litig.,* 2009 WL 331426 (D.N.J. Feb. 10, 2009); *Mehling v. New York Life Ins. Co.,* 246 F.R.D. 467 (E.D. Pa. 2007); *In re Enron Corp.,* 2006 WL 1662596 (S.D.Tex. June 7, 2006); *Smith v. Aon Corp.,* 238 F.R.D. 609; *Dobson v. Hartford Life & Acc. Ins. Co.,* 206 WL 861021 (D.Conn. March 31, 2006); *In re Williams Companies ERISA Litig.,* 231 F.R.D. 416 (N.D.Okla. 2005); *Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004); *Koch v. Dwyer,* 2001 WL 289972 (S.D.N.Y. March 23, 2001).

owed to participants in covered benefit plans, an action such as this one is a textbook case for class treatment under Rule 23(b)(1).

This basic point was elucidated concisely by the court in *IKON*, in which some of the plaintiff class claims for breach of fiduciary duty under ERISA were analogous to those brought in this action:

> The court agrees that, given the nature of an ERISA claim which authorizes plan wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief… There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether IKON had itself acted as a fiduciary, whether the individual defendants had in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

191 F.R.D. at 466 (citation omitted); *see also Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying ERISA fiduciary misrepresentation case under Rule 23(b)(1)(A) because multiple cases "could conceivably result in different courts reaching conflicting decisions").

Thus, although certification of the proposed Participant Class is also appropriate under the other subdivisions of Rule 23(b), as the cases cited above clearly demonstrate, the Court should certify the Participant Class under Rule 23(b)(1), because it would be proper to do so and Defendants have consented to the same under the Settlement.

### 7.   *Plaintiffs' Counsel Also Meet the Requirements of Rule 23(g).*

Finally, Rule 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Plaintiffs' Counsel submit that they readily meet these requirements. Plaintiffs' Counsel have done substantial work to identify, investigate and prosecute the claims in this action. They have prepared a detailed and thorough Complaint, extensively briefed the many complex issues in this

case, conducted extensive document review and extensive deposition discovery around the United States, consulted with experts and engaged in hard-fought and ultimately successful negotiations with the Defendants.   Moreover, Plaintiffs' Counsel have substantial experience, individually and collectively, in handling class actions, other complex litigation, and claims of the type asserted in this action.   Plaintiffs' Counsel's extensive efforts in prosecuting this case together with their background and experience in ERISA and shareholder class action litigation satisfy the requirements of Rule 23(g).

     C.     **THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23 AND DUE PROCESS.**

Following preliminary approval of the terms of Settlement, the Class Members must be notified of the proposed settlement.   Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."   To satisfy due process, notice to the Settlement Classes must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   More specifically, notice is proper if it provides:

> (a) that a class action settlement had been reached; (b) a definition of the class; (c) a summary of the settlement benefits; (d) a brief description of the case; (e) a brief description of the reason for the settlement; (f) the amount that the plaintiffs' attorneys could recover in fees and costs; (g) the options available to the class members; (h) the deadlines by which the class members needed to act; (i) and the date on which the fairness hearing was scheduled.   The notice [should] further explain[] that the information provided therein [is] "only an abbreviated summary of the proposed settlement and release," and that in order to receive additional information the class member could contact the claims administrator or each of the three law firms representing the class.

*Borcea v. Carnival Corp.*, 238 F.R.D. 664, 677 (S.D. Fla. 2006) (citations omitted).

The Plaintiffs' and Defendants' plan for Notice consists of: (1) the Notice (attached as Exhibit 1.A) to be mailed by first class mail to the last known address of each Settlement Class member who can be identified with reasonable effort by U.S. Sugar; and (2) the posting of the Notice on U.S. Sugar's corporate website.  The Class Members in this case should be readily identifiable and located.  U.S. Sugar, a privately held corporation, has a limited number of shareholders (approximately 50) who can be identified from its shareholders' lists.  While there are a substantial number of participants and former participants in the Participant Class (over 4,000), U.S. Sugar should have contact information for all of them and current contact information for all of the current participants in connection with its administration of the ESOP.

The Notice plan is intended to fully inform members of the Settlement Classes of the lawsuit, the proposed settlement, and the information they need to make informed decisions about their rights.  Further, because the Participant Class does not allow for opting out, all Participant Class members will be eligible to receive a distribution from the Settlement regardless of their receipt of actual Notice.

