## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE UNITED STATES SUGAR
CORPORATION LITIGATION

Master File No.
08-80101-CIV-MIDDLEBROOKS

## OMNIBUS ORDER
### APPROVING AMENDED CLASS ACTION SETTLEMENT AGREEMENT;
### CERTIFYING PROPOSED CLASS; AND
### AWARDING ATTORNEYS' FEES AND COSTS
(GRANTING DE 258)

THIS CAUSE comes before the Court on Plaintiffs' Motion for Final Approval of Amended Class Action Settlement Agreement and Class Counsels' Motion for Attorneys' Fees and Expenses (DE 258) ("Motion"), filed on January 11, 2011. The Court has reviewed Plaintiffs' Motion and the record in this case, and is otherwise advised in the premises. For the reasons set forth below, Plaintiffs' Motion shall be **GRANTED**.

I.    **Background**

On October 6, 2008, Plaintiffs Linda Stanley, Diallo Johnson, and Mary Rafter, individually and as shareholders of United States Sugar Corporation ("U.S. Sugar") and participants in U.S. Sugar's Employee Stock Ownership Plan ("ESOP"), filed a Consolidated Class Action Complaint against U.S. Sugar, its Board of Directors (collectively, "the Directors"), its Chief Financial Officer ("CFO"), a prominent shareholder, the Charles Stewart Mott Foundation (the "Foundation"), and the former Trustee of the U.S. Sugar ESOP, United States Trust Company, N.A. ("U.S. Trust") (hereinafter, "the Defendants"), alleging thirteen separate causes of action for breach of fiduciary

duty under Sections 409 and 502(a)(2) of the Employee Retirement Income Security Act ("ERISA") and under Delaware law, and for conversion under Florida law. (DE 142). Specifically, Plaintiffs alleged that Defendants breached their ERISA and common law fiduciary duties to U.S. Sugar's shareholders and ESOP participants by affirmatively concealing an "extraordinarily valuable" offer for the purchase of U.S. Sugar by the Lawrence Group in the amount of five hundred and seventy five million dollars ($575,000,000) in cash, or $293 per share. (*Id.* ¶ 4). Plaintiffs also alleged that Defendants improperly traded on this information by seeking to buy back shares from employee shareholders for prices nearly $100 per share less than the value of the known and undisclosed third party offer. (*Id.* ¶ 8).

Defendants filed five separate motions to dismiss the Complaint (Des 143, 145, 146, 147, 148). On April 27, 2009, this Court entered an Order granting in part and denying in part Defendants' motions (DE 224). The effect of the Order was to dismiss all counts in the Consolidated Complaint with the exception of Count I on behalf of Mary Rafter, a direct shareholder. (*Id.* at 46-47). The majority of claims were dismissed without prejudice for failure to adequately exhaust administrative remedies.

On May 28, 2009, following the Court's Order and a third attempt at mediation, the parties reached a settlement in principle of the case.

The Court has already given *final* approval to a settlement reached in this matter (hereinafter, the "Original Settlement"). (DE 251). The Original Settlement required an initial cash payment of $8.4 million by Defendants, to be followed by a second cash payment of $7.5 million, with the latter payment to be made if and only if a proposed real estate transaction between U.S. Sugar, the State of Florida, and the South Florida Water Management District ("SFWMD") was consummated. (*Id.*)

The cash payment of $8.4 million has already been made and distributed according to the Original Settlement's allocation formula. (DE 258 at 2). But the contemplated real estate transaction between U.S. Sugar and SFWMD, which called for U.S. Sugar to sell some 73,000 acres of land for an estimated $536 million, was never finalized, and, accordingly, the second $7.5 million payment was never made. (*Id.* at 2-3). Importantly, however, U.S. Sugar and SFWMD have since agreed to a smaller-scale real estate transaction, set forth in a Second Amended and Restated Agreement for Sale and Purchase dated August 12, 2010 (the "Amended SFWMD Transaction"). (*Id.* at 3). Under the Amended SFWMD Transaction, U.S. Sugar will sell approximately 26,800 acres of land for $197,396,088 in an all-cash transaction, with SFWMD having options to acquire approximately 153,200 acres over the next ten years. (*Id.*) In light of this change to the scope of the land sale, the parties have agreed to modify their earlier agreement and now seek the Court's approval as to this modification.