The proposed Class Notice to be mailed provides detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Plaintiffs' Counsels' intent to request attorneys' fees, reimbursement of expenses, and case contribution awards for Named Plaintiffs Diallo Johnson, Mary Rafter, Linda Stanley and Miguel Maturana; and (3) detailed information about the Released Claims.  Additionally, the Notice provides information about the Final Fairness Hearing date, Settlement Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information.

The Class Notice to be mailed provides contact information for Plaintiffs' Counsel and also provides: (1) a toll free number that potential Class Members can call to ask questions about

the Settlement; and (2) an e-mail address (ussugarsettlement@colson.com) where they can e-mail any questions they may have.  In addition, the Summary Notice summarizes the above information for purposes of publication.

These proposed Notice forms here -- direct mail and internet website -- are similar to those successfully used in numerous other class settlements.  Such forms of notice will "fairly, accurately, and neutrally describe the claims and parties in the litigation . . . the terms of the proposed settlement and the identity of persons entitled to participate."  *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd* 892 F.2d 196 (2d Cir. 1989).  Accordingly, the form of notice and plan of notice proposed satisfies the due process requirement of Rule 23.

## CONCLUSION

For all of the reasons discussed above, Plaintiffs submit that the Settlement is a fair, adequate, and reasonable resolution of the claims against Defendants in this complex and hotly contested ERISA and shareholder class action.  Accordingly, Plaintiffs and the Plaintiffs' Counsel respectfully ask the Court to grant their motion and to enter the proposed Preliminary Approval Order, which: (1) grants preliminary approval of the proposed Settlement; (2) approves the form and manner of the Notice; and (3) sets a date for a Final Fairness Hearing.

Respectfully submitted,

COLSON HICKS EIDSON
255 Aragon Avenue
Coral Gables, Florida 33133
Tel: (305) 476-7400
Fax: (305) 476-7444

By: ___s/ Curtis B. Miner_____
       Lewis S. Eidson, Esq.
       (Fla. Bar No. 151088)
       Roberto Martínez, Esq.
       (Fla. Bar No. 305596)
       Curtis B. Miner, Esq.
       (Fla. Bar No. 885681)

*Counsel for Plaintiffs in Johnson, Stanley & Rafter*

VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
Tel: (561) 392-4750
Fax: (561) 392-4775

By:___s/ Kenneth J. Vianale_____
       Kenneth J. Vianale, Esq.
       (Fla. Bar No. 0169668)
       Julie Prag Vianale, Esq.
       (Fla. Bar No. 0184977)

                            & 

SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr., Esq.
Lee Squitieri, Esq.
32 East 57th Street, 12th Floor
New York, New York 10022
Tel: (212) 421-6492
Fax: (212) 421-6553

*Counsel for Plaintiffs Matura, Texton and Roland*

36

*Of Counsel for Plaintiff Texton*

Gainey & McKenna
Thomas J. McKenna, Esq.
295 Madison Avenue, 4th Floor
New York, New York 10017
Tel: (212) 983-1300
Fax: (212) 983-0383

*Of Counsel for Plaintiff Roland*

Wexler Toriseva Wallace LLP
Kenneth A. Wexler, Esq.
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
Tel: (312) 346-2222
Fax: (312) 346-0022

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of September 2009, I caused the foregoing

document to be served via CM/ECF on all counsel of record on the attached Service List.