In particular, Plaintiffs seek final approval of a proposed amended settlement agreement (the "Amended Settlement") (DE 258-1), pursuant to which Defendants would be responsible for paying the Settlement Class an additional $3 million,[1] as opposed to the originally-contemplated $7.5 million, to accommodate the smaller-than-estimated size of the agreed-to land transaction between U.S. Sugar and SFWMD. The Amended Settlement was preliminarily approved on November 10, 2010. (DE 256). Plaintiffs also seek to have the Court certify under Rule 23(b)(3) the following Class ("Shareholder Class") which stands to benefit from the Amended Settlement; namely, "All holders of Class A common Stock of U.S. Sugar during the period beginning August 4, 2005 and

---

[1] The Amended Settlement leaves open the possibility of still further settlement payment(s) to the Shareholder Class, depending on whether U.S. Sugar and SFWMD close on other proposed land transactions. (DE 258-1 at ¶ 7).

ending October 13, 2010." (DE 258 at 2). Finally, Plaintiffs' counsel seeks approval of an attorneys' fees award of 30% of the settlement amount, or $900,000, along with reimbursement of litigation expenses incurred in connection with the Amended Settlement totaling $14,194.77. (*Id.* at 34).

## II.   Discussion

### 1.   Final Approval of Proposed Amended Settlement

In deciding whether to approve a class action settlement, a district court must determine whether the proposed settlement is "fair, reasonable, and adequate." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (citing *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971); *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). The district court enjoys broad discretion in making this determination, and will not be overturned "absent a clear abuse of discretion." *Bennett v. Behring Corp.*, 737 F.2d 983, 986 (11th Cir. 1984) (citations omitted).

The Eleventh Circuit has articulated six factors, referred to as the "*Bennett* factors," that are relevant to whether a proposed class action settlement is fair, reasonable, and adequate. They are as follows:

> (1) the likelihood of success at trial; (2) the complexity, expense and duration of the litigation; (3) the range of possible recovery; (4) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was reached.

*Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1379-80 (S.D. Fla. 2007) (citing *Bennett*, 737 F.2d at 986). Given federal courts' time-worn policy favoring the voluntary resolution of complex class

4

action cases, *see, e.g., Wal-Mart Stores, Inc. v. U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), a strong initial presumption of fairness attaches to any class action settlement reached by experienced counsel following arms-length negotiations. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("[S]o long as the integrity of the arm's length negotiation process is preserved . . . a strong presumption of fairness attaches to the proposed settlement."); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987); *see also* MANUAL FOR COMPLEX LITIGATION § 30.43, at 289 (3d. ed 2002). Applying these considerations to the facts of this case, I am persuaded that Plaintiffs' Amended Settlement should be approved.

As an initial matter, the Amended Settlement appears to be the result of good faith, arms-length negotiations between experienced counsel. The Original Settlement was only reached after approximately nineteen months of discovery,[2] extensive motions practice, and three separate mediation sessions with an experienced mediator, (DE 258 at 3), and the sole feature that distinguishes the Amended Settlement is the amount the Shareholder Class will receive above and beyond the $8.4 million already distributed.

Furthermore, the aforementioned *Bennett* factors favor final approval of the proposed Amended Settlement. Plaintiffs' likelihood of success at trial has been diminished by the Court's dismissal of a number of their claims, but Plaintiffs' Counsel continues to cling tenaciously to the belief that discovery supports certain of their core remaining allegations. Against this uncertain backdrop, the proposed Amended Settlement affords both parties a predictability that they desire –

---

[2] Plaintiffs' Counsel represents, and the Court accepts, that nearly 100,000 pages of documents have been reviewed in connection with this case; that consulting and testifying experts have been retained and used; and that some 21 depositions of potential fact witnesses and 4 depositions of expert witnesses have been taken all around the United States.

of a sum certain of $3 million – and, in so doing, avoids the "complexity, expense, and duration" of protracted litigation, an outcome admittedly favored by the Court. *See Nat'l Rural Telecomms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Furthermore, given the wide range of potential damages outcomes at trial, the amount of the proposed Amended Settlement is within the reasonable range and at a point at which settlement is fair. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement amounting to one-sixth of plaintiffs' potential recovery); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla.) ("The fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). Indeed, the independent fiduciary retained to evaluate the agreement concluded that "the amount of the recovery under the Amended Settlement is the *best Plaintiffs can do* under circumstances of the case." (DE 258-3 at 5) (emphasis added). The proposed settlement is also well-informed; specifically, by nineteen months of concerted inquiry into the strengths and weaknesses of claims and defenses and several rounds of arms-length negotiations. And there have been no reported objections to the proposed Amended Settlement, despite notice and ample opportunity. (DE 258 at 3).