_____ s/ Curtis B. Miner_____
Curtis B. Miner

## SERVICE LIST

### IN RE UNITED STATES SUGAR CORPORATION LITIGATION
**Master File No. 08-80101-Civ-Middlebrooks/Johnson**

| | |
|---|---|
| Robert Hackleman, Esq.<br>*rhackleman@gunster.com'*<br>Curtis Alva, Esq.<br>*calva@gunster.com'*<br>Gunster Yoakley<br>450 East Las Olas Blvd., Suite 1400<br>Fort Lauderdale, FL 33301<br>Tel: (954) 462-2000<br>Fax:(954) 523-1722<br>*Counsel for U.S. Sugar Corporation*<br><br>Juan Gonzalez, Esq.<br>jag@lgplaw.com<br>Liebler, Gonzalez & Portuondo, P.A.<br>Courthouse Tower – 25th Floor<br>44 West Flagler Street<br>Miami, FL 33130<br>Tel: (305) 379-0400<br>Fax:( 305) 379-9626<br>*Counsel for U.S. Trust Company, N.A.*<br><br>Richard A. Schneider, Esq.<br>dschneider@kslaw.com<br>Bethany M. Rezek, Esq.<br>brezek@kslaw.com<br>David  Tetrick, Jr., Esq.<br>dtetrick@kslaw.com<br>King & Spalding<br>1180 Peachtree Street, N.E.<br>Atlanta, GA 30309<br>Tel: (404) 572-4889<br>Fax: (404) 572-5100<br>*Counsel for U.S. Trust Company, N.A.*<br><br>Christopher S. Duke, Esq.<br>chris.duke@akerman.com<br>Akerman Senterfitt<br>222 Lakeview Avenue, Fourth Floor<br>West Palm Beach, Florida 33401<br>Tel: (561) 653-5000<br>Fax: (561) 671-3663<br>*Counsel for William S. White and Ridgway White* | H. Douglas Hinson, Esq.<br>Doug.hinson@alston.com<br>Nancy B. Pridgen, Esq.<br>Nancy.pridgen@alston.com<br>Alston & Bird<br>One Atlantic Center<br>1201 West Peachtree Street<br>Atlanta, GA 30309-3424<br>Tel: (404) 881-7590<br>Fax:(404) 253-8663<br>*Counsel for William White*<br><br>Rudolph F. Aragon, Esq.<br>raragon@whitecase.com<br>David P. Draigh, Esq.<br>ddraigh@whitecase.com<br>James N. Robinson, Esq.<br>jrobinson@whitecase.com<br>White & Case LLP<br>200 So. Biscayne Blvd., Suite 4900<br>Miami, FL 33131<br>Tel:  (305) 371-2700<br>Fax: (305) 358-5744<br>*Counsel for Charles Stewart Mott Foundation*<br><br>Hilarie Bass, Esq.<br>Bassh@gtlaw.com<br>David A. Coulson, Esq.<br>Coulsond@gtlaw.com<br>Greenberg Traurig<br>1221 Brickell Avenue, 18 FL<br>Miami, FL 33131<br>Tel:  (305) 579-0745<br>Fax: (305) 579-0717<br>*Counsel for Robert H. Buker, Jr. John Butler,*<br>*Frederick Kirkpatrick, Roy E. Peterson, W.*<br>*Archibald Piper, William H. Piper, Lloyd E. Reuss,*<br>*Horace Wilkins and Gerard Bernard* |

| | |
|---|---|
| Lee Squitieri, Esq.<br>lee@sfclasslaw.com<br>Stephen J. Fearon, Jr., Esq.<br>Stephen@sfclasslaw.com<br>Squitieri & Fearon, LLP<br>32 East 57th Street, 12th FL<br>New York, New York 10022<br>Tel: (212) 421-6492<br>Fax: (212) 421-6553<br>*Counsel for Michael Roland, et al; Miguel Matura, et al*<br><br>Thomas J. McKenna, Esq.<br>TJMcKenna@GaineyandMcKenna.com<br>Gainey & McKenna<br>295 Madison Avenue, 4th Floor<br>New York, New York 10017<br>Tel: (212) 983-1300<br>Fax: (212) 983-0383<br>*Counsel for Michael Texton, et al.*<br><br>Kenneth A. Wexler, Esq.<br>KAW@wexlerwallace.com<br>S. Melisa Twomey, Esq.<br>smt@wexlerwallace.com<br>Wexler Wallace LLP<br>55 West Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>Tel: (312) 589-6270<br>Fax: (312) 589-6271<br>*Counsel for Michael Roland, et al.* | Todd Wozniak, Esq.<br>*wozniakt@gtlaw.com*<br>Lindsey Edelman, Esq.<br>*edelmannl@gtlaw.com*<br>Greenberg Traurig, LLP<br>3290 Northside Parkway, Suite 400<br>Atlanta, Georgia 30327<br>Tel: (678) 553-2100<br>Fax: (678) 553-2212<br>*Counsel for Robert H. Buker, Jr. John Butler, Frederick Kirkpatrick, Roy E. Peterson, W. Archibald Piper, William H. Piper, Lloyd E. Reuss, Horace Wilkins and Gerard Bernard*<br><br>Kenneth J. Vianale, Esq.<br>kvianale@vianalelaw.com;<br>Julie Prag Vianale, Esq.<br>jvianale@vianalelaw.com<br>Vianale & Vianale LLP<br>2499 Glades Road, Suite 112<br>Boca Raton, Florida 33431<br>Tel: (561) 392-4750<br>Fax: (561) 392-4775<br>*Counsel for Michael Roland, et al; Miguel Matura, et al and Michael Texton, et al.* |