In sum, the proposed Amended Settlement appears fair, reasonable, and adequate and accordingly shall be approved.

### 2.    Class Certification

"A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal citations omitted).

Rule 23 of the Federal Rules of Civil Procedure governs class certification. In order for a

class to be certified under Rule 23, the plaintiff must establish each of the four criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997). Rule 23 provides, in pertinent part,

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.
> ...
> (b) **Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23.

> Here, the parties have stipulated to an opt-out class pursuant to Rule 23(b)(3) defined as:

> All holders of Class A common Stock of U.S. Sugar during the period beginning August 4, 2005 and ending October 13, 2010.

(DE 255 at 17). In reaching a class certification decision, a district court may consider the allegations of the complaint as well as any subsequent evidentiary submissions by the parties. *Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998). "The interest of justice requires that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Id.* at 686.

Upon a review of the features of this prospective class against the requirements of Rule 23 and related Eleventh Circuit precedent, I find that class certification is warranted.

Rule 23(a)(1) requires the class to be so numerous that joinder of all members is

impracticable. FED. R. CIV. P. 23(a)(1). "The numerosity requirement is met when it would be inconvenient or difficult to join all of the class members, and may be satisfied with as few as 25-30 class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 684 (S.D. Fla. 2004). Courts in the Eleventh Circuit have regularly certified classes of no more than 30 members. *See, e.g., Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (certifying a 31 person class); *Kreuzfeld, A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D. Fla. 1991) (explaining that a class with as few as 25 or 30 class members can satisfy numerosity). Here, there are approximately 70 direct shareholders who are putative members of the Shareholder Class. Joinder of 70 interested parties in a single action is impracticable by Eleventh Circuit standards. Accordingly, the numerosity requirement is met.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). Under Rule 23(a)(2), not all questions of law or fact need to be common among putative class members; on the contrary, there need only be at least one common question of law or fact which affects all class members. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (citing *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). The Eleventh Circuit has observed that where the allegations of wrongdoing involve a common course of conduct by the defendants, common questions of fact or law exist. *See Cheney*, 213 F.R.D. at 490 ("Where a common scheme is alleged, common questions of law or fact will exist."). Here, Plaintiffs have alleged just such a common scheme by Defendants, involving the non-disclosure of a lucrative offer to purchase U.S. Sugar by the Lawrence Group, followed closely by the deliberate under-valuation of stock held by the ESOP participants. (DE 142 at ¶¶ 4, 8). This alleged scheme affected the minority shareholders as a whole. Accordingly, the commonality requirement is met.

8

The typicality requirement embodied in Rule 23(a)(3) focuses on whether the named plaintiffs' claims are the same or similar to the claims of other members of the class. *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Under Rule 23(a)(3), the "claims or defenses of the representative parties [must be] typical of the claims of the class." FED. R. CIV. P. 23(a)(3). This requirement is met if the named plaintiffs allege the same legal theories as the class members, and the same scheme of wrongdoing on the part of Defendants. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). This is precisely the case here. The named Plaintiffs allege an elaborate scheme to conceal a material offer to purchase U.S. Sugar common to all class members. In addition, the named Plaintiffs have suffered the same injury as the class members they seek to represent; namely, a loss of the possibility to sell their shares at the Lawrence Group's asking price. Accordingly, the typicality requirement is met.

Rule 23(a)(4) requires that plaintiffs establish that they would adequately protect the interests of the class as a whole. In making this determination, the Court must evaluate whether (1) the putative class representatives have any interests adverse to the class, and (2) class counsel possesses the competence to handle the litigation. *See Fabricant*, 202 F.R.D. at 314. Here, there is no evidence that named plaintiffs have interests distinct from, let alone adverse to, the other class members. And there is ample evidence to suggest that class counsel is capable of discharging their responsibilities. Thus, I find that the adequacy of representation requirement is met.

A putative class may only be certified pursuant to Rule 23(b)(3) if the Court finds that common questions of law or fact "predominate," and that a class action is the superior method of resolving the controversy. FED. R. CIV. P. 23(b)(3). "Common questions of law or fact predominate

if 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 579 (M.D. Fla. 2006). For the reasons already discussed, concerning Defendant's common scheme to conceal the Lawrence Group offer, I find common questions of law and fact predominate here.

In sum, Plaintiffs have met their burden of establishing the propriety of class certification, and the Shareholder Class identified above shall be certified.

### 3.   Attorneys' Fees & Costs

In the Eleventh Circuit, attorneys' fees awarded from a common fund established for the benefit of a class must be reasonable. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* However, "[t]he majority of common fund fee awards fall between 20% and 30% of the fund." *Id.*

Here, the parties have agreed to award Plaintiffs' Counsel attorneys' fees in the amount of 30% of the Amended Settlement payment, or $900,000. An award of 30% of Plaintiffs' recovery was already deemed reasonable by this Court once in connection with the Original Settlement, in light of the extent of counsel's efforts in connection with this matter, the expertise they have brought to bear, and awards in similar cases. I find no reason to depart from that ruling now. Counsel's request for reimbursement of litigation expenses in the amount of $14,194.77 shall likewise be granted.

### III.   Conclusion

Accordingly, for the reasons set forth above, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. Plaintiffs' Motion for Final Approval of Amended Class Action Settlement Agreement (DE 258) is **GRANTED**.

2. The Court hereby approves and confirms the Amended Settlement embodied in the Amended Stipulation as being a fair, reasonable, and adequate settlement and compromise of this Action, and orders that the Amended Stipulation shall be effective, binding, and enforced according to its terms and conditions.

3. The Court hereby approves the maintenance of the Action as a class action pursuant to Fed. R. Civ. P. 23(a) & (b) with the Shareholder Class being defined as follows for Amended Settlement purposes:

   The "Shareholder Class" is an opt-out class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of all owners of Class A common stock of U.S. Sugar during the period beginning on August 4, 2005 and ending on October 13, 2010, including, but not limited to (1) Evercore Trust Company, N.A. (as successor to Bank of America, N.A., which succeeded U.S. Trust, N.A.) as Trustee for the United States Sugar Corporation Employee Stock Ownership Plan (the "ESOP") with regard to the ESOP's shares and on behalf of the participants to whose accounts such shares have been allocated and (2) the Charles Stewart Mott Foundation. Excluded from the Shareholder Class are William S. White, Ridgway White and John Butler and any trusts in which (1) William S. White is both the trustee and sole beneficiary; (2) Ridgway White is both the trustee and sole beneficiary; or (3) John Butler is both the trustee and sole beneficiary.

4. Pursuant to Federal Rule of Civil Procedure 23(g), the Court hereby confirms its prior appointment of Lead Counsel and Class Counsel in the Preliminary Approval Order.

5.      As of the Effective Date and payment of the Amended Settlement Payment into the Settlement Fund (as defined in the Amended Stipulation), the Plaintiffs and Class Members (other than members of the Shareholder Class who have opted out of the Amended Settlement) on their own behalf and on behalf of their present or former agents, employees, attorneys, accountants, representatives, advisers, investment bankers, trustees, parents, heirs, estates, executors, administrators, successors and assigns, shall release each and all of the Released Parties from the Released Claims for Amended Settlement Payment (as defined in the Amended Stipulation). All Class Members (as defined in the Amended Stipulation) are hereby barred and enjoined from the institution and prosecution, either directly or indirectly, of any other action(s) in any court asserting any and all Released Claims for Amended Settlement Payment against any and all Released Parties.

6.      The attorneys' fees sought by Class Counsel in the amount of **30%** of the Amended Settlement Fund(s) established in this Action, or **$900,000**, are reasonable in light of the monetary benefits obtained in this Action, the substantial risks associated with this Action, Class Counsel's skill and experience in class action litigation, and the fee awards in comparable cases. Accordingly, Class Counsel is hereby awarded attorneys' fees of 30% of the Amended Settlement Fund established by the Amended Stipulation. Class Counsel's request for reimbursement of costs in the amount of **$14,194.77** is also approved. The attorneys' fees and costs shall be paid in to Lead Counsel's Trust Account, with Class Counsel to attempt to reach an agreement amongst themselves as to the division thereof.

12

7.    The Court hereby dismisses this Action against all Defendants and former Defendants with prejudice on the merits based on the Amended Settlement.

8.    The Court retains jurisdiction for purposes of implementing the Amended Stipulation and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Amended Stipulation and Amended Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this ___ day of January, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:    Counsel of Record

13